Heinz Binder (SBN 87908)
Robert G. Harris (SBN 124678)
Wendy W. Smith (SBN 133887)
Roya Shakoori (SBN 236383)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531

Email: Heinz@bindermalter.com
Email: Rob@bindermalter.com
Email: Wendy@bindermalter.com
Email: Roya@bindermalter.com

Proposed Attorneys for Debtor and Debtor-in-Possession
MI PUEBLO SAN JOSE, INC.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>MI PUEBLO SAN JOSE, INC.,<br><br>        Debtor. | Case No. 13-53893-ASW<br><br>Chapter 11<br><br>Date:<br>Time:<br>Place: Courtroom<br>      280 South First Street<br>      San Jose, California |

**DECLARATION OF JUVENAL CHAVEZ IN SUPPORT OF INTERIM MOTION BY DEBTOR TO APPROVE USE OF CASH COLLATERAL AND REQUEST FOR SETTING OF INTERIM AND FINAL HEARINGS THEREON: (11 U.S.C. §363(b))**

I, Juvenal Chavez, know the following matters to be true of my own, personal knowledge and, if called as a witness, could and would testify competently thereto:

1. I am the President and Chief Executive Officer of Debtor and debtor in possession herein Mi Pueblo San Jose, LLC ("Mi Pueblo"). I am familiar with the matters set forth below as a result of the execution of my duties in this role.

2. Mi Pueblo is a California Corporation and the debtor-in-possession herein.

3. Mi Pueblo filed this case on July 22, 2013, and continues to operate its businesses and manage its assets as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. This Court has jurisdiction over this Chapter 11 case ("Case") under 28 U.S.C. §§ 157 and 1334. This Motion constitutes a core proceeding under 28 U.S.C. §157(b)(2). Venue of this case is proper in this District under 28 U.S.C. §§ 1408 and 1409. .

4. Mi Pueblo was started in 1991 when my wife and I opened a 5,000 square foot store called "Country Time Meats." Over the following 22 years, I built the first store into a chain of supermarkets serving the Hispanic community. Mi Pueblo has twenty-one stores, fifteen in the Bay Area, three in the Central Coast and three in the Central Valley. Mi Pueblo also maintains a warehouse and distribution center in Milpitas, offices in San Jose, and a workshop and storage facility. In the year 2012 Mi Pueblo had annual sales of over $350 million.

5. Mi Pueblo has a unique place in the communities in which it has stores, doing business in under-served locations that have been abandoned by large market grocery chains and/or in locations that otherwise do not have access to full service groceries providing wholesome foods and fresh fruits and vegetables. Mi Pueblo staffs

Case: 13-53893    Doc# 11-1    Filed: 07/22/13    Entered: 07/22/13 14:10:42    Page 2 of 6

its stores with bilingual employees and stocks merchandise geared to the Hispanic buyer, but also serves the broader community by providing full service grocery merchandise to communities in which such items are not generally available.

6. Mi Pueblo's stores offer a unique shopping experience to the underserved Hispanic community by providing a friendly, upscale environment with familiar brand names, including brands imported from Mexico, Central and South America. The stores also provide marinated cuts of meat, creamerias with specialty cheeses from throughout Central and South America, tortillerias that make fresh tortillas throughout the day, and delis that provide made-to-order Hispanic dishes.

7. I have been recognized in the grocery business for my commitment to providing needed service to the Hispanic community, and has received the Hispanic Business Excellence Award, the award for Outstanding Community Enterprise from the National Grocer Association, and the award for Outstanding Independent Business from Progressive Grocer. Mi Pueblo has over 3,260 employees and is the fastest growing independent supermarket chain in Northern California.

8. Mi Pueblo has also demonstrated a commitment to serving the community through philanthropy. From raising over $100,000 to assist victims of the Haiti earthquake to starting their own scholarship program providing much needed assistance to students who are attempting to turn their dreams of a college education into reality. From 2012-2013, Mi Pueblo distributed over $550,000 in scholarships to students throughout the communities it serves.

9. Mi Pueblo is current on all obligations to employees, suppliers and all of its creditors, including its secured creditors. Mi Pueblo's current financial circumstances are the result of an impasse in negotiations with its largest secured creditor, Wells

Fargo Bank.  Although Mi Pueblo has not defaulted on any payments in any of its obligations, the demands from the bank to cure certain non-financial covenants could not be met.

