Heinz Binder (SBN 87908)
Robert G. Harris (SBN 124678)
Wendy W. Smith (SBN 133887)
Roya Shakoori (SBN 236383)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531

Email: Heinz@bindermalter.com
Email: Rob@bindermalter.com
Email: Wendy@bindermalter.com
Email: Roya@bindermalter.com

Proposed Attorneys for Debtor and Debtor-in-Possession
MI PUEBLO SAN JOSE, INC.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>MI PUEBLO SAN JOSE, INC.,<br><br>       Debtor. | Case No. 13-53893-ASW<br><br>Chapter 11<br><br>Date:<br>Time:<br>Place: Courtroom<br>      280 South First Street<br>      San Jose, California |

**MOTION FOR ORDER (I) GRANTING ADMINISTRATIVE EXPENSE STATUS TO DEBTOR'S UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM POST-PETITION DELIVERY OF GOODS ORDERED PRE-PETITION AND AUTHORIZING DEBTOR TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING PAYMENT FOR GOODS RECEIVED WITHIN TWENTY DAYS OF FILING AND ESTABLISHING ADMINISTRATIVE CLAIMS BAR DATE FOR SECTION 503(B)(9) CLAIMS; AND (III) ESTABLISHING PROCEDURES**

Case: 13-53893    Doc# 13    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 1 of 23

**AND TO ALLOW CLAIMS OF PERISHABLE AGRICULTURAL COMMODITIES ACT AND PACKERS AND STOCKYARD ACT CLAIMANTS**

TO SECURED CREDITOR WELLS FARGO BANK, N.A., THE TWENTY LARGEST UNSECURED CREDITORS, ALL PARTIES REQUESTING SPECIAL NOTICE, AND THE UNITED STATES TRUSTEE:

Debtor and debtor in possession herein Mi Pueblo San Jose, LLC ("Mi Pueblo") respectfully requests that the Court enter an order (i) granting administrative expense status to Mi Pueblo's undisputed obligations to vendors arising from post-petition delivery of goods ordered pre-petition and authorizing Mi Pueblo to pay such obligations in the ordinary course of business; (ii) authorizing Mi Pueblo to pay to the extent necessary in its business discretion for goods received within 20 days of the date of the commencement of the case and establishing an administrative claim bar date for the filing of such claims; and (iii) the establishing procedures, allowing claims and authorizing Mi Pueblo to pay, in its sole discretion, the pre-petition claims of (a) Perishable Agricultural Commodities Act ("PACA") claimants, (b) Packers and Stockyards Act ("PSA") claimants.

This Motion is supported by the Memorandum of Points and Authorities below and the declaration of Mi Pueblo's responsible individual, President, and Chief Executive Officer, Juvenal Chavez.

## JURISDICTION AND VENUE

1.    The above-captioned case was commenced on July 22, 2013, by the filing of a voluntary Chapter 11 petition before this court.  Mi Pueblo continues to operate its businesses and manage its assets as a debtor-in-possession pursuant to 11 U.S.C. §§

Case: 13-53893    Doc# 13    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 2 of 23

1107 and 1108.  This Court has jurisdiction over this bankruptcy case ("Case") under 28 U.S.C. §§ 157 and 1334.   This Motion constitutes a core proceeding under 28 U.S.C. §157(b)(2).   Venue of this Case is proper in this District under 28 U.S.C. §§ 1408 and 1409.   The statutory predicates for the relief requested in this Motion are Bankruptcy Code sections 105(a), 363, 502, 541, 1107 and 1108, the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499a *et seq.,* and the Packers and Stockyards Act of 1921 ("PSA"), 7 U.S.C. §§181 *et seq.*

## FACTUAL BACKGROUND

1.      Mi Pueblo is a California Corporation and the debtor-in-possession herein.

2.      In 1991, Juvenal Chavez and his wife opened Country Time Meats, a retail grocery store.  Over the intervening 22 years, Mr. Chavez built the enterprise from that single location into a 21-store chain, now incorporated as Mi Pueblo.  Mi Pueblo's business model has been to enter into leases to store locations that have been abandoned by large market grocery chains.  Mi Pueblo staffs its stores with bilingual employees and stocks merchandise geared to the Hispanic buyer.  Mi Pueblo proudly provides fresh, healthy products to under-served communities through its 15 Bay Area, 3 Central Coast, 3 Central Valley locations.  Mi Pueblo also maintains a warehouse and distribution center in Milpitas, and its corporate headquarters in San Jose.

