Heinz Binder (SBN 87908)
Robert G. Harris (SBN 124678)
Wendy W. Smith (SBN 133887)
Roya Shakoori (SBN 236383)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531

Email: Heinz@bindermalter.com
Email: Rob@bindermalter.com
Email: Wendy@bindermalter.com
Email: Roya@bindermalter.com

Proposed Attorneys for Debtor and Debtor-in-Possession
MI PUEBLO SAN JOSE, INC.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 13-53893-ASW |
| MI PUEBLO SAN JOSE, INC., | Chapter 11 |
| Debtor. | Date:<br>Time:<br>Place: Courtroom<br>280 South First Street<br>San Jose, California |

**DECLARATION OF JUVENAL CHAVEZ IN SUPPORT OF MOTION FOR ORDER (I) GRANTING ADMINISTRATIVE EXPENSE STATUS TO DEBTOR'S UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM POST-PETITION DELIVERY OF GOODS ORDERED PRE-PETITION AND AUTHORIZING DEBTOR TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING PAYMENT FOR GOODS RECEIVED WITHIN TWENTY DAYS OF FILING AND ESTABLISHING ADMINISTRATIVE CLAIMS BAR DATE FOR SECTION 503(B)(9)**

Case: 13-53893   Doc# 13-1   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 1 of 7

**CLAIMS; AND (III) ESTABLISHING PROCEDURES AND TO ALLOW CLAIMS OF PERISHABLE AGRICULTURAL COMMODITIES ACT AND PACKERS AND STOCKYARD ACT CLAIMANTS**

I, Juvenal Chavez, know the following matters to be true of my own, personal knowledge and, if called as a witness, could and would testify competently thereto:

1. I am the President and Chief Executive Officer of Debtor and debtor in possession herein Mi Pueblo San Jose, LLC ("Mi Pueblo"). I am familiar with the matters set forth below as a result of the execution of my duties in this role.

2. Mi Pueblo is a California Corporation and the debtor-in-possession herein.

3. In 1991, my wife and I opened Country Time Meats, a retail grocery store. Over the intervening 22 years, I built the enterprise from that single location into a 21-store chain, now incorporated as Mi Pueblo. Mi Pueblo's business model has been to enter into leases to store locations that have been abandoned by large market grocery chains. Mi Pueblo staffs its stores with bilingual employees and stocks merchandise geared to the Hispanic buyer. Mi Pueblo proudly provides fresh, healthy products to under-served communities through its 15 Bay Area, 3 Central Coast, 3 Central Valley locations. Mi Pueblo also maintains a warehouse and distribution center in Milpitas, and its corporate headquarters in San Jose.

4. Mi Pueblo employs approximately 3,260 employees and had gross sales in 2012 of $413,273,348.

5. Mi Pueblo is current on all obligations to employees, suppliers and its other trade and secured creditors. Among the reasons why this case was filed related to (a) an impasse in negotiations with its primary secured creditor, Wells Fargo Bank, over certain loan covenants, and (b) litigation with a former landlord whose lease

Case: 13-53893    Doc# 13-1    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 2 of 7

of property Mi Pueblo never occupied has given rise to an unliquidated claim of approximately $26 million.

6. 70% of Mi Pueblo's daily sales are of fresh produce, meats and poultry whose suppliers may or do have rights under PACA and PSA. Those claims must be immediately ascertained and paid as the tracing trust rights of those trust beneficiaries would otherwise extend to all funds of the estate, including monies paid to secured creditors and non-PACA and non-PSA vendors. Mi Pueblo's numerous vendors are the pivotal link in Mi Pueblo's operations. Indeed, many of Mi Pueblo's vendors are "sole source" providers of certain goods. If these vendors refuse to ship additional goods, then Mi Pueblo would be left without an available source for same. Due to the perishable nature of certain items, Mi Pueblo is typically able to store and offer one week's supply of fresh produce, meats and poultry. If Mi Pueblo is unable to pay these pre-petition lien claimants and same cease supplying fresh produce, meats and poultry to Mi Pueblo, then Mi Pueblo will be unable ensure that it can meet customer preferences for more than a week, while alternative and likely less desirable sources of supplies are sought. Mi Pueblo is particularly sensitive to possible disruptions in the supply chain, since many of the goods it sells are perishable and have very short shelf lives.

7. Certain of Mi Pueblo's vendors delivered goods to Mi Pueblo within 20 days of the July 24, 2013 Petition Date and may therefore be entitled to administrative priority for their invoices under Bankruptcy Code §§ 503(b)(9). Mi Pueblo estimates that a substantial portion of pre-petition claims held by all suppliers,

Case: 13-53893    Doc# 13-1    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 3 of 7

including the vendors, arise from goods delivered within this 20 day window (the "503(b)(9) Claims"). Mi Pueblo believes it is essential that these creditors (the "20-Day Vendors") continue to be paid in the ordinary course of business in order to allow for its business and operations to continue. Mi Pueblo estimates that more than 168 vendors made more than 1,600 deliveries to Mi Pueblo locations in the 20 days prior to the Petition Date and could assert reclamation claims as high as $8,465,068. A list of these vendors is attached hereto as Exhibit "A".

