BERNARD S. GREENFIELD (SBN 066017)
MARCIA E. GERSTON (SBN 119026)
MAUREEN A. HARRINGTON (SBN 194606)
GREENFIELD SULLIVAN DRAA & HARRINGTON LLP
55 South Market Street, Suite 1500
San Jose, CA 95113
Tel: (408) 995-5600
Fax: (408) 995-0308
Email: bgreenfield@greenfieldsulllivan.com
mgerston@greenfieldsullivan.com
mharrington@greenfieldsullivan.com

Attorneys for Creditor
Pacific Meat Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>MI PUEBLO SAN JOSE, INC.,<br><br>Debtor. | Case No. 13-53893<br>Chapter 11<br><br>OBJECTION BY PACIFIC MEAT COMPANY TO INTERIM MOTION BY DEBTOR TO APPROVE USE OF CASH COLLATERAL AND REQUEST FOR SETTING OF INTERIM AND FINAL HEARINGS THEREON<br><br>Date: August 28, 2013<br>Time: 10:30 a.m.<br>Place: Courtroom 3020<br>280 South 1st Street<br>San Jose, California |

Creditor Gaukel Enterprises, Inc. d/b/a Pacific Meat Company ("Pacific Meat") hereby objects to the Interim Motion by Debtor to Approve Use of Cash Collateral and Request for Setting of Interim and Final Hearings Thereon ("Motion") of Debtor Mi Pueblo San Jose, Inc. ("Debtor" or "Mi Pueblo"), as follows:

Procedural Background. The Debtor filed for protection under the Bankruptcy Code on July 22, 2013 and filed the Motion (Docket #11), along with other so-called First Day Motions, on the same date. Among other things, the Motion requests that the Debtor be permitted to use cash collateral in which Wells Fargo Bank, N.A. ("WFB" or the "Bank") claims a security interest, under certain terms.

An interim hearing was held on August 25, 2013 and an Interim Order on the Motion was entered on July 26, 2013 (Docket #46). Among other things, the Interim Order: (i) allowed the Debtor to use the Bank's cash collateral as set forth in the Budget attached as Exhibit 1 to the Interim Order (the "Budget," Docket #46-1); and (ii) provided adequate protection to the Bank through a variety of methods, including payment of Adequate Protection Payments and the granting of a non-avoidable perfected replacement lien in the Bank's collateral and "an administrative expense claim under 11 U.S.C. §§ 503(b) and 507(a)(1) with a super priority status pursuant to 11 U.S.C. § 507(b) to the extent that the Bank is not adequately protected with respect to Mi Pueblo's use of Cash Collateral." (Interim Order, p.5, ¶¶ 3(c), 4, and 6.) A final hearing was scheduled for August 21, 2013.

Non-payment of 503(b)(9) Administrative Claims in Contravention of Interim Order and Budget. The Budget provides that 503(b)(9) claims will be paid over the course of three weeks, as follows:

| Period & Week | Pd 8 W2 | Pd 8 W3 | Pd 8 W4 | Pd 9 W1 |
|---|---|---|---|---|
| Week Ending | Sun, 7/28/13 | 8/4/2013 | 8/11/2013 | 8/18/2013 . . . |
| . . . | | | | |
| 503 (b) 9 | | 3,500,000 | 2,500,000 | 2,500,000 |

(See Budget, line item titled 503 (b) 9.)

The continued viability of the Debtor is dependent upon payment of

Page 2
OBJECTION BY PACIFIC MEAT COMPANY TO INTERIM MOTION BY DEBTOR TO APPROVE USE OF CASH COLLATERAL AND REQUEST FOR SETTING OF INTERIM AND FINAL HEARINGS THEREON

503(b)(9) claims because the Debtor needs particularized merchandise for its customers, much of which is provided by small businesses like Pacific Meat and not readily replaceable. These suppliers must be paid so they are able and willing to continue to supply the Debtor with the products the Debtor needs to successfully maintain its customer base.

No objection had been made to the Motion previously since creditors like Pacific Meat, a supplier to the Debtor of meat, chicken and related products, had been lead to believe that suppliers with administrative claims under 11 U.S.C. §503(b)(9) would be paid promptly,[1] so that the Debtor would be able to keep its doors open and continue to provide its customers with the products they want. The Motion itself stated that "Mi Pueblo proposes to expend cash collateral to pay essential operating expenses and claims in the minimum amount necessary to prevent irreparable harm to its business and operations. . . . These expenditures take into account . . . Section 503(b)(9) reclamation [sic] claims treated under Mi Pueblo's other First Day Motions." (Motion, p. 8, ¶ 14.) The Budget attached to the Interim Order *reflects payments of $8.5 million of 503(b)(9) claims by August 18.* The Bank, in addition to helping create the Budget, reiterated this sentiment at the hearing on July 25, when its counsel stated that the Bank was working with the Debtor to make sure that the stores would not close.

