JEFFER MANGELS BUTLER & MITCHELL LLP
ROBERT B. KAPLAN, P.C.
(Bar No. 76950)
NICOLAS DE LANCIE
(Bar No. 84934)
WALTER W. GOULDSBURY III|
(Bar No. 240230)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

Attorneys for Secured Creditor
WELLS FARGO BANK, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>MI PUEBLO SAN JOSE, INC.,<br><br>Debtor and Debtor-in-Possession. | CASE NO. 13-53893-ASW<br><br>Chapter 11<br><br>**OPPOSITION TO MOTION FOR ORDER ESTABLISHING PROCEDURES FOR INTERIM PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date: November 22, 2013<br>Time: 2:15 p.m.<br>Place: Courtroom 3020<br>280 South First Street<br>San Jose, California |

**TO: THE DEBTOR AND DEBTOR-IN-POSSESSION MI PUEBLO SAN JOSE, INC., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THEIR ATTORNEYS OF RECORD AND OTHER PARTIES-IN-INTEREST:**

**INTRODUCTION**

Wells Fargo Bank, National Association ("Bank") hereby files its opposition ("Opposition") to Mi Pueblo San Jose, Inc.'s ("Debtor") Motion for Order Establishing Procedures for Interim Payment of Fees and Reimbursement of Expenses ("Procedures Motion").[1]

---

[1] All capitalized terms not otherwise defined in this Opposition shall have the meanings

The Procedures Motion must be denied because, as will be discussed in detail below, there are a number of internal inconsistencies and ambiguities in the interim compensation procedures proposed in the Procedures Motion. In addition, the Procedures Motion fails to recognize that the Professional fee carve out agreed to by the Bank in various interim cash collateral orders prohibit Professional fees from being used, among other things, to object, contest or raise any defense to the validity, perfection, priority and enforceability of the Bank's Loan Documents. As a consequence, any redactions made by Professionals on the Monthly Statements cannot be so extensive to make it impossible for the Bank to determine if the fees sought in the Monthly Statements fall within or outside of the Professional fee carve out agreed to by the Bank.

Finally, and most importantly, the Procedures Motion is not accompanied by even a scintilla of evidence which demonstrates that if any Professionals that are paid interim compensation who are then required to disgorge their compensation back to the Debtor's estate have the financial ability to do so. This is a significant concern to the Bank, in that if it is determined that the Bank has a superpriority administrative expense claim against the Debtor arising under 11 U.S.C. § 503(b) this in turn which will require disgorgement of compensation previously paid to administrative claimants such as the Professionals so that the Bank's superpriority expense claim can be paid. Furthermore, a disgorgement scenario could also arise if the Court ultimately determines in connection with its review of the Professionals' final fee applications that they were not entitled to interim compensation in the amounts allowed in the Monthly Statements.

In re Knudsen Corporation, 84 B.R. 668 (9th Cir. BAP 1988) makes it crystal clear that any motion seeking to establish procedures for interim compensation must be accompanied by evidence that Professionals have the financial ability to repay interim compensation previously paid to them by a Chapter 11 debtor or, alternatively, must propose other means, such as the filing of a bond, to insure that fees paid to Professionals can be disgorged back to the estate if the Bankruptcy Court so orders. No such evidence accompanies the Procedures Motion, which is supported only by a single conclusory statement that since the Professionals are "reputable firms or practitioners", they ascribed to them in the Procedures Motion.

have sufficient resources to pay back to the estate interim compensation previously paid to them by the Debtor.

For the reasons and others to be set forth below, the Procedures Motion must be denied.