10.     Mi Pueblo employs approximately 3,260 employees and had gross sales in 2012 of $413,273,348.

## SECURED DEBT AND LOAN STATUS

11.     Wells Fargo Bank, N.A. ("WFB") is the senior secured lender in this case. It is owed $19,615,385.  The amounts and terms of WFB's loans to Mi Pueblo are as follows:

a.     <u>Revolving Line of Credit</u>

Mi Pueblo based is indebted to WFB under a credit agreement dated May 15, 2012, subject to modifications effected under a forbearance agreement that commenced on March 22, 2013.  The debt owing on the line of credit as of May 31, 2013, was $7.3 million.  The term of this loan expires on May 14, 2014.  The interest rate is a combination of the prime rate plus or minus a margin of 50 basis points and LIBOR plus a margin of 200-300 basis points.  The margins are based upon debt coverage.  The default rate is 2 points higher.  This loan is secured by Security all Mi Pueblo accounts receivable and rights to payment, inventory and equipment, as well as a term note from related entity Cha Cha and a parking lot located in San Jose, California.

b.     <u>Term Debt</u>

Mi Pueblo is indebted to WFB on term debt originated on May 15, 2012, in the amount of $12,500,000.  As of May 31, 2013, the amount of this debt was $10,000,000. The interest rate on this loan is the same as on the revolving line of credit.  The monthly payment is $192,207.69.  The loan is due on May 15, 2017.  This loan contains

Case: 13-53893   Doc# 11-1   Filed: 07/22/13   Entered: 07/22/13 14:10:42   Page 4 of 6

provisions for an interest rate swap: one third of the Term Debt is swapped for the term of the loan at rate of 1.31% plus the margin. The collateral for the Term Debt is the same as that for the revolving line of credit.

### c. Letters of Credit

In addition to the revolving line of credit and Term Debt, term/revolver loans, WFB is the issuer of a standby letter of credit in the amount of $1,370,000 in favor of Liberty Mutual Insurance Company and a letter of credit in the amount of $6.5 million in favor of Safety National SBLC, both securing and supporting Mi Pueblo's obligations under its Worker's Compensation structure, plus a further $475,000 for letters of creditor for commercial arrangements with vendors unrelated to Worker's Compensation. All letters of credit are self-renewing with expiration dates in May, 2014.

### d. Loan Status

Mi Pueblo is out of covenant with WFB in respect to certain profitability ratios. Due to an ongoing audit by ICE, Mi Pueblo has been directed to replace a number of employees whose documentation is under review. The result has been substantially increased payroll expenses and some dislocation as new workers are trained or leave themselves and have to be replaced in turn.

### e. Guarantees

The debts to WFB are guaranteed by Juvenal Chavez, Maria Chavez, JC & MC as Trustees for Chavez Family Trust, and the related debtor, Cha Cha.

## COLLATERAL

12. Mi Pueblo's current balance sheet is attached as Exhibit "A" to the Declaration of Juvenal Chavez served and filed herewith. The total value of assets listed thereon, against which WFB has a lien to secure the debts owing to it, is $59,597,938.

**OTHER DEBTS**

13.     Mi Pueblo has vendor claims totaling $10,858,406.  Mi Pueblo owes its 3,260 employees wages, taxes, and benefits totaling $2,076,167.23.   These employees are also owed for 201,278.45 hours of paid time off and accrued vacation valued at $1,597,595.45.  Separate First Day Motions address each of these categories of obligations.

**PROPOSED EXPENDITURES**

14.     Mi Pueblo proposes to expend cash collateral to pay essential operating expenses and claims in the minimum amount necessary to prevent irreparable harm to its business and operations.  Mi Pueblo's budget is attached as Exhibit "B" to the Chavez Declaration.  Mi Pueblo projects expenditures of $1,135,250 in Week 1, $4,466,250 in Week 2, and $2,245,382 in Week 3, and $4,136,250 in Week 4. Expenditures by month follow.  These expenditures take into account payroll expenses, as well as the payment of PACA claims and Section 503(b)(9) reclamation claims treated under Mi Pueblo's other First Day Motions.

15.     Failure to approve expenditures of cash collateral in the amounts requested will lead to a disruption in operations as employees leave, suppliers cease to deliver, and customers become dissatisfied and shop elsewhere.

I declare  under penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed this 22nd day of July, 2013, at San Jose, California.

/s/ Juvenal Chavez
Juvenal Chavez

Case: 13-53893    Doc# 11-1    Filed: 07/22/13    Entered: 07/22/13 14:10:42    Page 6 of 6