3.      Mi Pueblo employs approximately 3,260 employees and had gross sales in 2012 of $413,273,348.

4.      Mi Pueblo is current on all obligations to employees, suppliers and its other trade and secured creditors.  The reasons why this case was filed related to (a) an impasse in negotiations with its primary secured creditor, Wells Fargo Bank, over certain loan covenants, and (b) litigation with a former landlord whose lease of property

Mi Pueblo never occupied has given rise to an unliquidated claim of approximately $26 million.

5.  70% of Mi Pueblo's daily sales are of fresh produce, meats and poultry whose suppliers may or do have rights under PACA and PSA. Those claims must be immediately ascertained and paid as the tracing trust rights of those trust beneficiaries would otherwise extend to all funds of the estate, including monies paid to secured creditors and non-PACA and non-PSA vendors. Mi Pueblo's numerous vendors are the pivotal link in Mi Pueblo's operations. Indeed, many of Mi Pueblo's vendors are "sole source" providers of certain goods. If these vendors refuse to ship additional goods, then Mi Pueblo would be left without an available source for same. Due to the perishable nature of certain items, Mi Pueblo is typically able to store and offer one week's supply of fresh produce, meats and poultry. If Mi Pueblo is unable to pay these pre-petition lien claimants and same cease supplying fresh produce, meats and poultry to Mi Pueblo, then Mi Pueblo will be unable ensure that it can meet customer preferences for more than a week, while alternative and likely less desirable sources of supplies are sought. Mi Pueblo is particularly sensitive to possible disruptions in the supply chain, since many of the goods it sells are perishable and have very short shelf lives.

6.  Certain of Mi Pueblo's vendors delivered goods to Mi Pueblo within 20 days of the July 24, 2013 Petition Date and may therefore be entitled to administrative priority for their invoices under Bankruptcy Code §§ 503(b)(9). Mi Pueblo estimates that a substantial portion of pre-petition claims held by all suppliers, including the vendors, arise from goods delivered within this 20 day window (the "503(b)(9) Claims"). Mi Pueblo believes it is essential that these creditors (the "20-Day Vendors") continue to be paid in the ordinary course of business in order to allow for its business and

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 4 of 23

operations to continue. Mi Pueblo estimates that more than 168 vendors made more than 1,600 deliveries to Mi Pueblo locations in the 20 days prior to the Petition Date and could assert reclamation claims as high as $8,465,068. Bankruptcy Code section 503(b)(9) provides for "[a]n allowed administrative claim . . . [for] . . . the value of any goods received by Mi Pueblo within 20 days before the date of commencement of a case under this title in which the goods have been sold to Mi Pueblo in the ordinary course of such debtor's business.

7. In the interests of maintaining critical business relationships with its 20-Day Vendors and to ensure continuity of its operations, the Mi Pueblo seeks this Court's order authorizing, but not directing, Mi Pueblo to make payments to the 20-Day Vendors on account of the 20-Day Goods in the ordinary course of its business up to the extent identified and authorized in its cash collateral budget. Mi Pueblo also seeks to establish an expedited administrative claims bar date by which all 503(b)(9) must be filed and establishing procedures for resolving disputed 503(b)(9) Claims.

8. Also prior to the filing of this case, in the ordinary course of business, Mi Pueblo ordered goods, the delivery of which will not occur until sometime after the filing date. The suppliers of these outstanding orders (the "Outstanding Orders") of perishable goods should not be forced either to stop shipment, take the goods back once delivered, or leave them at Mi Pueblo stores with only the prospect of receiving a general unsecured claim absent Mi Pueblo substituting post-petition purchase orders for its pre-filing orders. In order to prevent any disruption to Mi Pueblo's retail operations, and given that claims for goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, Mi Pueblo seeks an order (a) granting administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of Mi Pueblo arising from the acceptance

Case: 13-53893    Doc# 13    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 5 of 23

of goods subject to Outstanding Orders and (b) authorizing Mi Pueblo to satisfy such obligations in the ordinary course of business.