8. As a consequence of the commencement of this Chapter 11 case, 20-Day Vendors and vendors with Outstanding Orders (collectively and alternatively, the "Vendors") may be concerned that goods and/or services ordered prior to the Petition Date pursuant to the Outstanding Orders, which will be delivered to Mi Pueblo after the Petition Date, will render the Vendors general unsecured creditors of Mi Pueblo's estate with respect to such goods or services. Vendors may refuse to ship or transport such goods (or recall shipments) or perform services with respect to such Outstanding Orders, unless Mi Pueblo issues substitute purchase orders post-petition or obtains an order of the Court (i) confirming that all undisputed obligations of Mi Pueblo, arising from Mi Pueblo's post-petition receipt and acceptance of goods and services subject to the Outstanding Orders, administrative expense priority status under section 503(b) of the Bankruptcy Code and (ii) authorizing Mi Pueblo to satisfy such obligations in the ordinary course of its business under section 363(c) of the Bankruptcy Code. Mi Pueblo believes obtaining an order for the relief aforementioned would

Case: 13-53893   Doc# 13-1   Filed: 07/22/13   Entered: 07/22/13 14:17:18   Page 4 of 7

cause the least disruption of Mi Pueblo's operations and also enhance the value of the estate for creditors.

9. An order confirming administrative expense priority status would help persuade Vendors to allow existing and future shipments to go forward to Mi Pueblo. The goods that arrive at Mi Pueblo post-petition will undoubtedly directly and substantially benefit the estate. The estate would use the goods for subsequent sales to customers to finance its business. Consequently, it is reasonable to consider payment for such goods as subject to an administrative priority. Allowing Vendors an administrative priority claim for goods that are ordered prepetition and received post-petition will not provide the Vendors with any greater priority than they otherwise would have if the relief was not granted, and relief would not prejudice any other party in interest. However, such an order does provide comfort to these Vendors and encourage cooperation with Mi Pueblo without fear of being left unsecured.

10. Similarly, allowing Mi Pueblo to pay in its discretion for the 20-Day Goods and the Outstanding Orders goods and as authorized in the Budget will maintain Mi Pueblo's going concern and maximize the value of Mi Pueblo's assets for the benefit of creditors.

11. In the ordinary course of business, Mi Pueblo obtains essential supplies of perishable agricultural commodities including fresh fruits and vegetables from

various suppliers who may hold claims pursuant to PACA (each a "PACA Claimant" and together the "PACA Claimants")[1].

12. Mi Pueblo has reviewed its records and identified at least approximately 64 potential PACA Claimants who made some 477 shipment to Mi Pueblo in the 30 days prior to the Petition Date. These potential PACA Claimants were owed approximately $1,140,027 in pre-petition claims potentially subject to PACA (the "PACA Claims") on account of agricultural products delivered to Mi Pueblo prior to the Petition Date. As a result, Mi Pueblo believes it likely that certain of these vendors are likely to file notices under PACA based on the filing of this bankruptcy case. A list of these vendors is attached hereto as Exhibit "B".

13. In addition to the PACA Claimants, Mi Pueblo has certain vendors who may assert claims pursuant to PSA as a result of providing Mi Pueblo with beef, swine, and poultry as part of Mi Pueblo's ordinary course of business (each a "PSA Claimant" and together, the "PSA Claimants"). Mi Pueblo purchases bulk beef, swine, and poultry, which Mi Pueblo then offer for sale in its grocery stores.

14. After reviewing its records and operations, Mi Pueblo believes that it is not subject to PSA and that no vendor holds a potentially valid PSA Claim. Nonetheless, Mi Pueblo expects certain vendors to assert claims against Mi Pueblo under PSA.

---

[1] The identification of these PACA Claimants is not an admission of any PACA liability on, nor is anything in this Motion an admission that the Packers and Stockyards Act applies to Mi Pueblo.

Case: 13-53893    Doc# 13-1    Filed: 07/22/13    Entered: 07/22/13 14:17:18    Page 6 of 7

1

2   I declare  under penalty of perjury of the laws of the United States that the

3 foregoing is true and correct.  Executed this 22nd day of July, 2013, at San Jose,

4 California.

5

6                  /s/ Juvenal Chavez

7                  Juvenal Chavez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF JUVENAL CHAVEZ**              **Page 7**

Case: 13-53893  Doc# 13-1  Filed: 07/22/13  Entered: 07/22/13 14:17:18  Page 7 of
7