<u>Creditors Were Mislead by the Bank.</u>  Pacific Meat and the other supplier creditors holding 503(b)(9) administrative claims, however, were mislead. Although the Debtor has properly submitted claims for review by the Bank under the Procedures Order, *not one has been paid.* The Bank has objected to the payment

---

[1] After a review by the Bank as set forth in the other orders covering the First Day Motions, including the Order (i) Granting Administrative Expense Status to Debtor's Undisputed Obligations to Vendors Arising from Post-petition Delivery of Goods Ordered Pre-petition and Authorizing Debtor to Pay Such Obligations in the Ordinary Course of Business; (ii) Authorizing Payment for Goods Received Within Twenty Days of Filing and Establishing Administrative Claims Bar Date for Section 503(b)(9) Claims; and (iii) Establishing Procedures and to Allow Claims of Perishable Agricultural Commodities Act and Packers and Stockyard Act Claimants (the "Procedures Order"), which allowed the Bank three days to review 503(b)(9) claims before allowing them for payment.

of the claims which have been submitted by the Debtor, stating that "the Bank will consent to the payment of [Section 503(b)(9) claims] upon the earlier of the effective Plan of Reorganization confirmed by Mi Pueblo or at such time as the outstanding obligations owed by Mi Pueblo to the Bank, including all unpaid principal, interest, attorneys' fees and out of pocket costs, are paid in full." (Bank's Response to Debtor's request for payment of administrative expense claim, August 6, 2013.) Payment of specific claims may be an issue for another day, but the Bank's refusal to pay 503(b)(9) claims *until it is paid in full or a plan is confirmed* is wholly contrary to the expectations set by the Motion, the Bank's statements through its counsel at the interim hearing on the Motion, and the Budget approved by the Bank attached to the Interim Order, on which creditors were entitled to rely. Now that Pacific Meat and other creditors see that the true intention of WFB is *not* to pay Mi Pueblo's suppliers promptly, to the detriment of the Debtor as well as the suppliers,[2] Pacific Meat objects to the Motion.

At the hearing scheduled for August 21, 2013, the court and creditors were advised that the Debtor and the Bank requested an additional week to try to resolve issues between them regarding a final Cash Collateral Order. The Budget, was retained in full, including the line item showing payments of 503(b)(9) claims. The Bank continues to refuse to pay any of those claims. Any further Cash Collateral Order must address the payment of these claims.

A Superpriority Lien Should Not Be Granted. The request for a superpriority lien in the Motion also shows the overreaching of the Bank. In addition to the misrepresentations to the creditors as stated above, the Bank has demanded a superpriority lien over and above monthly adequate protection payments and a

---

[2] Many of the Debtor's suppliers, including Pacific Meat, are small businesses which cannot easily carry a receivable of hundreds of thousands of dollars. (Pacific Meat's 503(b)(9) claim is in the amount of $432,642.60.) Pacific Meat is informed and believes that most creditors are now supplying the Debtor on a C.O.D. basis (whereas before they were on credit terms) and that some have been required to obtain lines of credit due to the nonpayment by Mi Pueblo. If they are not paid soon, many will likely cease supplying Mi Pueblo, which does not have alternative suppliers for many of the products it supplies.

Page 4
OBJECTION BY PACIFIC MEAT COMPANY TO INTERIM MOTION BY DEBTOR TO APPROVE USE OF CASH COLLATERAL AND REQUEST FOR SETTING OF INTERIM AND FINAL HEARINGS THEREON
Case: 13-53893    Doc# 161    Filed: 08/23/13    Entered: 08/23/13 17:25:20    Page 4 of 5

valid, perfected, non-avoidable replacement lien in its collateral. The demand for a superpriority lien (which Pacific Meat understands was offered by the Debtor in its Motion at the insistence of WFB) has been made notwithstanding the fact that the Bank's loan is secured by all of Mi Pueblo's accounts receivable and rights to payment, inventory and equipment and additional security obtained by WFB from the Debtor and its related entity, Cha-Cha Enterprises, just months prior to the bankruptcy filing. According to the Motion, "notwithstanding Mi Pueblo's use of the proceeds collected, . . . the remaining security will exceed the balance owed [to the Bank] by more than 200%." (Memorandum of Points and Authorities in Support of Motion to Approve Use of Cash Collateral, Docket #11-4, p.8.) Given the already secure position of the Bank in a case with *no monetary defaults*, and the Bank's obdurate actions with regard to administrative claims, which could very likely cause this Debtor to lose its suppliers and become administratively insolvent, the superpriority lien is unnecessary and should be denied in this case.

Respectfully submitted,

Dated: August 23, 2013      GREENFIELD SULLIVAN DRAA
                                             & HARRINGTON LLP


By: */s/ Marcia E. Gerston*
    Marcia E. Gerston
    Attorneys for Creditor
    Pacific Meat Company