## STATEMENT OF FACTS

Certain provisions contained in the Fourth Further Interim Order Granting Debtor's Interim Motion to Approve Use of Cash Collateral and Request for a Setting of Interim and Final Hearings Thereon (11 U.S.C. § 363(b)) ("Fourth Interim Order"), which was entered on October 4, 2013 [Docket No. 296], are relevant to the Bank's Opposition. Specifically, Sections 4, 5 and 9 of the Fourth Interim Order provided as follows:

> 4. <u>Replacement Lien</u>. As adequate protection for the Debtor's use of Cash Collateral, the Bank is granted a valid, non-avoidable, and fully perfected replacement lien (the "Replacement Lien") in the Replacement Collateral (defined below) to secure any diminution in value of any of the Pre-Petition Collateral (defined below). . . .
>
> 5. <u>Carve Out</u>. The term "Carve Out" means an earmark or set-aside from Cash Collateral and the Replacement Collateral for the unpaid fees or expenses incurred by professionals retained by the Debtor or the committee of unsecured creditors appointed in the Case pursuant to 11 U.S.C. § 1102 (the "Committee") that have been approved by the Court pursuant to 11 U.S.C. §§ 327, 328, and 1103 or 363 (collectively, the "Retained Professionals") that were incurred during the Third Interim Period; provided that those fees and expenses are ultimately allowed on a final basis by the Court pursuant to 11 U.S.C. §§ 330 and 331 and are not excluded from the Carve Out under the later provisions of this Section 5 (those allowed amounts, the "Allowed Professional Amounts"). Nothing in this Order will waive the right of any party in interest to object to the allowance of any such fees or expenses of any Retained Professionals. **Notwithstanding any other provision of this Order, the Allowed Professional Amounts may not include, and no portion of Cash Collateral or the Replacement Collateral, whether under the Carve Out or not, may be used for the payment of, any professional fees, disbursements, costs, or expenses incurred in connection with (i) objecting, contesting, or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Loan Documents or any security interests, liens, or rights granted to the Bank under the Loan Documents; (ii) asserting any claims, actions, claims for relief, or causes of action against the Bank or any of its employees, agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; or (iii) seeking to amend or modify any of the rights granted to the Bank under this Order. . . .** The Replacement Lien is subordinate to the Carve Out to the extent of any unpaid Allowed

PRINTED ON RECYCLED PAPER
SF 1524513v3
Jeffer Mangels Butler & Mitchell LLP

- 3 - OPPOSITION TO MOTION FOR ORDER ESTABLISHING PROCEDURES (Mi Pueblo)

Professional Amounts (subject to the limitation above on the period during which Allowed Professional Amounts that may be paid from the Carve Out may be incurred and below on the total amount thereof) regardless of the occurrence of an Event of Default (defined below). **Notwithstanding any other provision of this Order, (i) all Allowed Professional Amounts must first be paid from available unencumbered funds of the Estate, if any, or from pre-Petition Date retainers paid to the Retained Professionals employed by the Debtor, before being paid from any Cash Collateral or the Replacement Collateral, whether under the Carve Out or not. . . .** The claims and liens of the Bank do not attach to any retainers paid before the Petition Date to any Retained Professionals employed by the Debtor unless those retainers have been returned to the Estate by an order of the Court.

. . . .

9. <u>Superpriority Claims</u>. In addition to the grant of the Replacement Lien, the Bank will be entitled to an administrative expense claim under 11 U.S.C. §§ 503(b) and 507(a)(1) with a superpriority status pursuant to 11 U.S.C. § 507(b) to the extent that the Court determines that the Bank was not adequately protected with respect to the Debtor's use of Cash Collateral. Notwithstanding the foregoing, any superpriority claim granted to the Bank pursuant to this Section 9 will be subordinate in all respects to the Carve Out the extent of any unpaid Allowed Professional Amounts (subject to the limitation above on the total amount thereof). (Emphasis added.)

In summary, these provisions of the Fourth Interim Order require, <u>inter alia</u>, that all Allowed Professional Amounts shall first be paid from "available unencumbered funds of the Estate" and also prohibit the Allowed Professional Amounts from including any professional fees, disbursements, costs or expenses incurred in connection with the "objecting, contesting or raising any defense to the validity, perfection, priority or enforceability of, or any amount due under, the Loan Documents or any security interest, liens or rights granted to the Bank out of the Loan Documents, asserting any claims for relief for causes of action against the Bank or any of its employees, or seeking to amend any of the rights" granted to the Bank under the Fourth Interim Order. Furthermore, Section 9 of the Fourth Interim Order states that the Bank shall be entitled to a superpriority administrative claim pursuant to the provisions of 11 U.S.C. § 507(b) to the extent the Court determines that the Bank was not adequately protected with respect to the Debtor's use of cash collateral.