### Granting Administrative Priority to the Vendors and Authorizing Payment In the Ordinary Court for the Outstanding Goods Is in the Best Interests of Mi Pueblo and the Estate

9. The purpose of section 503 is to permit Mi Pueblo's business to operate for the benefit of its prepetition creditors. In order to effectuate a successful reorganization, third parties must be willing to furnish post-petition goods or services on credit. *In re Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1415-16 (5th Cir. 1992). Third parties might refuse to extend credit for fear that their claims would not be paid and section 503 induces third parties to extend credit and enhance the likelihood of a successful reorganization. *Id.* Section 503(b)(1) allows as administrative expenses the actual, necessary costs and expenses of preserving the estate. 11 U.S.C. § 503(b)(1). The claimant must show that the debt asserted to be an administrative expense that (1) arose from a transaction with Mi Pueblo as opposed to the preceding entry (or, alternatively, that the claimant gave consideration to Mi Pueblo); and (2) directly and substantially benefitted the estate. *Microsoft Corp. v. DAK Indus. (In re DAK Indus.)*, 66 F.3d 1091 (9th Cir. 1995).

10. As a consequence of the commencement of this Chapter 11 case, 20-Day Vendors and vendors with Outstanding Orders (collectively and alternatively, the "Vendors") may be concerned that goods and/or services ordered prior to the Petition Date pursuant to the Outstanding Orders, which will be delivered to Mi Pueblo after the Petition Date, will render the Vendors general unsecured creditors of Mi Pueblo's estate with respect to such goods or services. Vendors may refuse to ship or transport such

goods (or recall shipments) or perform services with respect to such Outstanding Orders, unless Mi Pueblo issues substitute purchase orders post-petition or obtains an order of the Court (i) confirming that all undisputed obligations of Mi Pueblo, arising from Mi Pueblo's post-petition receipt and acceptance of goods and services subject to the Outstanding Orders, administrative expense priority status under section 503(b) of the Bankruptcy Code and (ii) authorizing Mi Pueblo to satisfy such obligations in the ordinary course of its business under section 363(c) of the Bankruptcy Code. Mi Pueblo believes obtaining an order for the relief aforementioned would cause the least disruption of Mi Pueblo's operations and also enhance the value of the estate for creditors.

11. An order confirming administrative expense priority status would help persuade Vendors to allow existing and future shipments to go forward to Mi Pueblo. The goods that arrive at Mi Pueblo post-petition will undoubtedly directly and substantially benefit the estate. The estate would use the goods for subsequent sales to customers to finance its business. Consequently, it is reasonable to consider payment for such goods as subject to an administrative priority. Allowing Vendors an administrative priority claim for goods that are ordered prepetition and received post-petition will not provide the Vendors with any greater priority than they otherwise would have if the relief was not granted, and relief would not prejudice any other party in interest. However, such an order does provide comfort to these Vendors and encourage cooperation with Mi Pueblo without fear of being left unsecured.

12. Similarly, allowing Mi Pueblo to pay in its discretion for the 20-Day Goods and the Outstanding Orders goods and as authorized in the Budget will maintain Mi

Case: 13-53893     Doc# 13     Filed: 07/22/13     Entered: 07/22/13 14:17:18     Page 7 of 23

Pueblo's going concern and maximize the value of Mi Pueblo's assets for the benefit of creditors. Allowing such payments will not harm general unsecured creditors or alter the payment priorities set forth in the Bankruptcy Code. Furthermore, failure to pay may further jeopardize ongoing business relationships which may further erode the value of the estate to the detriment of all creditors.

13.     Mi Pueblo also requests that it be authorized, but not required, to pay vendors for goods received within 20 days of the Petition Date, subject to the entry of an interim order approving use of cash collateral. To assure that the amount of all such claims are identified and paid, or otherwise reserved for, Mi Pueblo requests that the Court set August 31, 2013 as the bar date (the "503(b)(9) Bar Date).

14.     To facilitate resolution of 503(b)(9) Claims, Mi Pueblo requests that the Court approve the following procedures:

a.     Allowed 503(b)(9) Claims. After the 503(b)(9) Bar Date, Mi Pueblo will review and propose to make payment to those creditors with 503(b)(9) Claims (a "503(b)(9) Claimant") that Mi Pueblo has determined is valid.  Mi Pueblo shall be authorized to pay such claims from cash on hand unless a party in interest has disputed the validity of such claim (an "Allowed 503(b)(9) Claim"). Any dispute regarding the validity of a 503(b)(9) Claim will be determined by a third party agreed on by Mi Pueblo and the claimant, or if no agreement can be reached, by the Court, such that the 503(b)(9) Claim may be paid as soon as practical. A holder of an Allowed 503(b)(9) Claim that accepts payment from Mi Pueblo on account of its Allowed 503(b)(9) Claim shall be deemed to have waived, released, and discharged any and all claims of any type, kind, or priority on account of or in connection with its 503(b)(9) Claim against the