These provisions in the Fourth Interim Order were incorporated into the Fifth Interim Order, and the Sixth Interim Order (as those terms are defined below).

1         The various cash collateral orders entered in this case with respect to the Debtor have been as follows: Interim Order by Debtor to Approve Use of Cash Collateral and Request for Setting of Final Interim Hearings Thereon filed on July 26, 2013 [Docket No. 46], the Further Interim Order Granting Debtor's Interim Motion to Approve Use of Cash Collateral and Request for Setting of Interim Final Hearings Thereon (11 U.S.C. § 363(b)) filed on September 4, 2013 [Docket No. 218], the Second Further Interim Order Granting Debtor's Interim Motion to Approve Use of Cash Collateral and Request for Setting of Interim Order Granting Debtor's Interim Motion to Approve Use of Cash Collateral and Request for Setting of Interim and Final Hearings Thereon (11 U.S.C. § 363(b)) ("Second Interim Order") filed on September 6, 2013 [Docket No. 242], the Third Further Interim Order Granting Debtor's Interim Motion to Approve Use of Cash Collateral and Request for Interim and Final Hearings Thereon (11 U.S.C. § 363(b)) ("Third Interim Order") filed on September 13, 2013 [Docket No. 255], the Fourth Interim Order, the Fifth Interim Order Granting Debtor's Interim Motion to Approve Use of Cash Collateral and Request for Setting of Interim and Final Hearings Thereon (11 U.S.C. § 363(b)) ("Fifth Interim Order") filed on October 11, 2013 [Docket No. 322] and the Sixth Further Interim Order Granting Debtor's Interim Motion to Approve Use of Cash Collateral and Request for Setting of Interim and Final Hearings Thereon (11 U.S.C. § 363(b)) filed on October 24, 2013 [Docket No. 348] ("Sixth Interim Order", and collectively, the "Interim Cash Collateral Orders"). Contrary to the erroneous statement made in the Procedures Motion, on page 3, line 24 that the total Professional fee Carve Outs agreed to by the Bank are $275,000, the actual total amount of the Professional fee Carve Outs agreed to by the Bank to date are $620,000, i.e., $245,000 in the Second Interim Order, $75,000 in the Third Interim Order and $300,000 in the Sixth Interim Order.

        Finally, it is significant to note that Section 5 of the Procedures Motion, which appears on page 4 states that the Debtor expects additional funds to fund Professional fees "to come from unencumbered proceeds and loans from third parties".

///
///
///

# 1.

## THE LAW APPLICABLE TO THE MOTIONS FOR ORDERS ESTABLISHING PROCEDURES FOR INTERIM PAYMENT OF FEES AND EXPENSES

In Knudsen, the Bankruptcy Appellate Panel opined that the allowance and payment of interim fees and expenses pursuant to 11 U.S.C. §§ 328, 330 and 331 to permit professionals employed by a debtor and a creditor's committee to be paid each month could occur, as long as the following conditions were satisfied:

> [s]o long **as the court is certain that fees paid but not allowed can, if necessary, be recovered** . . . The ability to recover fees may be assured by a variety of methods including, without limitation, the following:
>
> retainer payments are for only a percentage of the amount billed so that the likelihood or necessity of repayment is minimal;
>
> counsel can post a bond covering any possible reassessment;
>
> counsel's financial position makes it certain that any reassessment can be repaid;
>
> funds paid prior to allowance are held in a trust account until a final or interim fee allowance is made.
>
> If the funds are recoverable and if adequate opportunity for review of detailed fee requests is provided, the court's control over the funds is undiminished. (Emphasis added.)

Knudsen, 84 B.R. at 670.