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 8 of 23

(i) Debtor, (ii) any former, present or future officer, director or employee of Mi Pueblo, Mi Pueblo's assets and properties, and (iii) any secured creditor or funds constituting cash collateral.

　　　　b.　　If Mi Pueblo disputes the amount of a 503(b)(9) Claim, Mi Pueblo will file with the Court no later than September 25, 2013, a report (the "Disputed 503(b)(9) Claims Report") that lists the 503(b)(9) Claims Mi Pueblo believes are invalid in whole or in part. The Disputed 503(b)(9) Claims Report shall be sent by first-class mail to the following parties: (i) the Office of the United States Trustee, (ii) counsel to secured lender Wells Fargo Bank, (iii) counsel for any statutory committee, and (iv) the holder of the Disputed 503(b)(9) Claim.

　　　　c.　　Objections to the Disputed 503(b)(9) Claims Report.

　　　　　　i.　　No later than twenty (20) days following the service of the Disputed 503(b)(9) Claims Report, a 503(b)(9) Claimant who disputes Mi Pueblo's determination must provide Mi Pueblo with evidence or documentation demonstrating the basis for the dispute, including a statement identifying which information in the Disputed 503(b)(9) Claim Report is incorrect, specifying the correct information and stating any legal or factual basis for the objection. Objections must be served on (i) the Office of the United States Trustee, (ii) counsel to Mi Pueblo; (iii) counsel to Wells Fargo Bank, N.A., and (iv) counsel for any statutory committee.

　　　　　　ii.　　With respect to each 503(b)(9) Claim in the Disputed 503(b)(9) Claims Report as to which no objection is timely received, such 503(b)(9) Claim shall be deemed to be an invalid 503(b)(9) Claim (in whole or in parts specified in

Case: 13-53893    Doc# 13    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 9 of 23

the Disputed 503(b)(9) Claims Report) without further order of the Court and, to the extent invalid, shall not be entitled to a distribution on account of a 503(b)(9) Claim.

       iii.      With respect to each 503(b)(9) Claim in the Disputed 503(b)(9) Claims Report as to an objection is timely received and the parties resolve the objection, the 503(b)(9) Claim shall be treated as an Allowed 503(b)(9) Claim or a disallowed 503(b)(9) Claim, in whole or in part, as agreed to by the parties, without further order of the Court, upon the filing of a settlement report describing the resolution with the Court.

       iv.      With respect to each 503(b)(9) Claim in the Disputed 503(b)(9) Claims Report as to an objection is timely received and the parties cannot resolve the objection within fourteen (14) days of the date of the objection, Mi Pueblo will file a motion to disallow the 503(b)(9) Claim in whole or in part on not less than twenty-eight (28) days notice. Any opposition to such a motion may be filed no later than fourteen (14) days prior to the hearing and any reply shall be filed no later than seven (7) days prior to the hearing. To the extent the Court deems appropriate, the Court may order an evidentiary hearing to resolve any disputed questions of fact.

### *The PACA Claimants*

15.    In the ordinary course of business, Mi Pueblo obtains essential supplies of perishable agricultural commodities including fresh fruits and vegetables from various suppliers who may hold claims pursuant to PACA (each a "PACA Claimant" and together the "PACA Claimants")[1].

---

[1] The identification of these PACA Claimants is not an admission of any PACA liability on, nor is anything in this Motion an admission that the Packers and Stockyards Act applies to Mi Pueblo.

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 10 of 23

16.     PACA imposes a statutory trust on a buyer's entire inventory of "perishable agricultural commodities" and all products, receivables or proceeds related to the sale thereof immediately upon delivery of goods to a buyer (the "PACA Trust"). 7 U.S.C. §499a(b)(4)(A); *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 199 (3d Cir. 1998). PACA essentially imposes a senior lien on not just the agricultural products sold to a buyer by a PACA-covered vendor, but also the proceeds from the buyer's sale of that product. *See Idahoan Fresh,* 157 F.3d at 199.

17.     To preserve the statutory rights afforded to sellers of produce under PACA, the trust beneficiary (the PACA Claimant) must provide written notice (the "PACA Notice") to the buyer (Mi Pueblo) of its intent to preserve the benefits of the PACA Trust. *See, e.g., 7* U.S.C.§ 499e(c)(3). *See also Idahoan Fresh,* 157 F.3d at 199-200.