Furthermore, in In re Affinity Health Care Management, Inc., 2009 WL596825, 51 B.C.D. 35 (Bky. D. Conn.), the Court stated as follows with respect to the issue of how a Bankruptcy Court can assure itself that professionals can disgorge fees paid in the event that they are not finally allowed and stated as follows:

> As in Knudsen, the Monthly Payment Procedure's proponents here suggest that Reassessment risk is addressed and ameliorated by that procedure's provision of a 20% "holdback" in the monthly payment of fees not objected to by any of the Notice Parties. **In the Court's opinion, a 20% fee "holdback", alone, is insufficient to assure the Court that a given Professional can respond to a disgorgement order in the event of Reassessment**. The unstated premise of such a "holdback" is that the Court will never disallow more than 20% of fees that are not subject to objection by the parties. However, this Court has an independent duty to scrutinize thoroughly all professional fees, not just those objected to by parties-in-interest.

> Because the risk of Reassessment is real, this Court must assure itself that under all circumstances each of the subject Professionals will be able to satisfy a disgorgement order *in full* on a *timely basis*. The Affidavits provide no such assurance as they are limited to simple statements that the particular professional could disgorge if required to do so. No evidence, documentation or detail has been provided which serves to inform the Court of the particular financial wherewithal of any of the Professionals. **Once again, the bald assertions in the Affidavits are insufficient to support a finding that any particular Professional is financially positioned to respond to any order of disgorgement in full on a timely basis**.
>
> In addition, none of the Professionals have offered to provide any alternative method of assurance – such e.g. the posting of a bond or, in the case of attorneys, the placing of fee/expense payments in a trust account until such time as they are finally allowed – or suggested that such alternatives were not feasible. 2000 WL596825 at pages 5 and 6. (Bold face emphasis added.)

Similarly, in In re Genlime Group, LP, 167 B.R. 453, 456 (Bky. N.D. Ohio 1994), the Court stated as follows with respect to the evidence needed to be presented to a Bankruptcy Court in order for it to be satisfied that professionals can disgorge fees paid to them on an interim basis:

> Even if the instant case is viewed under Knudsen, the Debtor has failed to persuade the Court that this case represents one of the 'rare circumstances' where a departure from § 331 is warranted. . . . *c.f.* In re ICS Cybernetics, Inc., 97 B.R. 736, 738 (Bankr. N.D.N.Y. 1989) (Knudsen factors were not satisfied where '[t]here [were] [no factual allegations in [the applications submitted by the professionals] address[ing] the specific criteria of Knudsen other than conclusory statements concerning having to wait six months to be paid and protecting the [debtor] from large but uncertain periodic payments of fees and disbursements'.)

Moreover, in In re Bennett Funding Group, Inc., 213 B.R. 227, 233 (Bky. N.D.N.Y. 1997), the court stated as follows with respect to the disgorgement issue:

> The third factor considered by the Knudsen court presents a potential dilemma recognized by all of the parties, which is the issue of the Trustee's ability to disgorge in the event it is ultimately determined that his actual compensation exceeded the amount of commissions finally awarded under Code § 326(a). To date, the Trustee has posted bonds in the sums of $25 million and $50 million in the Bennett cases and $25 million in the Aloha cases, and at this point the compensation paid to the Trustee does not begin to approximate that amount. Periodic review of the compensation hereinafter outlined, however, will serve to monitor the prospect of disgorgement and allow the Court to make any necessary adjustments to the amounts set forth

-7- OPPOSITION TO MOTION FOR ORDER ESTABLISHING PROCEDURES (Mi Pueblo)

below.

Finally, in <u>In re Heritage Mall Associates</u>, 184 B.R. 128, 133 (Bky. D. Oregon 1995), the Court stated as follows with respect to disgorgement issues associated with the payment of "earned on receipt retainers":

> The court is not able to conclude, however, that the firm could respond by disgorgement of the retainers if eventually ordered to do so by this court. The UST has not questioned the solvency or ability of the firm to respond if disgorgement is ordered. The UST has argued, however, and this court agrees, that the burden is upon the applicant to establish the necessary factors which would enable this court to conclude that the fee agreement is reasonable. **No evidence or representations have been presented to this court concerning the firm's financial status**. 184 B.R. 135. (Emphasis added.)