18.     Mi Pueblo has reviewed its records and identified at least approximately 27 potential PACA Claimants who made some 477 shipment to Mi Pueblo in the 30 days prior to the Petition Date.  These potential PACA Claimants were owed approximately $1,140,027 in pre-petition claims potentially subject to PACA (the "PACA Claims") on account of agricultural products delivered to Mi Pueblo prior to the Petition Date.  As a result, Mi Pueblo believes it likely that certain of these vendors are likely to file notices under PACA based on the filing of this bankruptcy case.

***The PSA Claimants***

19.     In addition to the PACA Claimants, Mi Pueblo has certain vendors who may assert claims pursuant to PSA as a result of providing Mi Pueblo with beef, swine,

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 11 of 23

and poultry as part of Mi Pueblo's ordinary course of business (each a "PSA Claimant" and together, the "PSA Claimants"). Mi Pueblo purchases bulk beef, swine, and poultry, which Mi Pueblo then offer for sale in its grocery stores.

20.     PSA imposes a statutory trust on a buyer's entire inventory of, or receivables or proceeds from "meat, meat food products, or livestock products derived therefrom" immediately upon delivery of goods to a buyer (the "PSA Trust"). 7 U.S.C. § 196(b); *In re CFP Liquidating Estate,* 405 B.R. 694, 697 (Bkrtcy. D.Del. 2009).

21.     In order to preserve the statutory rights afforded to sellers of produce under PSA, the trust beneficiary (the PSA Claimant) must provide written notice (the "PSA Notice") to the buyer (Mi Pueblo) of its intent to preserve the benefits of the PSA Trust. *See, e.g.,* 7 U.S.C.§ 196(b); *See also In re Gotham Provision Co., Inc., 669* F.2d 1000, 1004 (5th Cir. 1982). PSA, like PACA, imposes a senior lien on not just the bulk beef, pork, and poultry purchased and processed by Mi Pueblo, but also the proceeds from the buyer's sale of that product.

22.     Mi Pueblo has reviewed its records and operations and believes that it is not subject to PSA.  However, Mi Pueblo believes that certain vendors are likely to assert claims under PSA ("the PSA Claims") on account of bulk beef, swine and poultry delivered to Mi Pueblo prior to the Petition Date, and to file notices under PSA based on the filing of this bankruptcy case.

23.     By this Motion, Mi Pueblo seeks entry of an order under Bankruptcy Code sections 105(a), 363, 502, 541, 1107 and 1108: (a) authorizing, but not directing, Mi Pueblo to pay, in its sole discretion, certain obligations to PACA Claimants and PSA Claimants as Mi Pueblo determines, in the exercise of its business judgment, are

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 12 of 23

necessary or appropriate to facilitate operations in this case; and (b) establishing a final hearing date on this Motion.

**Proposed Procedures For PACA and PSA Claims**

24.     Mi Pueblo proposes to make payments on account of eligible PACA Claims pursuant to the following procedures (the "PACA Procedures"):

a.     Except as otherwise provided by PACA, the PACA Claimant must provide written notice to Mi Pueblo within thirty (30) days (i) after expiration of the time prescribed by which payment must be made, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to Mi Pueblo shall set forth information in sufficient detail to identify the transaction subject to the PACA Trust;

b.     Mi Pueblo will attempt to reach a consensual resolution of PACA Claims with the PACA Claimants and to the extent such a consensual resolution is reached, Mi Pueblo will pay such PACA Claimant promptly in the ordinary course of business;

c.     Mi Pueblo will file a report (the "Report") within ninety (90) days of the Petition Date, on notice to parties in interest and any statutory committee appointed in these Cases, listing those PACA Claims which were not resolved and providing amounts which Mi Pueblo believe are valid, if any;

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 13 of 23

d.      Any PACA Claimants who elect to accept the PACA Claim amount as contained in the Report do not need to do anything;

e.      A claimant (each, an "Objecting Claimant") objecting to Mi Pueblo's determination of the PACA Claim as set forth in the Report must provide Mi Pueblo with evidence or documentation demonstrating the basis for the dispute, including a statement identifying which information in the Report is incorrect, specifying the correct information, and stating any legal or factual basis for the objection (each, an "Objection");

f.      Objections must be filed and served upon Binder & Malter and Mi Pueblo c/o Mr. John Zzott 1775 Story Road, San Jose, CA, 95122, john.zott@mipueblofoods.com, and such Objection shall be filed with the Clerk of the United States Bankruptcy Court, Northern District of California so as to be **actually received** no later than the twentieth day following the date the Report is filed (the "Objection Deadline");

g.      The failure of an Objecting Claimant to comply with subparagraphs (e) and f. above shall constitute a waiver of the Objecting Claimant's right to object to the proposed treatment and allowed amount of such PACA Claim unless the Court orders otherwise;

h.      Any PACA Claimant who fails to timely object to the PACA Claim listed in the Report on or before the Objection Deadline will be deemed to have assented to the amount of PACA Claim as listed on the Report and such claims will be deemed to be allowed PACA Claims;