**2.**

**THE PROCEDURES PROPOSED IN SECTIONS 7 AND 8 OF THE PROCEDURES MOTION CONTAIN VARIOUS AMBIGUITIES AND INCONSISTENCIES AND DO NOT PERMIT THE BANK TO DETERMINE IF THE AMOUNT SOUGHT IN THE MONTHLY STATEMENTS FALL OUTSIDE THE CARVE OUT CONTAINED IN THE VARIOUS <u>INTERIM CASH COLLATERAL ORDERS</u>**

The Procedures Motion, commencing on page 4, lines 19-24, and continuing through page 8, through line 6, sets forth the conditions on which the Debtor proposes to pay interim compensation to Professionals on a monthly basis. The Bank has the following objections and comments on those conditions which will be referenced in the applicable subparagraph set forth in Sections 7 and 8 of the Procedures Motion:

**A.** <u>**Section 7(a)**</u>

Section 7(a) proposes that on the 20th day of the month following the month for which compensation is sought, each Professional may prepare a Monthly Statement of fees and expenses incurred during the preceding month. However, this ignores the fact that the cash collateral budgets submitted by the Debtor to the Bank are not based on a calendar month, but are based upon various weekly fiscal periods, each of which **ends on a Sunday**. The Carve Outs contained in the Second Interim Order, Third Interim Order, Sixth Interim Order, and presumably subsequent interim orders, are based upon the Debtor's fiscal periods, rather than the calendar month. In order facilitate both the Bank and the Debtor matching the period of time in the Monthly Statements to those approved in the budgets attached to the Second Interim Order, the Third Interim

Order, the Sixth Interim Order and in any future interim orders, the Monthly Statements submitted by Professionals should match the Debtor's fiscal month, rather than a calendar month. In addition, in order to enable both the Debtor and the Bank to keep track of prior payments made to Professionals, each Monthly Statement should show the current balance of the retainer held by the Debtor and the amount of compensation previously allowed to each professional.

**B.     Section 7(c)**

Section 7(c) states that each party receiving a Monthly Statement shall have 10 days after service of the Monthly Statement to object to the Monthly Statement. The reference to 10 days is presumably to **calendar** days. However, Section 7(d) of the Procedures Motion, to be discussed below, provides that certain actions will be permitted five **business** days after the objection deadline. The procedures set forth in the Procedures Motion should either be based on calendar days or business days, but not both. Furthermore, triggering the Objection Deadline based upon 10 calendar days creates confusion if the Objection Deadline falls on a nonbusiness day.

**C.     Section 7(d)**

Section 7(d) must be clarified to state that to the extent no Objection to a Monthly Statement has been served, any payments requested in the Monthly Statement must be subject to the limitations contained in the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and any subsequent interim orders entered by the Court for use of cash collateral. In addition, as noted above, the Objection Deadline of five business days set forth in this Section is inconsistent with deadlines set forth in other Sections which refer to calendar days.

**D.     Section 7(e)**

There are a number of procedural infirmities in Section 7(e) that need to be modified in order to make the Procedures Motion non-objectionable. First, Section 7(e) requires that within five days after receipt of Objection, the objecting party may file its Objection with the Court and serve such Objection on the respective Professional. As noted above, the deadlines set forth in the Procedures Motion should be triggered to a business day, rather than a calendar day, to avoid ambiguities as to what occurs if a deadline based on a calendar occurs on a nonbusiness day. Second, the Bank does not believe it to be appropriate that any Objection be filed with the Court

without having been tied to a hearing date. While Section 7(e) states that the Court shall consider the Objection at the next hearing to be held regarding applications for compensation or at any such hearing as may be properly noticed by the Professional whose Monthly Application is the subject of the Objection, it is the Bank's view that in order to avoid the filing of needless pleadings with the Bankruptcy Court and to avoid confusion over the procedural status of Objection, no Objection should be filed unless it is tied to a specific hearing date. Finally, the reference to "Monthly Application" which appears on page 6, line 12, appears to be a typographical error and should be a reference to a "Monthly Statement".