Case: 13-53893    Doc# 13    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 14 of 23

i.      Mi Pueblo is authorized to negotiate with all Objecting Claimants and to adjust the PACA Claim amount to reach an agreement regarding the Objecting Claimant's PACA Claim. In the event Mi Pueblo and an Objecting Claimant are able to settle on the amount and/or treatment of the Objecting Claimant's PACA Claim, the PACA Claim will be deemed an allowed PACA Claim in the settled amount, and will be paid promptly in the ordinary course of business;

j .     In the event that no consensual resolution of the Objecting Claimant's PACA Claim is reached within sixty (60) days after the Objection Deadline (or such later  as the parties agree), Mi Pueblo shall file a motion for determination of the Objecting Claimant's PACA Claim and set such motion for hearing (the "Determination Hearing"). The Objecting Claimant's PACA Claim, if any, shall be deemed an allowed PACA Claim as fixed by the Court in the Determination Hearing or as agreed to by Mi Pueblo and the Objecting Claimant prior to a determination by the Court in the Determination Hearing;

k.      Mi Pueblo is authorized to resolve PACA Claims in full satisfaction thereof and make certain compromises in connection with an agreement, which provides Mi Pueblo with favorable credit terms; and any PACA Claimant who accepts payment from Mi Pueblo on account of a valid PACA Claim will be deemed to have waived any and all claims of any nature, kind or priority against (a) Mi Pueblo; (b) Mi Pueblo's estate and all property of the estate; (c) Mi Pueblo's officers, directors and members; and (d) any funds and other property held in trust by Mi Pueblo that do not constitute "property of the estate."

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 15 of 23

**PSA Claimants**

25.     As set forth herein, after reviewing its records and operations, Mi Pueblo believes that it is not subject to PSA and that no vendor holds a potentially valid PSA Claim.  Nonetheless, Mi Pueblo expects certain vendors to assert claims against Mi Pueblo under PSA. Mi Pueblo proposes to review PSA Claims and to make payments on account of eligible PSA Claims pursuant to the following procedures (the "PSA Procedures"):

a.     Except as otherwise provided by PSA, the PSA Claimant must provide written notice to Mi Pueblo within thirty (30) days (i) after expiration of the time prescribed by which payment must be made, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to Mi Pueblo shall set forth information in sufficient detail to identify the transaction subject to the PSA Trust;

b.     Mi Pueblo will attempt to reach a consensual resolution of PSA Claims with the PSA Claimants and to the extent such a consensual resolution is reached, Mi Pueblo will pay such PSA Claimant promptly in the ordinary course of business;

c.     Mi Pueblo will file a report (the "Report") within ninety (90) days of the Petition Date, on notice to parties in interest and any statutory committee

appointed in the Case, listing those PSA Claims which were not resolved and providing amounts which Mi Pueblo believe are valid, if any;

        d.      Any PSA Claimants who elect to accept the PSA Claim amount as contained in the Report do not need to do anything;

        e.      A claimant (each, an "Objecting Claimant") objecting to Mi Pueblo's determination of the PSA Claim as set forth in the Report must provide Mi Pueblo with evidence or documentation demonstrating the basis for the dispute, including a statement identifying which information in the Report is incorrect, specifying the correct information, and stating any legal or factual basis for the objection (each, an "Objection");

        f.      Objections must be filed and served upon Binder & Malter, LLP and Mi Pueblo c/o Mr. John Zott 1775 Story Road, San Jose, CA, 95122, john.zott@mipueblofoods.com.

        g.      The failure of an Objecting Claimant to comply with subparagraphs (e) and (f) above shall constitute a waiver of the Objecting Claimant's right to object to the proposed treatment and allowed amount of such PSA Claim unless the Court orders otherwise;

        h.      Any PSA Claimant who fails to timely object to the PSA Claim listed in the Report on or before the Objection Deadline will be deemed to have assented to the amount of PSA Claim as listed on the Report and such claims will be deemed to be allowed PSA Claims;

        i.      Mi Pueblo is authorized to negotiate with all Objecting Claimants and to adjust the PSA Claim amount to reach an agreement regarding the