E. **Section 7(f)**

Section 7(f) refers to a "Monthly Application" in several places. Once again, the Bank assumes this is a typographical error and should be a reference to a Monthly Statement. In addition, Section 7(f) requires certain actions to be taken at the end of each four month period. As noted above with respect to the Bank's objections to Section 7(a), since the various cash collateral budgets previously approved of by this Court are tied to the Debtor's fiscal weeks and months, Section 7(f) should be modified to make reference to a fiscal month, as opposed to a calendar month. Moreover, the provisions of Section 7(f) which provide that Professionals can receive 20% of the held back amounts wherever no objections is filed to a Monthly Statement is objectionable for the reasons discussed in Section 3 below, since the Procedures Motion contains no evidence that Professionals can repay the Debtor's bankruptcy estate in the event that disgorgement becomes necessary at a later date in the Debtor's Chapter 11 case.

F. **Section 7(g)**

Section 7(g) deals with the hearings on Interim Applications. Page 7, line 4 of Section 7(g) states that if an Objection is sustained at a hearing on an Interim Application, or the Court otherwise so orders, "the Professional shall disgorge to Mi Pueblo the disallowed portion of any payment that it has actually received, . . . ." The Procedures Motion does not articulate any circumstance in which a Professional could be paid prior to the date of the hearing on any Interim Application and then would be thereafter required to disgorge any such payment at a hearing to approve an Interim Application. In the event an Objection is filed to any Monthly Statement, then

there will be no payment to any Professional until that Objection is ruled on by the Court. On the other hand, if no Objection is filed to a Monthly Statement, then the Professional will be paid 80% of the fees sought in the Monthly Statement. In light of the foregoing, under what circumstances could disgorgement be required at the time of the hearing on an Interim Application? If any such circumstances exist, the Procedures Motion needs to be clarified to so state.

Neither Section 7(g) of the Procedures Motion nor any other section addresses the fact that ultimately each Professional whose fees and expenses are allowed through a Monthly Statement or Interim Application is also required to file a final application for payment of fees and expenses as required by 11 U.S.C. §§ 330. In re Public Service Company of New Hampshire, 93 B.R. 823, 827 (Bky. D. N.H. 1988) ("The court is under a duty to review the reasonableness of the total fees paid pursuant to § 330 at the time of consideration of the final application. There is the possibility in every case that a through [sic] analysis in regard to the final application using the factors set forth in § 330 and discussed earlier will show that the interim fees awarded were too high based on the end result, even though the fees appeared reasonable at the time they were awarded. . . ." Matter of Taxman Clothing Co., 49 F.3d 310, 312 (7th Cir. 1995) ("all interim awards of attorney's fees in bankruptcy cases are tentative."); Matter of Evangeline Refining Co., 890 F.2d 1312, 1321 (5th Cir. 1989) ("interim awards are subject to final adjustments and, as such, fully reviewable."). These provisions of the Bankruptcy Code are mandatory and cannot be modified by the Procedures Motion.

**G.    Section 7(h)**

Section 7(h) states that the Debtor "further requests approval for Professionals to all funds carved out from cash collateral or provided from unencumbered funds pending approval to apply against them according to procedures set forth above." The Bank does not understand the procedures proposed in Section 7(h) and therefore this portion of those procedures must be clarified.

**H.    Section 8**

With respect to the procedures proposed in Section 8 as to the redactions of Monthly Statements, the level of redactions cannot be so extensive as to make it impossible for the Bank to determine whether the legal services performed by Professionals fall within or outside of the Carve

Out contained in Section 5 of the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order, and subsequent interim orders.  As noted above, there are restrictions placed in those orders as to what purposes Professional fees can be utilized, to the extent they are part of the Carve Out, and the redactions which are contained in the Monthly Statements must make it possible for the Bank to determine if the Professional fees sought fall within or outside the Carve Out.

**3.**

**THE MOTION DOES NOT SATISFY THE STANDARDS SET FORTH IN <u>KNUDSEN</u> TO ENSURE THAT PROFESSIONALS CAN DISGORGE FEES**

The Procedures Motion states, on page 12, lines 5-8 that the "Professionals, even the smaller-sized firms, are reputable firms or practitioners that have sufficient resources with which to respond to any reassessment of fees or expenses by this Court."  There is no evidence accompanying the Procedures Motion to support this statement, other than paragraph 10 of the Declaration of Juvenal Chavez in support thereof which simply makes this corollary statement unsupported by evidence.