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 17 of 23

Objecting Claimant's PSA Claim. In the event Mi Pueblo and an Objecting Claimant are able to settle on the amount and/or treatment of the Objecting Claimant's PSA Claim, the PSA Claim will be deemed an allowed PSA Claim in the settled amount and will be paid promptly in the ordinary course of business;

        j.      In the event that no consensual resolution of the Objecting Claimant's PSA Claim is reached within sixty (60) days after the Objection Deadline (or such later date as the parties agree), Mi Pueblo shall file a motion for determination of the Objecting Claimant's PSA Claim and set such motion for hearing (the "Determination Hearing"). The Objecting Claimant's PSA Claim, if any, shall be deemed an allowed PSA Claim as fixed by the Court in the Determination Hearing or as agreed to by Mi Pueblo and the Objecting Claimant prior to a determination by the Court in the Determination Hearing;

        k.      Mi Pueblo are authorized to resolve PSA Claims in full satisfaction thereof and make certain compromises in connection with an agreement, which provides the Debtors with favorable credit terms; and

        l.      Any PSA Claimant who accepts payment from Mi Pueblo on account of a valid PSA Claim will be deemed to have waived any and all claims of any nature, kind or priority against (a) Mi Pueblo; (b) Mi Pueblo's estate and all property of the estate; (c) Mi Pueblo's officers, directors and members; and (d) any funds and other property held in trust by Mi Pueblo that do not constitute "property of the estate."

**PACA CLAIMS AND PSA CLAIMS TAKE PRIORITY OVER SUBSTANTIALLY A L L OTHER CLIAMS AND A L L TRUST FUND ASSETS ARE PAYABLE OUTSIDE OF THE RESTRICTIONS OF THE BANKRUPTCY CODE**

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 18 of 23

26.     Under PACA and PSA, Mi Pueblo hold the eligible produce and bulk beef, pork and poultry in trust for the PACA Claimants and PSA Claimants until the PACA claims and PSA claims are paid in full. These trusts constitute floating, non-segregated, statutory trusts which extend not only to the produce and bulk meat, but inventories of food or other products derived from the produce and bulk meat and receivables from the sale of such products. *See Consumers Produce Co., Inc.,* 16 F.3d at 1378 (citing 7 U.S.C. § 499e(c)(2)); *In re Mavin Properties, Inc.,* 76 B.R. 150, 152-153 (9t h Cir. BAP 1987) (citing 7 U.S.C. §196(b)). The provisions of PACA and PSA are sufficiently similar such that, as Congress dictated, case law interpreting one act is instructive when interpreting the other. *See In re CFP Liquidating Estate,* 405 B.R. at 697, n. 3; *In re Fresh Approach,* 51 B.R. 412, 419-420, n. 3 and 4 (Bkrtcy N.D.Tex. 1985).

27.     The statutory trust "straightforwardly provides unpaid suppliers with priority over secured lenders" with regard to PACA trust assets and PSA trust assets held in trust by purchasers. *Consumers Produce Co., Inc.,* 16 F.3d at 1379. *See also Boulder Fruit Express & Heger Organic Farm Sales* v. *Transp. Factoring, Inc.,* 251 F,3d 1268, 1270 (9th Cir. 2001) (PACA "imposes a 'nonsegregated floating trust' on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust. Through this trust, the sellers of the commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors.") (quoting *Endico Potatoes, Inc.* v. *CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1067 (2d Cir. 1995).

28.     As a result, the PACA Claimants and PSA Claimants hold claims that, to the extent they are valid PACA or PSA claims, take priority over all other claims,

including the claims of Mi Pueblo's pre-petition secured lenders who may allege a security interest in the produce, meat products, or the proceeds of the produce or meat products delivered to Mi Pueblo. Therefore, the payment of the eligible PACA Claims and PSA Claims cannot prejudice the rights of any party in interest in these Cases, as the eligible PACA Claims and PSA Claims are likely entitled to payment ahead of all other claims in any event.

29.     Moreover, pursuant to Bankruptcy Code § 541(d), the PACA Trust assets and PSA Trust assets are not property of Mi Pueblo's estate due to the imposition of the trusts. *See, e.g., In re Churchfield,* 277 B.R. 769, 776 (Bkrtcy E.D.Cal. 2002) citing *In re Milton Poulos, Inc.,* 107 B.R. 715, 718 (9th Cir. B.A.P. 1989). As a result, the priority scheme imposed upon property of the estate under the Bankruptcy Code is inapplicable to property that is held in the above trusts for the benefit of PACA Claimants and PSA Claimants.