As was discussed in the <u>Knudsen</u>, <u>Affinity Health Care Management, Inc.</u> and the other decisions cited on pages 6 through 8 above, any procedure allowing for interim compensation to be paid to Professionals must contain evidence to make it "**certain**" that fees paid but not finally allowed can be recovered by the estate.  In <u>Affinity</u>, the Court made it crystal clear that "bald assertions" that Professionals can disgorge fees to the estate are not sufficient to support a motion seeking interim compensation.  Moreover, the procedures proposed in the Procedures Motion will ultimately will provide for 100% payment of all fees and expenses sought by Professionals on an interim basis, and therefore do not provide any comfort level to the Court that Professionals can disgorge fees.  The Procedures Motion does not propose that these Professionals post a bond in order to provide the required assurance.

In the Debtor's Chapter 11 case, the Bank believes there is a significant possibility that Professional fees paid on an interim basis, which fall outside the scope of the Carve Out, may have to be disgorged in the future.  This will occur if it is determined that the Bank has a superpriority claim against the Debtor under 11 U.S.C. § 507(b) as a result of the Bank not having

been provided with sufficient adequate protection in the Interim Cash Collateral Orders. If this occurs, then any fees and expenses paid to Professionals through the procedures proposed by the Procedures Motion that are not paid from the Carve Out but are paid from unencumbered funds of the Debtor's estate would, as a matter of law, have to be disgorged and paid to the Bank as a superpriority administrative creditor of the Debtor. What evidence accompanies the Procedures Motion which demonstrates that the Professionals can in fact disgorge fees and expenses which are not part of the Carve Out? There is none.

The Procedures Motion states on pages 2 and 3 that there are ten Professionals that are employed by the Debtor and the Committee of Unsecured Creditors.[2] Not one of these Professionals has filed a declaration to provide the Court with the assurances that are required under Knudsen that it has the ability to disgorge fees and expenses which are paid pursuant to the Procedures Motion if it is determined that the Bank has a superpriority claim against the Debtor under 11 U.S.C. § 507(b). Additionally, disgorgement of interim fees and expenses paid to Professionals could also occur in the context of the court ruling on final fee applications since, as the cases cited on page 11 above indicate, interim fee awards are always subject to final adjustment and final fee applications. The Court cannot simply "roll the dice" that the ten Professionals which are the subject of the Procedures Motion have the financial ability to pay back what could be hundreds of thousands of dollars in fees and expenses which may be awarded on an interim basis. Since the Procedures Motion has no evidence about the financial ability of the Professionals to disgorge fees and expenses, and also does not propose any of the alternative protections discussed in the Knudsen decision on page 6 above to provide assurances that disgorged fees and expenses can be recovered, the Procedures Motion must be denied.

///

///

///

---

[2] Section 3 of the Procedures Motion states that Mi Pueblo has engaged all of these Professionals. This is incorrect, as the Committee of Unsecured Creditors has engaged Stutman Treister and Protiviti.

## CONCLUSION

For the foregoing reasons, the Procedures Motion must be denied.

DATED: November 8, 2013

JEFFER MANGELS BUTLER & MITCHELL LLP
ROBERT B. KAPLAN, P.C.
NICOLAS DE LANCIE


By: */s/ Robert B. Kaplan*
ROBERT B. KAPLAN, ESQ.
Attorneys for Secured Creditor WELLS FARGO BANK, N.A.

# PROOF OF SERVICE

# STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

*In re: Mi Pueblo San Jose, Inc. Case No. 13-53893-ASW*

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is: Two Embarcadero Center, 5th Floor, San Francisco, California 94111.

On November 8, 2013 I served the document(s) described as

**OPPOSITION TO MOTION FOR ORDER ESTABLISHING PROCEDURES FOR INTERIM PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES**

in this action addressed as follows:

☐ (BY MAIL) True and correct copies of the aforementioned document(s) were deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at San Francisco, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)) Pursuant to the controlling Rules, the aforementioned document(s) will be served by the court via NEF and proper link(s) to the document(s).

Executed on November 8, 2013 at San Francisco, California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

*/s/ Robert B. Kaplan*

Robert B. Kaplan