30.     In certain circumstances, officers, directors or members of a corporate entity who are in a position to control trust assets but breach the fiduciary duty to preserve those assets may be held personally liable under PACA or PSA. *See, e.g, Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280, 283 (9th Cir. 1997); *Goldman-Hayden Co. v. Fresh Source Produce, Inc.,* 217 F.3d 348, 350 (5th Cir. 2000); *Bruhn's Freezer Meats of Chicago, Inc.* v. *U.S. Dept. of Agriculture,* 438 F.2d 1332, 1343 (8th Cir. 1971). To the extent any valid obligations arising under PACA or PSA are not satisfied by Mi Pueblo, Mi Pueblo's officers, directors or members may be subject to lawsuits during the pendency of these Cases. Such lawsuits would distract these officers, directors and

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 20 of 23

members from the critical tasks facing Mi Pueblo in this Case, while unfairly imposing the risk of liability shifting from Mi Pueblo to these individuals.

31. Finally, absent the relief requested herein, Mi Pueblo will likely face several motions or possibly adversary proceedings seeking the payment of PACA Claims and PSA Claims. The efforts of Mi Pueblo and its professionals would be better spent effectuating the successful reorganization of Mi Pueblo rather than addressing these motions or adversary proceedings, particularly in light of the exemption of such property from Mi Pueblo's estate and the super-priority granted PACA Claims and PSA Claims.

32. In consideration of the foregoing, Mi Pueblo submits that the PACA Procedures and PSA Procedures are necessary to efficiently address the PACA Claims and PSA Claims, and important to the orderly administration of these Cases.

## DEBTOR'S RESERVATION OF RIGHTS

33. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against Mi Pueblo, a waiver of Mi Pueblo's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code § 365. Mi Pueblo expressly reserves its rights to contest any invoice of any vendor under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of Mi Pueblo's rights to dispute such claim subsequently.

## NECESSITY FOR IMMEDIATE RELIEF

Case: 13-53893    Doc# 13    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 21 of 23

34.     Federal Rule of Bankruptcy Procedure 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant. . . (b) a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."

35.     By the very nature of its industry, interruption of Mi Pueblo's supply chain would result in an immediate disruption to Mi Pueblo's operations and cause irreparable harm to the estate and creditors.  Mi Pueblo critically depends on the goodwill and confidence of the vendors to ensure the necessary provision of those goods and services upon which its entire business depends. In addition, Rule 6003(b), by its own terms, applies only to "property of the estate" and, as discussed above, the PACA Trust assets and PSA Trust assets are not "property of the estate," though the cash used to pay 503(b)(9) claims would come from estate property.

36.     Moreover, Mi Pueblo is initially seeking an interim order granting the relief requested by this Motion, to be followed by a final order at a date that will be twenty days from the Petition Date.   As other courts have recognized, granting interim relief is not inconsistent with Bankruptcy Rule 6003. *See, e.g., In re First NLC Fin. Serv., LLC,* 382 B.R. 547, 549 (Bkrtcy.S.D.Fla. 2008). Accordingly, this Court should authorize the limited relief requested herein.

**WHEREFORE,** Mi Pueblo respectfully request that the Court enter an order as follows

**A.     G**ranting administrative expense status to Mi Pueblo's undisputed obligations to vendors arising from post-petition delivery of goods ordered pre-petition

and authorizing but not directing Mi Pueblo to pay such obligations in the ordinary course of business;

        B.     Establishing August 31, 2013 as the 503(b)(9) Bar Date;

        C.     Authorizing, but not requiring Mi Pueblo to pay, to the extent necessary in its business discretion for goods received within 20 days of the date of the commencement of the case, and establishing procedures to identify and resolve 503(b)(9) Claims.

        D.     Authorizing and establishing the PACA Procedures and PSA Procedures described herein; (b) authorizing, but not directing, Mi Pueblo to pay, in Mi Pueblo's sole discretion, the pre-petition claims of PACA Claimants and PSA Claimants, on the terms described herein; and (c) granting such other relief as is just and proper.

Dated: July 22, 2013              BINDER & MALTER, LLP


                            By:    /s/ Robert G. Harris
                                     Robert G. Harris

                            Proposed Attorneys for Debtor and Debtor-in-possession TECHNOLOGY PROPERTIES LIMITED LLC

Case: 13-53893   Doc# 13   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 23 of 23