1   HEINZ BINDER (SBN 87908)
    ROBERT G. HARRIS (SBN 124678)
2   ROYA SHAKOORI (SBN 236383)
    BINDER & MALTER, LLP
3   2775 Park Avenue
    Santa Clara, CA 95050
4   Telephone: (408) 295-1700
    Facsimile: (408) 295-1531
5
    Attorneys for Debtor and Debtor-in-Possession
6   MI PUEBLO SAN JOSE, INC.

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12  MI PUEBLO SAN JOSE, INC.,              CASE NO. 13-53893-ASW

13              Debtor,                    CHAPTER NUMBER: 11

14

15                                         Date:     May 14, 2014
                                           Time:     2:30 p.m.
16                                         Dept:     Courtroom: 3020
                                                     280 South First Street
17                                                   San Jose, CA 95113
                                           Judge:    Hon. Arthur S. Weissbrodt
18

19

20  **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO
    CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **ARTICLE I.** | **DEFINED TERMS AND RULES OF INTERPRETATION** | **1** |
| A. | Defined Terms | 1 |
| B. | Rules of Interpretation | 25 |
| **ARTICLE II.** | **ADMINISTRATIVE CLAIMS, PROFESSIONAL CLAIMS, 503(b)(9) CLAIMS, PRIORITY TAX CLAIMS, AND OTHER PRIORITY CLAIMS** | **26** |
| A. | Administrative Claims, Other Than Professional Fee Claims and 503(b)(9) Claims | 26 |
| B. | Professional Claims | 27 |
| C. | 503(b)(9) Claims | 28 |
| D. | Priority Tax Claims and Other Priority Claims | 28 |
| **ARTICLE III.** | **CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** | **29** |
| A. | Classification of Claims and Interests | 29 |
| B. | Treatment of Classes of Claims and Interests | 30 |
| C. | Special Provision Governing Vote Tabulation | 33 |
| D. | Special Provision Governing Unimpaired Claims | 33 |
| **ARTICLE IV.** | **PROVISIONS FOR IMPLEMENTATION OF THE PLAN** | **34** |
| A. | Use of Proceeds from New Money Commitment and Exit Facility | 34 |
| B. | Guaranty of Obligations Under the Senior Exit Facilities | 34 |
| C. | General Settlement of Claims and Interests | 35 |
| D. | NewCo Equity | 35 |
| E. | Registration Exemptions | 35 |
| F. | Vesting of Assets in the Reorganized Debtor | 36 |
| G. | Cancellation of Notes, Instruments, Certificates, and Other Documents | 36 |
| H. | Issuance of New Securities; Execution of Plan Documents | 37 |
| I. | Post-Confirmation Property Sales | 37 |
| J. | Section 1146(a) Exemption | 37 |
| K. | Corporate Action | 38 |
| L. | Certificate of Incorporation and Bylaws | 39 |
| M. | Effectuating Documents, Further Transactions | 39 |
| N. | Directors and Officers of Reorganized Mi Pueblo | 39 |
| O. | Preservation of Rights of Action | 40 |
| P. | Avoidance Actions | 41 |
| Q. | Restructuring Transactions | 42 |

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 15:35:31    Page 2 of 90

# TABLE OF CONTENTS
### (continued)

Page

R.    Corporate Existence ........................................................ 43

S.    Tax Reporting Matters..................................................... 43

T.    Adequate Assurance Deposits ........................................ 43

U.    Trade Credit Program ..................................................... 44

V.    Survival of Certain Prior Orders of the Bankruptcy Court ........ 47

**ARTICLE V.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................ 47**

A.    Rejection of Executory Contracts and Unexpired Leases........................... 47

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases .................................................................... 48

C.    Assumption of Executory Contracts and Unexpired Leases..................... 48

D.    Objections to Assumption of Executory Contracts and Unexpired Leases Including Cure of Defaults .................................................. 50

E.    Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases ...................................................................... 51

F.    Contracts and Leases Entered Into After the Commencement Date .......... 52

G.    Reservation of Rights ..................................................... 52

**ARTICLE VI.    PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS ........................................................ 52**

A.    Allowance of Claims and Interests................................. 52

B.    Claims and Interests Administration Responsibilities ............... 53

C.    Estimation of Claims and Interests................................. 53

D.    Expungement or Adjustment to Paid, Satisfied, or Superseded Claims and Interests......................................................................... 53

E.    No Interest ...................................................................... 54

F.    DISALLOWANCE OF CLAIMS OR INTERESTS ............... 54

G.    Amendments to Claims .................................................. 55

H.    No Distributions Pending Allowance............................. 55

I.    Distributions After Allowance ....................................... 55

**ARTICLE VII.  PROVISIONS GOVERNING DISTRIBUTIONS ............ 55**

A.    Distributions on Account of Claims Allowed as of the Effective Date ...... 55

B.    Distributions on Account of Claims Allowed After the Effective Date ...... 56

C.    Delivery of Distributions................................................ 57

D.    Claims Paid or Payable by Third Parties....................... 61

E.    Setoffs............................................................................. 62

F.    Allocation Between Principal and Accrued Interest ................. 62

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:35:31   Page 3 of 90

**TABLE OF CONTENTS**
(continued)

Page

**ARTICLE VIII.  EFFECT OF CONFIRMATION OF THE PLAN** ........................ **63**
- A. DISCHARGE OF CLAIMS AND TERMINATION OF INTERESTS ..... 63
- B. Subordinated Claims ................................................................. 63
- C. Compromise and Settlement of Claims and Controversies........................ 64
- D. RELEASES BY THE DEBTOR................................................ 64
- E. RELEASES BY HOLDERS OF CLAIMS ................................................ 66
- F. WAIVER OF STATUTORY LIMITATIONS ON RELEASES................ 68
- G. EXCULPATION ................................................................. 69
- H. INJUNCTION ................................................................. 69
- I. Protection Against Discriminatory Treatment .................................. 71
- J. Recoupment ................................................................. 71
- K. Release of Liens ................................................................. 71
- L. Special Consideration Regarding Certain Releases .................................. 72
- M. Provisions Related to Fleming Business Park, LLC .................................. 72

**ARTICLE IX.  CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN** ........................................................................ **72**
- A. Conditions Precedent to the Effective Date ................................................ 72
- B. Waiver of Conditions Precedent ................................................ 74
- C. Effect of Non-Occurrence of Conditions to Consummation........................ 74

**ARTICLE X.  RETENTION OF JURISDICTION**........................................................**74**

**ARTICLE XI.  MISCELLANEOUS PROVISIONS** ........................................ **77**
- A. No Stay of Confirmation Order.................................................. 77
- B. Modification of Plan .................................................. 77
- C. Revocation or Withdrawal of Plan .................................................. 78
- D. Confirmation of the Plan .................................................. 78
- E. Additional Documents.................................................. 78
- F. Payment of Statutory Fees and Filing of Post-Confirmation Quarterly Reports........................................................................ 79
- G. Dissolution of Creditors' Committee .................................................. 80
- H. Appointment of Creditors' Representative .................................................. 80
- I. Reservation of Rights .................................................. 81
- J. Successors and Assigns .................................................. 82
- K. Service of Documents .................................................. 82
- L. TERM OF INJUNCTIONS OR STAYS .................................................. 82
- M. Entire Agreement .................................................. 83

-iii-

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 15:35:31    Page 4 of 90

**TABLE OF CONTENTS**
**(continued)**

| | | Page |
|---|---|---|
| N. | Plan Supplement Exhibits | 83 |
| O. | Severability | 83 |
| P. | Reservation of Rights to Seek to Convert Case to Chapter 7 | 84 |

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Mi Pueblo San Jose, Inc. proposes the following Plan. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a proposed compromise, settlement, and resolution of outstanding Claims against, and Interests in, the Debtor. The Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as defined herein), distributed contemporaneously herewith, and all exhibits to the Disclosure Statement. In the event of any inconsistency between the Disclosure Statement and the Plan, the relevant provision of the Plan, as it relates to such inconsistency, will govern.

## ARTICLE I.

### DEFINED TERMS AND RULES OF INTERPRETATION

A. <u>Defined Terms</u>

1. <u>503(b)(9) Bar Date</u>: (a) August 31, 2013; or (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing Claims.

2. <u>503(b)(9) Claim</u>: A Claim entitled to priority under section 503(b)(9) of the Bankruptcy Code.

3. <u>A Note</u>: An individual promissory note payable to the order of each holder of an Allowed 503(b)(9) Claim in the principal amount equal to the amount of trade credit provided by the 503(b)(9) Claim holder as of the Effective Date up to the amount of the holder's Allowed 503(b)(9) Claim, which shall (a) be issued by Reorganized Mi Pueblo, (b) be junior and subordinate in all respects, including payment, to the Senior Exit Facilities, the Chavez Senior Exit Note, and the Cha Cha Check Cashing Note, (c) be *pari passu* with the Chavez Junior Exit Note to the extent set forth in the definition of Chavez Junior Exit Note, (d) be secured by all of the assets of Reorganized Mi Pueblo and all of the assets of Reorganized Cha Cha, (e) accrue interest at an annual rate of 10% that is capitalized quarterly and to be repaid in kind until maturity, (f) mature three years after

---

[1] Capitalized terms used in this Introduction are defined in ARTICLE I.

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:35:31    Page 6 of 90

the Effective Date at which time a payment will be due for all outstanding amounts under the A Note, (g) not be subject to amendment without the written consent of the holder of the A Note and the Reorganized Debtor, (h) with amortization based on a "cash flow sweep" to be calculated based upon (i) cash generated from operations of Reorganized Mi Pueblo (above pre-determined thresholds) and (ii) the related Trade Credit Program to the extent such vendor provides additional trade credit after the Effective Date, which generates incremental accounts payable, (i) be subject to enforcement by the holder of the A Note and provide that holders will receive a report each quarter providing the status of the amortization of the A Notes and the B Notes, and (j) be subject to prepayment at any time without penalty, the form of which is included in the Plan Supplement. The A Notes and the B Notes will provide "mandatory pay downs" as follows: (a) upon the return of all or any portion of the letters of credit issued to Safety National for the workers' compensation policy for the policy term March 1, 2014 to March 1, 2015 and (b) from cash flow generated above agreed-upon targets, factoring in payments to Victory Park and its Affiliates and other holders of equity of Reorganized Mi Pueblo on account of interest and expense reimbursement on account of providing any of the Senior Exit Facilities or the Chavez Exit Notes and otherwise being a lender to Reorganized Mi Pueblo and expense reimbursement as an equity owner or board member of Reorganized Mi Pueblo, as applicable, but with a block on management fees, dividends on equity, redemptions on equity held by Victory Park and Juvenal Chavez and his family members (other than equity received by family members of Juvenal Chavez in their capacity as management) and amortization (other than mandatory prepayments and current salaries in the ordinary course) until the A Notes and the B Notes are satisfied in full.

4. <u>Administrative Claim</u>: A Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the businesses of the Debtor; (b) Allowed Professional Claims; (c) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:35:31   Page 7 of
90

United States Code; (d) the Transaction Expenses; (e) the Wells Fargo Bank Letter of Credit Claims; and (f) all claims approved as administrative claims pursuant to an order of the Bankruptcy Court; provided, however, that the term "Administrative Claim" does not include any 503(b)(9) Claim.

5.  Administrative Claims Bar Date:  The deadline for filing requests for payment of Administrative Claims, which shall be 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to:  (a) Professional Claims, which shall be subject to the provisions of ARTICLE II.B; (b) Transaction Expenses, which shall be Allowed as provided by the Exit Facility or DIP Facility, as applicable; or (c) the Wells Fargo Bank Letter of Credit Claims, which shall not require the filing of any such request as provided in ARTICLE II.A, or, provided they are assumed Executory Contracts, the Wells Fargo Bank Treasury Management Claims, which shall not require the filing of any such request as provided in ARTICLE II.A.

6.  Affiliate:  As defined in section 101(2) of the Bankruptcy Code.

7.  Allowed:  Except as otherwise provided herein and subject to ARTICLE VI.A: (a) a Claim or Interest that is (i) listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, or (ii) evidenced by a valid Proof of Claim, filed by the Claims Bar Date or 503(b)(9) Bar Date, as applicable, and not subject to the Debtor's or Reorganized Debtor's right to file an objection to such Proof of Claim; or (b) a Claim that is Allowed pursuant to the Plan or any stipulation approved by, or Final Order of, the Bankruptcy Court.

8.  Avoidance Actions:  Any and all avoidance, recovery, or subordination actions or remedies that may be brought on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 550, 551, 552, or 553 of the Bankruptcy Code.

9.  B Note:  An individual promissory note payable to the order of each holder of an Allowed 503(b)(9) Claim in the principal amount equal to the amount of the holder's Allowed 503(b)(9) Claim less the amount of any A Note issued to the holder of

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:35:31   Page 8 of 90

an Allowed 503(b)(9) Claim, which shall (a) be issued by the Reorganized Debtor, (b) be junior and subordinate in all respects, including payment, to the Senior Exit Facilities, the Chavez Exit Notes, the Cha Cha Check Cashing Note, and the A Notes, (c) be *pari passu* with the Chavez Junior Exit Note to the extent set forth in the definition of Chavez Junior Exit Note, (d) be secured by all of the assets of Reorganized Mi Pueblo, (e) accrue interest at an annual rate of 8% that is capitalized quarterly and to be repaid in kind until maturity, (f) mature three years after the date of maturity of the A Notes (subject to adjustment to address applicable high-yield discount obligations (AHYDO) issues), at which time a payment will be due for all outstanding amounts under the B Note, (g) not be subject to amendment without the written consent of the holder of the B Note and the Reorganized Debtor, (h) with amortization based on a "cash flow sweep" to be calculated based upon the related Trade Credit Program to the extent such vendor provides additional trade credit after the Effective Date, which generates incremental accounts payable, after the repayment of the full A Note issued to such vendor, (i) be subject to enforcement by the holder of the B Note and provide that holders will receive a report each quarter providing the status of the amortization of the A Notes and the B Notes, and (j) be subject to prepayment at any time without penalty, the form of which is included in the Plan Supplement. The A Notes and the B Notes will provide "mandatory pay downs" as follows: (a) upon the return of all or any portion of the letters of credit issued to Safety National for the workers' compensation policy for the term March 1, 2014 to March 1, 2015 and (b) from cash flow generated above agreed-upon targets, factoring in payments to Victory Park and other holders of equity of Reorganized Mi Pueblo and NewCo on account of interest and expense reimbursement on account of providing any of the Senior Exit Facilities or the Chavez Exit Notes and otherwise being a lender to Reorganized Mi Pueblo and NewCo and expense reimbursement as an equity owner or board member of Reorganized Mi Pueblo or NewCo, as applicable, but with a block on management fees, dividends on equity, redemptions on equity held by Victory Park and Juvenal Chavez and his family members (other than equity received by family members of Juvenal Chavez in

their capacity as management) and amortization (other than mandatory prepayments and current salaries in the ordinary course) until the A Notes and the B Notes are satisfied in full.

10.  Bankruptcy Code:  Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time.

11.  Bankruptcy Court:  The United States Bankruptcy Court for the Northern District of California having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code and/or order of a district court pursuant to section 157(a) of title 28 of the United States Code, the United States District Court for the Northern District of California.

12.  Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Case, and the general, local, and chambers rules of the Bankruptcy Court.

13.  Business Day:  Any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

14.  Cash:  Legal tender of the United States of America or the equivalent thereof.

15.  Causes of Action:  Any and all Claims, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including those of the Debtor, the Debtor as debtor in possession, and/or the Estate), whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or instituted after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

16.  Certificate:  Any instrument evidencing a Claim or an Interest.

17.  Cha Cha:  Cha Cha Enterprises, LLC, a California limited liability company.

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 15:35:51    Page 10 of
90

18.   Cha Cha Bankruptcy Proceedings:   The chapter 11 case commenced by Cha Cha, with the case number 13-53894, and styled *In re Cha Cha Enterprises, LLC*, Case No. 13-53894-ASW, which is currently pending before the Bankruptcy Court.

19.   Cha Cha Check Cashing Note:   A promissory note issued by Reorganized Mi Pueblo in the amount of approximately $2,200,000.00, which shall (a) be issued to Reorganized Cha Cha, (b) be junior and subordinate to the Senior Exit Facilities, (c) be senior to the Chavez Exit Notes, the A Notes, and the B Notes, (d) be secured by all of the assets of Reorganized Mi Pueblo, (e) accrue interest at an annual rate of 2% to be paid in kind until maturity, and (f) the proceeds of which shall be held in a segregated account used for the check cashing business transferred from Cha Cha to Reorganized Mi Pueblo as part of the Transferred Cha Cha Assets, the form of which is included in the Plan Supplement.

20.   Cha Cha DIP Facility:   The debtor in possession financing facility approved on a final basis by the *Final Order (I) Authorizing Debtor In Possession to Obtain Postpetition Financing and Providing Guaranty Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364; (II) Granting Liens, Security Interests, and Superpriority Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 238] entered in the Cha Cha Bankruptcy Proceedings.

21.   Cha Cha DIP Financing Claims:   The Claims directly, indirectly, or otherwise derived from, or based upon, the Cha Cha DIP Facility.

22.   Cha Cha Exit Facility:   That certain financing facility in the amount of approximately $24,500,000.00 to be entered into on the Effective Date by Reorganized Cha Cha, the exit lenders party thereto, and the other parties thereto from time to time with terms and provisions substantially similar to those contained in the term sheet attached to the Disclosure Statement and the agreement included in the Plan Supplement, with such changes as are acceptable to Victory Park, which shall be secured by a first priority lien on substantially all of Reorganized Cha Cha's assets and a second priority lien on substantially all of the Reorganized Debtor's assets, the form of which is included in the Plan Supplement.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

23.     Cha Cha Exit Financing Documents:  All documents necessary or appropriate to effectuate the Cha Cha Exit Facility.

24.     Cha Cha Exit Note:  That certain unsecured promissory note in the amount of approximately $17,000,000.00, which shall be issued by NewCo to Reorganized Cha Cha and accrue interest at an annual rate of 2% to be paid in kind until maturity, the proceeds of which shall be contributed to Reorganized Mi Pueblo as a capital contribution and used to fund operations at Reorganized Mi Pueblo and the restructuring, the form of which is included in the Plan Supplement.

25.     Cha Cha Exit Note Documents:  All documents necessary or appropriate to effectuate the Cha Cha Exit Note.

26.     Cha Cha Transfer Agreement:  That certain agreement by and between Cha Cha and Mi Pueblo governing the transfer of the Transferred Cha Cha Assets as partial consideration for fifty percent of the NewCo Equity, the form of which is included in the Plan Supplement.

27.     Chapter 11 Case:  The chapter 11 case commenced by the Debtor, with the case number 13-53893, and styled *In re Mi Pueblo, San Jose, Inc.*, Case No. 13-53893-ASW, which is currently pending before the Bankruptcy Court.

28.     Chavez DIP Facility Claims:  Any Claim directly, indirectly, or otherwise derived from, or based upon, Mr. Juvenal Chavez's approximately $1,900,000.00 debtor-in-possession financing approved on a final basis by the *Order Granting Motion to Authorize Borrowing and Incurring of Junior Secured Debt (11 U.S.C. § 364(c)(3))* [Docket No. 409] entered in the Chapter 11 Case.

29.     Chavez Exit Note Documents:  All documents necessary or appropriate to effectuate the issuance of the Chavez Exit Notes.

30.     Chavez Exit Notes:  The Chavez Senior Exit Note and the Chavez Junior Exit Note, the forms of which are included in the Plan Supplement.

31.     Chavez Junior Exit Note:  That certain secured promissory note payable to the order of holders of Allowed Chavez DIP Facility Claims in the principal amount of $1,425,000.00, which shall (a) be issued by the Reorganized Debtor, (b) be junior and subordinate

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:33:51    Page 12 of
90

in all respects, including payment, to the Senior Exit Facilities, the Cha Cha Check Cashing Note, and the Chavez Senior Exit Note, (c) be *pari passu* with the A Notes in an amount calculated by multiplying (i) the principal amount of the A Notes divided by the aggregate of (y) the principal amount of the A Notes plus (z) the principal amount the B Notes multiplied by (ii) the principal amount of $1,425,000.00 and secured by all of the assets of Reorganized Mi Pueblo for such amount, (d) be *pari passu* with the B Notes in an amount calculated by multiplying (i) the principal amount of the B Notes divided by the aggregate of (x) the principal amount of the A Notes plus (y) the principal amount the B Notes multiplied by (ii) the principal amount of $1,425,000.00, (e) have a maturity date of one year after the maturity date of the Senior Exit Facilities, and (f) accrue interest annually at an annual rate of 2% to be paid in kind until maturity, the form of which is included in the Plan Supplement.

32.    Chavez Releasees:  Juvenal Chavez, Maria Chavez, Juvenal Chavez, Jr., Enrique Chavez, Edgar Chavez, Lisbet Nieves, Reynalda Pena, Rocio Torres, the Chavez Family Living Trust Dated 8/19/99, including as amended, the Juvenal Chavez 2012 Trust UTD 12/28/12, Enrique Chavez 2012 Trust UTD 12/28/12, Edgar Chavez 2012 Trust UTD 12/28/12, and Lisbet Nieves 2012 Trust UTD 12/28/12.

33.    Chavez Senior Exit Note:  That certain secured promissory note payable to the order of holders of Allowed Chavez DIP Facility Claims in the principal amount of $475,000.00, which shall (a) be issued by the Reorganized Debtor, (b) be junior and subordinate in all respects, including payment, to the Senior Exit Facilities and the Cha Cha Check Cashing Note, (c) be senior to the Chavez Junior Exit Note, the A Notes, and the B Notes, (d) have a maturity date of one year after the maturity date of the Exit Facilities, and (e) accrue interest annually at an annual rate of 2% to be paid in kind until maturity, the form of which is included in the Plan Supplement.

34.    Chavez Tolling Agreements: Agreements to toll all statutes of limitation with respect to Avoidance Actions and other Causes of Action of Mi Pueblo against such person for a period extending for three (3) years and one (1) month after the Effective Date; provided that if Reorganized Mi Pueblo does not pay the Special B Note Payment before the expiration of the

Chavez Tolling Agreements, the terms of such Chavez Tolling Agreements shall extend for an additional three (3) years.

35. <u>Claim</u>: As defined in section 101(5) of the Bankruptcy Code.

36. <u>Claims Agent</u> or <u>Claims and Solicitation Agent</u>: Rust Consulting Omni Bankruptcy, located at 5955 Desoto Avenue, Woodland Hills, California 91367, retained as the Debtor's claims agent by order dated July 29, 2013, entitled *Order Approving Employment of Rust Consulting Omni Bankruptcy as Claims Administrator and Noticing Agent* [Docket No.61] and requested to be retained as the Debtor's solicitation agent by the Solicitation Procedures Order.

37. <u>Claims Bar Date</u>: (a) November 26, 2013; or (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing Claims other than filing 503(b)(9) Claims or Administrative Claims.

38. <u>Claims Register</u>: The official register of Claims maintained by the Claims Agent or the Bankruptcy Court.

39. <u>Class</u>: A category of holders of Claims or Interests pursuant to section 1122(a) of the Bankruptcy Code.

40. <u>Commencement Date</u>: July 22, 2013.

41. <u>Confirmation</u>: The entry of the Confirmation Order on the docket of the Chapter 11 Case.

42. <u>Confirmation Date</u>: The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

43. <u>Confirmation Hearing</u>: The hearing before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code on the motion for entry of the Confirmation Order.

44. <u>Confirmation Order</u>: The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance acceptable to Victory Park.

45. <u>Consummation</u>: The occurrence of the Effective Date.

46.	Creditors' Representative:  As described in ARTICLE XI.H.

47.	Creditors' Committee:  The official committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code by the United States Trustee for the Northern District of California on August 14, 2013, and as it may be reconstituted from time to time.

48.	Crown Lift Trucks:  An Entity with a Claim secured by equipment branded as "Crown."

49.	Crown Lift Trucks Claims:  Any Claim of Crown Lift Trucks that is a Secured Claim.

50.	Cure:  A Claim against the Debtor for the payment of Cash, or the distribution of other property (all as the Debtor and the counterparty to the Executory Contract or Unexpired Lease may agree or the Bankruptcy Court may order), as necessary to (a) cure a default by the Debtor pursuant to section 365 of the Bankruptcy Code and in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtor and (b) permit the Debtor to assume such Executory Contract or Unexpired Lease under sections 365 and 1123 of the Bankruptcy Code.

51.	Debtor:  Mi Pueblo San Jose, Inc., a California corporation.

52.	Debtor Release:  As defined in ARTICLE VIII.D.

53.	DIP Facility:  The debtor-in-possession financing facility established pursuant to and approved on a final basis by the Final DIP Order.

54.	DIP Facility Administrative Agent:  Victory Park Management, LLC, or its successors, assigns, or replacements, in its capacity as administrative agent under the DIP Facility.

55.	DIP Facility Claims:  Any Claim directly, indirectly, or otherwise derived from, or based upon, the DIP Facility.

56.	DIP Facility Lenders:  The lenders under the DIP Facility.

57.	Disclosure Statement:  The disclosure statement for the Plan, as amended, supplemented or modified from time to time, in form and substance acceptable to Victory Park, including all exhibits and schedules thereto, and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 19:55:51   Page 15 of 90

58. <u>Disputed Claim</u>: Any Claim or Interest that is not yet Allowed.

59. <u>Distribution Agent</u>: The Reorganized Debtor or any Entity selected by the Reorganized Debtor on or after the Effective Date, as applicable, to make or to facilitate distributions and handle all payments pursuant to the Plan with respect to Allowed 503(b)(9) Claims, including the A Notes and the B Notes. The Creditors' Committee or the Creditors' Representative or any Entity selected by the Creditors' Representative on or after the Effective Date, as applicable, to make or to facilitate distributions and handle all payments pursuant to the Plan with respect to Allowed General Unsecured Claims and the distribution of the $490,000 distributed to the Creditors' Committee in accordance with the Final DIP Order for distributions to holders of Allowed 503(b)(9) Claims.

60. <u>Distribution Date</u>: Any of the Initial Distribution Date or the Periodic Distribution Dates.

61. <u>Distribution Record Date</u>: The date for determining which holders of Allowed Claims are eligible to receive distributions hereunder, which shall be (a) ten Business Days after entry of the Confirmation Order or (b) such other date as designated in a Bankruptcy Court order.

62. <u>Effective Date</u>: The date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the Effective Date set forth in the Plan have been satisfied or waived.

63. <u>Entity</u>: As defined in section 101(15) of the Bankruptcy Code.

64. <u>Equity Security</u>: As defined in section 101(16) of the Bankruptcy Code.

65. <u>Estate</u>: The bankruptcy estate of the Debtor created pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

66. <u>Existing Shareholders</u>: The Entities holding the Equity Securities of the Debtor prior to the Effective Date.

67. <u>Exculpated Claim</u>: As defined in ARTICLE VIII.G.

68. <u>Exculpated Party</u>: Each of the following in its capacity as such: (a) the Debtor's and the Reorganized Debtor's current and former Affiliates, subsidiaries, officers, directors, principals, partners, members, managers, employees, agents, financial and other advisors,

attorneys, accountants, investment bankers, consultants, representatives, and other Professionals; (b) the Existing Shareholders; (c) the DIP Facility Lenders and the DIP Facility Administrative Agent; (d) the Exit Facility Lenders and the Exit Facility Administrative Agent; (e) Cha Cha; and (f) with respect to each of the foregoing Entities in clauses (b) through (e), their respective current and former parents, Affiliates, subsidiaries, officers, directors, principals, employees, members, managers, agents, partners, professionals, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in their capacities as such.

69.    <u>Executory Contract</u>:  A contract or lease (other than an Unexpired Lease) to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

70.    <u>Exit Facility</u>:  That certain financing facility in the amount of approximately $31,500,000.00 to be entered into on the Effective Date by the Reorganized Debtor, the Exit Lenders, and the other parties thereto from time to time with terms and provisions substantially similar to those contained in the term sheet attached to the Disclosure Statement and the agreement included in the Plan Supplement, with such changes as are acceptable to Victory Park, which shall be secured by a first priority lien on substantially all of the Reorganized Debtor's assets and a second priority lien on substantially all of Reorganized Cha Cha's assets.

71.    <u>Exit Facility Administrative Agent</u>:  The administrative agent under the Exit Facility or its successors, assigns, or replacements.

72.    <u>Exit Facility Lenders</u>:  The lenders under the Exit Facility.

73.    <u>Exit Financing</u>:  The financing provided to the Reorganized Debtor under the Exit Facility, the form of which is included in the Plan Supplement.

74.    <u>Exit Financing Documents</u>:  All documents necessary or appropriate to effectuate the Exit Financing.

75.    <u>Exit Obligations</u>:  The "Obligations" as defined in each of the Exit Facility and the Cha Cha Exit Facility, in each case, as amended, supplemented, restated, refinanced or otherwise modified from time to time.

76.     Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

77.     Final DIP Order:  The *Final Order (I) Authorizing Debtor in Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§105, 361, 362, 363, and 364; (II) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief*, entered by the Bankruptcy Court on March 6, 2014 [Docket No.665].

78.     Final Order:  An order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court (or such other court) on the docket in the Chapter 11 Case (or the docket of such other court), which has not been modified, amended, reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, stay, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

79.     General Unsecured Claim:     Any Claim, other than (a) 503(b)(9) Claims, (b) Administrative Claims, (c) Chavez DIP Facility Claims, (d) DIP Facility Claims, (e) Intercompany Claims, (f) Priority Tax Claims, (g) Other Priority Claims, (h) Professional Claims, (i) Secured Claims, (j) Other Secured Claims, (k) Secured Tax Claims, (l) Crown Lift Trucks Claims, (m) Toyota Financial Services Claims, and (n) Unified Western Grocers Claims.

80.     Governmental Unit:  As defined in section 101(27) of the Bankruptcy Code.

81.     Impaired:  With respect to any Class of Claims or Interests, a Claim or Interest that is not Unimpaired.

82.     Initial Distribution Date:  The date occurring, as soon as reasonably practicable, after the Effective Date when distributions under the Plan shall commence, other than distributions (if any) for Allowed Claims in Class 4.

83.     Intercompany Claim:  A Claim by an Affiliate of the Debtor against the Debtor.

84.     Interest:  Any Equity Security of the Debtor existing immediately prior to the Effective Date.

85.     Interim Compensation Order:  The *Order Establishing Procedures for Interim Payment of Fees and Reimbursement of Expenses*, entered by the Bankruptcy Court on December 6, 2013 [Docket No.457].

86.     IRS:  Internal Revenue Service.

87.     Lien:  As defined in section 101(37) of the Bankruptcy Code.

88.     Mi Pueblo:  Mi Pueblo San Jose, Inc., a California corporation.

89.     New Board:  The initial board of directors of Reorganized Mi Pueblo, which shall as of the Effective Date consist of members selected in accordance with the Reorganized Debtor Organizational Documents and, to the extent known, shall be identified in the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

90.     New Equity Investment:  The NewCo Equity issued by Reorganized Mi Pueblo to Victory Park and Cha Cha on the Effective Date in accordance with the Plan.

91.     New Money Commitment:  The obligation of Cha Cha to contribute, on the Effective Date, its share of the New Equity Investment on the terms and conditions set forth in the Plan.

92.     NewCo:  The Entity created as part of the Restructuring Transactions that directly holds substantially all of the assets or equity of the Debtor or the Reorganized Debtor, on or after the Effective Date.

93.     NewCo Equity:  The authorized shares of common stock of Reorganized Mi Pueblo.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

94.     Other Priority Claim:  Any Claims entitled to priority in right of payment under section 507(a) of the Bankruptcy Code other than (a) 503(b)(9) Claims, (b) Administrative Claims, or (c) Priority Tax Claim.

95.     Other Secured Claim:  Any Secured Claim, including PACA Claims, other than (a) DIP Facility Claims, (b) Chavez DIP Facility Claims, (c) Secured Tax Claims, (d) Crown Lift Trucks Claims, (e) Toyota Financial Services Claims, (f) Unified Western Grocers Claims, (g) Wells Fargo Bank Letter of Credit Claims, and (h) Wells Fargo Bank Treasury Management Claims.

96.     PACA Claims:  Any and all Claims against the Debtor entitled to priority or secured status pursuant to the Perishable Agricultural Commodities Act, provided that, to have an Allowed PACA Claim, holders of such Claims shall have properly preserved their rights pursuant to the Perishable Agricultural Commodities Act.

97.     Periodic Distribution Date:  Unless otherwise ordered by the Bankruptcy Court, and other than with respect to distributions (if any) for Allowed Claims in Class 4, the first business day that is 90 days after the Initial Distribution Date, and for the first year thereafter, the first business day that is 90 days after the immediately preceding Periodic Distribution Date.

98.     Person:  As defined in section 101(41) of the Bankruptcy Code.

99.     Plan:  This chapter 11 plan of reorganization, as it may be altered, amended, modified, or supplemented from time to time, in accordance with the terms set forth herein, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, and which shall be in form and substance acceptable to Victory Park.

100.    Plan Supplement:  The supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan, to be filed with the Bankruptcy Court no later than May 1, 2014 or as otherwise provided herein, or as such filing deadlines may be extended by the Debtor, provided, that, the Debtor shall file a notice with the Bankruptcy Court of any such extension(s), and such supplement(s) shall be in form and substance reasonably acceptable to Victory Park, and which shall include, but not be limited to:  (a) the Exit Financing Documents; (b) the Cha Cha Exit Financing Documents; (c) the Chavez Exit Note Documents;

(d) a form of A Note; (e) a form of B Note; (f) a form agreement under the Trade Credit Program, (g) the form of Cha Cha Check Cashing Note; (h) the form of Cha Cha Exit Note; (i) the form of subordination agreement by and among Victory Park and holders of A Notes and B Notes; (j) the form of subordination agreement by and among Reorganized Cha Cha and holders of A Notes and B Notes; (k) a form of subordination agreement by and between Victory Park and Cha Cha; (l) a description of the Restructuring Transactions; (m) the Reorganized Debtor Organizational Documents; (n) a form of stockholders agreement among the holders of the NewCo Equity; (o) a list of members of the New Board and necessary compensation-related disclosures; (p) a list of Executory Contracts and Unexpired Leases to be assumed or rejected (with related notices), and as may be amended by the Debtor prior to the Effective Date; (q) a list of retained Causes of Action; and (r) the Cha Cha Transfer Agreement.

101. _Priority Claim_: Collectively, Priority Tax Claims and Other Priority Claims.

102. _Priority Tax Claim_: Any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

103. _Pro Rata_: The proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in that particular Class bear to the aggregate amount of Allowed Claims in that Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

104. _Professional_: An Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

105. _Professional Claims_: A Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4),or 503(b)(5) of the Bankruptcy Code.

106. <u>Professional Compensation</u>: All accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date to the extent any such fees and expenses have not been paid and regardless of whether a fee application has been filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Professional Compensation.

107. <u>Proof of Claim</u>: A proof of Claim filed against the Debtor in the Chapter 11 Case.

108. <u>Reinstate or Reinstated</u>: Has the meaning pursuant to all applicable sections of the Bankruptcy Code.

109. <u>Released Party</u>: Each of the following in its capacity as such, and only in its capacity as such: (a) the Debtor's and the Reorganized Debtor's current and former Affiliates, subsidiaries, officers, directors, principals, partners, members, managers, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals; (b) the Existing Shareholders; (c) the DIP Facility Lenders and the DIP Facility Administrative Agent; (d) the Exit Facility Lenders and the Exit Facility Administrative Agent; (e) Cha Cha; and (f) with respect to each of the foregoing Entities in clauses (b) through (e), their respective current and former parents, Affiliates, subsidiaries, officers, directors, principals, employees, members, managers, agents, partners, professionals, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in their capacities as such.

110. <u>Releasing Party</u>: Each of the following in its capacity as such: (a) the Debtor and the Reorganized Debtor (and all Entities claiming directly, indirectly, derivatively, or otherwise through the Debtor); (b) the Creditors' Committee and the members thereof; (c) each holder of a Claim against the Debtor entitled to vote on the Plan voting to accept the Plan; (d) each holder of a Claim against the Debtor entitled to vote on the Plan abstaining from voting on the Plan and not opting out of being a Releasing Party in accordance with the instructions set forth in the Solicitation Packages; and (e) each holder of an Allowed 503(b)(9) Claim who does not opt out of being a Releasing Party in accordance with the instructions set forth in the Solicitation Package.

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:55:51    Page 22 of 90

111. _Reorganized Cha Cha_: Cha Cha Enterprises, LLC or any successor thereto by merger, consolidation, or otherwise, including any holding company created as part of the Restructuring Transactions that holds, directly or indirectly, substantially all of the assets of the Debtor or Reorganized Cha Cha, on or after the Effective Date.

112. _Reorganized Debtor_ or _Reorganized Mi Pueblo_: Mi Pueblo San Jose, Inc., or any successor thereto by merger, consolidation, or otherwise, including NewCo and any other holding company created as part of the Restructuring Transactions that holds, directly or indirectly, substantially all of the assets of the Debtor or the Reorganized Debtor, on or after the Effective Date.

113. _Reorganized Debtor Organizational Documents_: Each of the following: (a) the Reorganized Mi Pueblo Charter; (b) the Reorganized Mi Pueblo Bylaws; and (c) any other document necessary or appropriate to effectuate the corporate and organizational structure of the Reorganized Debtor.

114. _Reorganized Mi Pueblo Bylaws_: The bylaws of Reorganized Mi Pueblo, substantially in the form contained in the Plan Supplement.

115. _Reorganized Mi Pueblo Charter_: The certificate of incorporation of Reorganized Mi Pueblo, substantially in the form contained in the Plan Supplement.

116. _Restructuring Transactions_: Those certain transactions described in ARTICLE IV.Q, including the sale and issuance of the NewCo Equity, issuance of the Chavez Exit Notes, the transfer of the Transferred Cha Cha Assets in accordance with the terms and conditions of the Cha Cha Transfer Agreement, the closing of the Exit Financing, and the issuance of the Cha Cha Exit Note, which shall be described in documents filed with the Plan Supplement.

117. _Schedules_: The schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules.

118. _Secured Claim_: A Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:35:51   Page 23 of 90

119.  Secured Tax Claim:  Any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

120.  Securities Act:  The Securities Act of 1933, as amended, and the rules and regulations of the Securities and Exchange Commission promulgated thereunder.

121.  Security or Securities:  As defined in section 2(a)(1) of the Securities Act, which as provided herein, shall include the NewCo Equity issued in accordance with the Plan.

122.  Senior Exit Facilities:  The Exit Facility and the Cha Cha Exit Facility.

123.  Solicitation Packages:  The voting and other Plan-related materials sent to each holder of a Claim pursuant to the Solicitation Procedures Order.

124.  Solicitation Procedures Order:  The *Order: (I) Approving the Debtor's Disclosure Statement; (II) Establishing Voting Record Date; (III) Approving Solicitation Packages and Distribution Procedures; (IV) Approving Forms of Ballots and Establishing Procedures for Voting on Chapter 11 Plan; (V) Approving Forms of Notices to Non-Voting Classes Under Plan; (VI) Establishing Voting Deadline to Accept or Reject Plan; (VII) Approving Procedures for Vote Tabulations, Including Retention of Voting Agent; (VIII) Establishing Confirmation Hearing Date and Notice and Objection Procedures Thereof; and (IX) Approving Additional Notice to Holders of 503(b)(9) Claims* entered by the Bankruptcy Court on April 25, 2014.

125.  Special B Note Payment:  A payment from Reorganized Mi Pueblo to the Creditors' Representative in the amount of the lesser of (a) $100,000.00 and (b) the amount of B Notes then outstanding, which amount shall be distributed to holders of B Notes Pro Rata based on the then outstanding amounts of such B Notes.

126.  Third Party Release:  As defined in ARTICLE VIII.E.

127.  Toyota Financial Services:  Toyota Motor Credit Corporation.

128.  Toyota Financial Services Claims:  Any Claim of Toyota Financial Services arising under that certain Master Lease Agreement, dated April 23, 2013, by and between Toyota Financial Services and the Debtor, and to the extent such Claim is a Secured Claim secured by a 2013 Advance Adgressor Floor Scrubber, Model #X3220C-1000049848.

129. <u>Trade Credit Program</u>: As defined and described in ARTICLE IV.U.

130. <u>Transaction Expenses</u>: Any and all fees and expenses incurred by Victory Park, including, legal fees, advisor fees, consultant fees, costs and expenses, collateral valuations, appraisals, surveys, field examinations, third party diligence, lien searches, filing fees, and all other out-of-pocket costs and expenses in any way related to the DIP Facility, Exit Facility, and in connection with the prosecution and consummation of this Plan and all other documents related to this Plan and the Restructuring Transactions.

131. <u>Transferred Cha Cha Assets</u>: Those assets transferred from Cha Cha to the Debtor pursuant to the terms and conditions of the Plan and the Cha Cha Transfer Agreement and in accordance with the Restructuring Transactions, as follows: (a) Cha Cha's check cashing business; (b) the Unexpired Leases and subleases identified in the Cha Cha Transfer Agreement; (c) loans of Cash through the Cha Cha Check Cashing Note and the Cha Cha Exit Note to fund Reorganized Mi Pueblo's working capital requirements and operations, if necessary, and to repay the DIP Financing Claims to the extent the amount of the Cha Cha Exit Facility exceeds the amount of the Cha Cha DIP Financing Claims; and (d) a secured guaranty of the obligations incurred under the Exit Facility.

132. <u>Unclaimed Distribution</u>: Any distribution under the Plan on account of an Allowed Claim to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtor of an intent to accept a particular distribution; (c) responded to the Debtor's or Reorganized Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

133. <u>Unexpired Lease</u>: A lease of personal or nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

134. <u>Unified Western Grocers</u>: Unified Western Grocers, Inc.

135. <u>Unified Western Grocers Claims</u>: Any Claim of Unified Western Grocers arising under that certain agreement and to the extent such Claim is a Secured Claim secured by 350

shares of Unified Western Grocers Class A stock and 2,796 shares of Unified Western Grocers Class B stock.

136.  Unimpaired:  With respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

137.  United States Trustee:  The United States Trustee for the Northern District of California.

138.  Victory Park:  Victory Park Capital Advisors LLC.

139.  Voting Deadline:  That date that shall be the final date by which a holder of a Claim may vote to accept or reject the Plan in accordance with the Solicitation Procedures Order.

140.  Voting Record Date:  That date for determining which holders of Claims and Interests are entitled to vote to accept or reject the Plan in accordance with the Solicitation Procedures Order.

141.  Wells Fargo Bank:  Wells Fargo Bank, National Association; provided that, notwithstanding any other provision of the Plan, (a) Wells Fargo Bank is not a Releasing Party and (b) with respect to any Executory Contract or Unexpired Lease with Wells Fargo Bank included in the Plan Supplement in the list of Executory Contracts and Unexpired Leases to be assumed or rejected, the Plan Supplement will be filed and served no later than May 1, 2014, and may not be amended with regard to such Executory Contracts or Unexpired Leases unless Wells Fargo Bank (i) consents in writing or (ii) asserts an amount to cure such Executory Contracts or Unexpired Leases in excess of the amount proposed by the Debtor.

142.  Wells Fargo Bank Compromise Order:  The *Order re: (1) Approving Compromise of Controversy; (2) Authorizing Mi Pueblo San Jose, Inc. to Execute Various Agreements; and (3) Granting Wells Fargo Banks, N.A. Relief from the Automatic Stay* of Bankruptcy Court, entered in the Chapter 11 Case on February 20, 2014 [Docket No. 648].

143.  Wells Fargo Bank Letter of Credit Agreements: (a) the *Standby Letter of Credit Agreement* dated as of February 20, 2014, made by the Debtor and Wells Fargo Bank; and (b) the *Security Agreement—Immediately Restricted Wells Fargo Bank, National Association, Deposit Account* dated as of the same date, made by the Debtor, as debtor; and Wells Fargo Bank, as

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

secured party; provided, however, that notwithstanding any other provision of the Plan, after the Effective Date, the counterparty to the Wells Fargo Bank Letter of Credit Agreements (and the associated cash collateral account maintained by the Debtor at Wells Fargo Bank) will remain the Debtor.

144. Wells Fargo Bank Letter of Credit Claims: Any Claim of Wells Fargo Bank arising under or in connection with the Wells Fargo Bank Letter of Credit Agreements.

145. Wells Fargo Bank Payoff Agreement: The *Discounted Payoff Agreement* dated as of February 20, 2014, made by the Debtor, Cha Cha, Wells Fargo Bank, and the other parties identified therein.

146. Wells Fargo Bank Treasury Management Agreements: The "Mi Pueblo Treasury Management Agreements" as that term is defined in the Wells Fargo Bank Payoff Agreement; provided, however, that notwithstanding any other provision of the Plan, after the Effective Date, the counterparty to the Wells Fargo Bank Treasury Management Agreements (and the associated deposit accounts maintained by the Debtor at Wells Fargo Bank) will remain the Debtor.

147. Wells Fargo Bank Treasury Management Claims: Any Claim of Wells Fargo Bank arising under or in connection with the Wells Fargo Bank Treasury Management Agreements.

148. Wells Fargo Leasing: Wells Fargo Equipment Finance, a division of Wells Fargo Bank; provided that, notwithstanding any other provision of the Plan, (a) Wells Fargo Leasing is not a Releasing Party and (b) with respect to any Executory Contract or Unexpired Lease with Wells Fargo Leasing included in the Plan Supplement in the list of Executory Contracts and Unexpired Leases to be assumed or rejected, the Plan Supplement will be filed and served no later than May 1, 2014, and may not be amended with regard to such Executory Contracts or Unexpired Leases unless Wells Fargo Leasing (i) consents in writing or (ii) asserts an amount to cure such Executory Contracts or Unexpired Leases in excess of the amount proposed by the Debtor.

149. Wells Fargo Leasing Claims: Any Claim of Wells Fargo Leasing arising under or in connection with the Wells Fargo Leasing Equipment Leases.

150. <u>Wells Fargo Leasing Equipment Leases</u>: The Unexpired Leases between the Debtor, as lessee, and Wells Fargo Leasing, as lessor, comprising the following Unexpired Leases:

  a. *Single Sided Lease Agreement* for Lease No. xxxx2894-000 relating to a Crown Forklift.

  b. *Single Sided Lease Agreement* for Lease No. xxxx2894-001 relating to five Crown Walkie Pallet Trucks.

  c. *Single Sided Lease Agreement* for Lease No. xxxx2894-002 relating to a Crown Walkie Stacker.

  d. *Single Sided Lease Agreement* for Lease No. xxxx2894-003 relating to a Crown Forklift.

  e. *Single Sided Lease Agreement* for Lease No. xxxx2894-004 relating to five Crown Forklifts.

  f. *Single Sided Lease Agreement* for Lease No. xxxx2894-005 relating to five Crown Walkie Pallet Trucks.

  g. *Single Sided Lease Agreement* for Lease No. xxxx2894-006 relating to two Crown Forklifts.

  h. *Single Sided Lease Agreement* for Lease No. xxxx2894-007 relating to a Crown Work Assist Vehicle.

  i. *Single Sided Lease Agreement* for Lease No. xxxx2894-008 relating to a Crown Straddle Stacker.

  j. *Single Sided Lease Agreement* for Lease No. xxxx2894-009 relating to a Crown Pallet Jack.

  k. *Single Sided Lease Agreement* for Lease No. xxxx2894-010 relating to a Crown Rider.

  l. *Single Sided Lease Agreement* for Lease No. xxxx2894-011 relating to five Crown Walkie Pallet Trucks.

Case: 13-53893 Doc# 739 Filed: 04/25/14 Entered: 04/25/14 15:55:51 Page 28 of 90

1          m.      *Single Sided Lease Agreement* for Lease No. xxxx2894-012 relating to a

2                      Crown Walkie Stacker.

3          n.      *Single Sided Lease Agreement* for Lease No. xxxx2894-013 relating to a

4                      Crown Walkie Stacker.

5          o.      *Single Sided Lease Agreement* for Lease No. xxxx2894-014 relating to a

6                      Crown Walkie Pallet Truck.

7          p.      *Single Sided Lease Agreement* for Lease No. xxxx2894-015 relating to

8                      seven Crown Walkie Pallet Trucks.

9          q.      *Single Sided Lease Agreement* for Lease No. xxxx2894-017 relating to a

10                    Crown Pallet Truck.

11         r.      *Single Sided Lease Agreement* for Lease No. xxxx2894-018 relating to two

12                    Crown Forklifts.

13         s.      *Single Sided Lease Agreement* for Lease No. xxxx2894-019 relating to a

14                    Crown Walkie Straddle Stacker.

15         t.      *Single Sided Lease Agreement* for Lease No. xxxx2894-020 relating to a

16                    Crown Walkie Straddle Stacker.

17         u.      *Single Sided Lease Agreement* for Lease No. xxxx2894-021 relating to a

18                    Crown Walkie Reach Truck.

19         v.      *Single Sided Lease Agreement* for Lease No. xxxx2894-022 relating to a

20                    Crown Forklift.

21         w.      *Single Sided Lease Agreement* for Lease No. xxxx2894-023 relating to a

22                    Crown Forklift.

23         x.      *Single Sided Lease Agreement* for Lease No. xxxx2894-024 relating to a

24                    Hamech Forklift.

25         y.      *Single Sided Lease Agreement* for Lease No. xxxx2894-025 relating to a

26                    Crown Forklift.

27         z.      *Single Sided Lease Agreement* for Lease No. xxxx2894-026 relating to five

28                    new Crown Forklifts, batteries and chargers.

| | | |
|---|---|---|
| 1 | aa. | *Single Sided Lease Agreement* for Lease No. xxxx2894-027 relating to a |
| 2 | | Crown Forklift. |
| 3 | bb. | *Single Sided Lease Agreement* for Lease No. xxxx2894-028 relating to |
| 4 | | three Crown Pallet Jacks. |
| 5 | cc. | *Single Sided Lease Agreement* for Lease No. xxxx2894-029 relating to a |
| 6 | | Crown Forklift. |
| 7 | dd. | *Single Sided Lease Agreement* for Lease No. xxxx2894-030 relating to a |
| 8 | | Crown Walkie Pallet Truck. |

B.  <u>Rules of Interpretation</u>

1.  For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) unless otherwise specified herein, any reference to the term "including" herein shall mean "including without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it; and (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

2. The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

3. Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

# ARTICLE II.

## ADMINISTRATIVE CLAIMS, PROFESSIONAL CLAIMS, 503(b)(9) CLAIMS, PRIORITY TAX CLAIMS, AND OTHER PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, 503(b)(9) Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III.

A. <u>Administrative Claims, Other Than Professional Fee Claims and 503(b)(9) Claims</u>

Unless otherwise agreed to by the holder of an Allowed Administrative Claim in writing, the Debtor or Reorganized Debtor, as applicable, and Victory Park, each holder of an Allowed Administrative Claim (other than of a Professional Claim) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (1) on the Effective Date, or as soon as practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order; or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Commencement Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the holders of such Allowed Administrative Claims. For the avoidance of doubt, Wells Fargo Bank has "otherwise agreed" (a) as to the Wells Fargo Bank Letter of Credit Claims, as

provided in the Wells Fargo Bank Letter of Credit Agreements; (b) as to the Wells Fargo Bank Treasury Management Claims, as provided in the Wells Fargo Bank Treasury Management Agreements; and (c) as to both the Wells Fargo Bank Letter of Credit Claims and the Wells Fargo Bank Treasury Management Claims, as further provided in the Wells Fargo Bank Payoff Agreement and the Wells Fargo Bank Compromise Order.

Except as otherwise provided in this ARTICLE II.A, unless previously filed, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtor no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor, the Reorganized Debtor, or its property and Estate, and such Administrative Claims shall be deemed discharged as of the Effective Date.

No request for payment of Administrative Claim shall be required to be filed or served by Wells Fargo Bank under or in connection with the Wells Fargo Bank Letter of Credit Claims or the Wells Fargo Bank Treasury Management Agreements, and the Administrative Claims Bar Date shall not apply to those Claims. Those Claims shall be made, addressed, paid, collected, enforced, and otherwise governed entirely in accordance with (a) as to the Wells Fargo Bank Letter of Credit Claims, the Wells Fargo Bank Letter of Credit Agreements; (b) as to the Wells Fargo Bank Treasury Management Claims, the Wells Fargo Bank Treasury Management Agreements; and (c) as to both the Wells Fargo Bank Letter of Credit Claims and the Wells Fargo Bank Treasury Management Claims, the Wells Fargo Bank Payoff Agreement and the Wells Fargo Bank Compromise Order.

B.    Professional Claims

1.    Final Fee Applications. All final requests for payment of Professional Claims shall be filed and served no later than 90 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy

Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

2. **Post-Effective Date Fees and Expenses.** Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.   503(b)(9) Claims

Except to the extent that a holder of an Allowed 503(b)(9) Claim agrees to a less favorable treatment in writing, on or as soon as practicable after the Effective Date, each holder of an Allowed 503(b)(9) Claim (i) that agrees or is deemed to agree to such treatment shall receive (a) an A Note, (b) a B Note, or (c) a combination of both in accordance with the Plan or (ii) if the holder of such Allowed 503(b)(9) Claim has not agreed to (a) an A Note, (b) a B Note, or (c) a combination of both in accordance with the Plan, on the Effective Date or as soon thereafter as such 503(b)(9) Claim becomes Allowed, cash equal to the allowed amount of such Allowed 503(b)(9) Claim.

**HOLDERS OF 503(b)(9) CLAIMS WHO DO NOT TIMELY OBJECT IN WRITING TO THE RECEIPT OF (A) AN A NOTE, (B) A B NOTE, OR (C) A COMBINATION OF BOTH IN ACCORDANCE WITH THE PLAN WILL BE DEEMED TO HAVE AGREED AND CONSENTED TO SUCH IMPAIRED TREATMENT, THUS SATISFYING SECTION 1129(a)(9) OF THE BANKRUPTCY CODE AS ONE OF THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN.**

D.   Priority Tax Claims and Other Priority Claims

Each holder of an Allowed Priority Tax Claim or Allowed Other Priority Claim due and payable on or before the Effective Date shall receive, at the option of Debtor (on the Effective Date) or the Reorganized Debtor (after the Effective Date), as applicable, with the consent of

-28-

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 13:35:31   Page 33 of 90

1  Victory Park, one of the following treatments on account of such Claim: (1) Cash, payable by the

2  Debtor on the Effective Date, in an amount equal to the amount of such Allowed Priority Tax

3  Claim or Allowed Other Priority Claim; (2) Cash in an amount agreed to by the Debtor (on the

4  Effective Date) or Reorganized Debtor (after the Effective Date), as applicable, Victory Park, and

5  such holder, provided, however, that such Entity may further agree for the payment of such

6  Allowed Priority Tax Claim or Allowed Other Priority Claim to occur at a later date; or (3) Cash

7  in the aggregate amount of such Allowed Priority Tax Claim or Allowed Other Priority Claim

8  payable in installment payments over a period not more than five years after the Commencement

9  Date pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed

10 Priority Tax Claim or Allowed Other Priority Claim is not due and owing on the Effective Date,

11 such Claim shall be paid in full in Cash in accordance with the terms of any agreement between

12 the Debtor (on the Effective Date) or the Reorganized Debtor (after the Effective Date), as

13 applicable, Victory Park, and the holder of such Claim, or as may be due and payable under

14 applicable non-bankruptcy law or in the ordinary course of business.

15 ## ARTICLE III.

16 ## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

17 A.     Classification of Claims and Interests

18        Except for the Claims addressed in ARTICLE II, all Claims and Interests are classified in

19 the Classes set forth herein pursuant to section 1122 of the Bankruptcy Code.  As set forth above,

20 in accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified

21 Administrative Claims, Professional Claims, Priority Tax Claims, or Other Priority Tax Claims.

22 A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest

23 qualifies within the description of that Class and is classified in other Classes to the extent that

24 any portion of the Claim or Interest qualifies within the description of such other Classes.  A

25 Claim or Interest is also classified in a particular Class for the purpose of voting and receiving

26 distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed

27 Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied

28 prior to the Effective Date.

-29-

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:55:51   Page 34 of 90

1.     <u>Class Identification</u>:  Below is a chart assigning each Class a letter for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | DIP Facility Claims | Impaired | Entitled to Vote |
| 2 | Chavez DIP Facility Claims | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Conclusively Presumed to Accept |
| 3A | Crown Lift Trucks Claims | Unimpaired | Conclusively Presumed to Accept |
| 3B | Toyota Financial Services Claims | Unimpaired | Conclusively Presumed to Accept |
| 3C | Unified Western Grocers Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Deemed to Reject |
| 6 | Interests | Impaired | Deemed to Reject |

B.    <u>Treatment of Classes of Claims and Interests</u>

    1.    <u>Class 1—DIP Facility Claims</u>

        a.    *Classification:*  Class 1 consists of all DIP Facility Claims.

        b.    *Treatment:*  The DIP Facility Claims are Allowed.  Except to the extent that a holder of a DIP Facility Claim agrees to a less favorable treatment in writing, on or as soon as practicable after the Effective Date, each holder of an Allowed DIP Facility Claim shall: (i) be rolled over into the Exit Facility and (ii) to the extent the aggregate amount of the DIP Facility Claims exceed the amount available under the Exit Facility, be repaid in Cash from the proceeds of the Cha Cha Exit Facility or other available funding.

        c.    *Voting:*  Class 1 is Impaired and holders of Allowed Class 1 Claims may vote to accept or reject the Plan.

    2.    <u>Class 2—Chavez DIP Facility Claims</u>

        a.    *Classification:*  Class 2 consists of all Chavez DIP Facility Claims.

        b.    *Treatment*:  Except to the extent that a holder of an Allowed Chavez DIP Facility Claim agrees to a less favorable treatment in writing, on or as soon as practicable after the Effective Date, the Allowed Chavez DIP Facility Claims shall be rolled over into the Chavez Exit Notes.

        c.    *Voting:*  Class 2 is Impaired, and holders of Allowed Class 2 Claims may vote to accept or reject the Plan.

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE US BANKRUPTCY CODE

3. __Class 3—Other Secured Claims__

    a.    *Classification:*  Class 3 consists of all Other Secured Claims.

    b.    *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment in writing, on or as soon as practicable after the Effective Date, at the option of the Reorganized Debtor, each holder of an Allowed Other Secured Claim shall be: (i) reinstated according to the terms of the relevant instrument or (ii) satisfied through the surrender to the holder thereof of the collateral securing such Claim.

    c.    *Voting:*  Class 3 is Unimpaired, and holders of Allowed Class 3 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

4. __Class 3A—Crown Lift Trucks Claims__

    a.    *Classification:*  Class 3A consists of all Crown Lift Trucks Claims.

    b.    *Treatment:*  Except to the extent that a holder of an Allowed Crown Lift Trucks Claim agrees to a less favorable treatment in writing, Crown Lift Trucks shall retain its Lien against its collateral.  If any Executory Contract or Unexpired Lease with Crown Lift Trucks is assumed, any defaults under such Executory Contract or Unexpired Lease will be Cured in accordance with the provisions of ARTICLE V.  If any Executory Contract or Unexpired Lease with Crown Lift Trucks is rejected, then any Claim of Crown Lift Trucks will be satisfied through the surrender to Crown Lift Trucks of the collateral securing such Claim with any such Claim that is not a Secured Claim treated as a Class 4 General Unsecured Claim.

    c.    *Voting:*  Class 3A is Unimpaired, and holders of Allowed Class 3A Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 3A Claims are not entitled to vote to accept or reject the Plan.

5. __Class 3B—Toyota Financial Services Claims__

    a.    *Classification:*  Class 3B consists of all Toyota Financial Services Claims.

    b.    *Treatment:*  Except to the extent that a holder of an Allowed Toyota Financial Services Claim agrees to a less favorable treatment in writing, Toyota Financial Services shall retain its Lien against its collateral.  If any Executory Contract or Unexpired Lease with Toyota Financial Services is assumed, any defaults under such Executory Contract or Unexpired Lease will be Cured in accordance with the provisions of ARTICLE V.  If any Executory Contract or Unexpired Lease with Toyota Financial Services is rejected, then any Claim of Toyota Financial Services will be satisfied

-31-

through the surrender to Toyota Financial Services of the collateral securing such Claim with any such Claim that is not a Secured Claim treated as a Class 4 General Unsecured Claim.

c. *Voting:*  Class 3B is Unimpaired, and holders of Allowed Class 3B Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 3B Claims are not entitled to vote to accept or reject the Plan.

6. Class 3C—Unified Western Grocers Claims

a. *Classification:*  Class 3C consists of all Unified Western Grocers Claims.

b. *Treatment:*  Except to the extent that a holder of an Allowed Unified Western Grocers Claim agrees to a less favorable treatment in writing, at the option of the Reorganized Debtor, Unified Western Grocers shall (i) retain its Liens against its collateral and be paid in full on account of such claims 180 days after the Effective Date without interest or (ii) be satisfied through the surrender to the holder thereof of the collateral securing such Claim.

c. *Voting:*  Class 3C is Impaired, and holders of Allowed Class 3C Claims may vote to accept or reject the Plan.

7. Class 4—General Unsecured Claims

a. *Classification:*  Class 4 consists of all General Unsecured Claims.

b. *Treatment:*  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment in writing, on or as soon as is practicable after the later of the Effective Date and the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive the amount of such holder's Pro Rata share of (a) the proceeds of any Avoidance Actions transferred to the Creditors' Representative as provided in ARTICLE IV.P and (b) $200,000.00; provided that Reorganized Mi Pueblo will provide such $200,000.00 amount to the Creditors' Representative on the Effective Date for distribution to holders of Allowed General Unsecured Claims in accordance with the terms of the Plan.

c. *Voting:*  Class 4 is Impaired, and holders of Allowed Class 4 Claims may vote to accept or reject the Plan.

8. Class 5—Intercompany Claims

a. *Classification:*  Class 5 consists of all Intercompany Claims.

b. *Treatment:*  Other than with respect to Intercompany Claims that arise or have arisen after the Commencement Date in the ordinary course of the

-32-

Debtor's business, which shall be treated as Administrative Claims for purposes of this Plan, on the Effective Date, each Allowed Intercompany Claim shall be discharged. Except as set forth herein or to the extent that the Reorganized Debtor and Victory Park decide to retain and reinstate any Intercompany Claims, the holders of Allowed Intercompany Claims shall not be entitled to receive or retain any property on account of such Claims.

c.  *Voting:* Class 5 is Impaired, and holders of Allowed Class 5 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

9.  Class 6—Interests in Mi Pueblo

a.  *Classification:* Class 6 consists of all Interests in Mi Pueblo.

b.  *Treatment:* Holders of Allowed Class 6 Interests shall not receive any distributions on account of such Allowed Class 6 Interests. On the Effective Date, all Class 6 Interests shall be canceled and extinguished.

c.  *Voting:* Class 6 is Impaired, and holders of Allowed Class 6 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Class 6 Interests are not entitled to vote to accept or reject the Plan.

C.  Special Provision Governing Vote Tabulation

Except as otherwise provided in the Disclosure Statement and the motion to approve the Disclosure Statement and its related exhibits: (i) if no holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims in such Class; and (ii) any Class of Claims that does not have a holder of an Allowed Claim or Allowed Interest or a Claim temporarily allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

D.  Special Provision Governing Unimpaired Claims

Except as otherwise specifically provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights in respect of any Unimpaired Claim, including all

Case: 13-53893  Doc# 739  Filed: 04/25/14  Entered: 04/25/14 19:55:51  Page 38 of 90

rights in respect of legal and equitable defenses to or setoffs or recoupments against the holder of any such Unimpaired Claim.

# ARTICLE IV.

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.    Use of Proceeds from New Money Commitment and Exit Facility

Unless otherwise provided in the Plan or the Cha Cha Transfer Agreement, the Debtor and Reorganized Debtor, as applicable, shall use the proceeds received from the New Money Commitment, together with proceeds from the Exit Facility and other funds held by the Debtor on the Effective Date: (1) to make cash distributions required by the Plan; (2) to pay Transaction Expenses not previously paid; (3) to pay other expenses of the Chapter 11 Case, to the extent so ordered by the Bankruptcy Court; and (4) for general corporate purposes.

On the Effective Date, Cha Cha shall contribute or otherwise provide to the Debtor the Transferred Cha Cha Assets and the Cha Cha Exit Note as partial consideration for, among other things, fifty percent of the NewCo Equity.  Also on the Effective Date, the Exit Lenders shall provide the Exit Financing as partial consideration for fifty percent of the NewCo Equity.  The NewCo Equity, and the rights of the holders thereof, shall be governed by the Plan.  Cha Cha and Mi Pueblo reserve the right to make adjustments to the allocation of the exit financing and reorganization structure, subject to the approval of Victory Park, to minimize tax impacts; provided that any such adjustment shall be disclosed in the Plan Supplement if determined by April 30, 2014, or disclosed in a notice filed with the Bankruptcy Code if determined thereafter.

B.    Guaranty of Obligations Under the Senior Exit Facilities

The Reorganized Debtor shall provide a secured guaranty of the obligations incurred by Cha Cha under the Cha Cha Exit Facility.  Reorganized Cha Cha, in turn, shall provide a secured guaranty of the obligations incurred by the Reorganized Debtor under the Exit Facility.  Under the terms and conditions of the Exit Facility, the Exit Lenders will be secured by (i) a first lien on all of the assets of the Reorganized Debtor and (ii) a second lien on all of the assets of Reorganized Cha Cha.  Under the terms and conditions of the Cha Cha Exit Facility, the Exit

-34-

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE US BANKRUPTCY CODE

Lenders will be secured by (y) a first lien on all of the assets of Reorganized Cha Cha and (z) a second lien on all of the assets of the Reorganized Debtor.

C.    <u>General Settlement of Claims and Interests</u>

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and Causes of Action resolved pursuant to the Plan.

D.    <u>NewCo Equity</u>

The issuance and distribution of the NewCo Equity by the Reorganized Debtor to Cha Cha and Victory Park on the Effective Date in consideration for, among other things, the New Equity Investment, the Cha Cha Transferred Assets, the Cha Cha Exit Note, and the Exit Financing is authorized without the need for any further corporate action or without any further action by the Debtor or the Reorganized Debtor, as applicable. All of the shares of NewCo Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. On the Effective Date, the Reorganized Debtor shall be a private company. As such, the Reorganized Debtor will not list the NewCo Equity on a national securities exchange as of the Effective Date.

E.    <u>Registration Exemptions</u>

The offering, issuance, and distribution of any Securities pursuant to the Plan and any and all settlement agreements incorporated therein are expected to be exempt from applicable federal and state securities laws (including blue sky laws), registration, and other requirements, including, the registration and prospectus delivery requirements of section 5 of the Securities Act, pursuant to section 4(2) of the Securities Act, or another available exemption from registration under the Securities Act, as applicable. In addition, under section 1145 of the Bankruptcy Code, if applicable, any Securities issued pursuant to the Plan or any and all settlement agreements incorporated therein will be transferable under the Securities Act by the recipients thereof, subject to (1) the restrictions, if any, on the transferability of such Securities and instruments, including

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:35:51   Page 40 of 90

restrictions contained in the Reorganized Debtor Organizational Documents and (2) any other applicable regulatory and legal requirements.

F.     Vesting of Assets in the Reorganized Debtor

     Except as specifically or expressly provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property of the Debtor's Estate, all of the Debtor's Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for (1) Liens granted to or existing in favor of Wells Fargo Bank under or in connection with the Wells Fargo Bank Letter of Credit Agreements or the Wells Fargo Bank Treasury Management Agreements and (2) Liens, if any, that may be specifically granted to secure the Senior Exit Facilities or the Chavez Exit Notes).  On and after the Effective Date, except as otherwise specifically provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.     Cancellation of Notes, Instruments, Certificates, and Other Documents

     On the Effective Date, except as otherwise specifically provided for in the Plan (and except for (1) such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtor that are specifically Reinstated pursuant to the Plan and (2) the Wells Fargo Bank Letters of Credit Agreements and the Wells Fargo Bank Treasury Management Agreements):  (1) the obligations of the Debtor under the DIP Facility and the Chavez DIP Facility, and any other Certificate, share, note, bond, indenture, purchase right, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or profits interest in the Debtor or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtor giving rise to any Claim or Interest, and any options, or other securities exercisable or exchangeable for, or convertible into Interests or equity of the Debtor, shall be cancelled as to the Debtor; (2) the obligations of the Debtor under the DIP

Facility and the Chavez DIP Facility shall be fully released, settled, and compromised as to the Debtor, and the Reorganized Debtor shall not have any continuing obligations thereunder except as otherwise specifically provided in the Plan; and (3) the obligations of the Debtor and the Reorganized Debtor, pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing any shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be fully released, settled, and compromised; provided, however, that notwithstanding Consummation or the occurrence of the Effective Date, any agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of (1) allowing holders to receive distributions under the Plan, (2) allowing and preserving the rights of the DIP Facility Administrative Agent, as provided in ARTICLE VII.

H.    Issuance of New Securities; Execution of Plan Documents

Except as otherwise specifically provided in the Plan or the Reorganized Debtor Organizational Documents, the Reorganized Debtor shall issue on the Effective Date all Securities, notes, instruments, Certificates, and other documents required to be issued pursuant to the Plan.

I.    Post-Confirmation Property Sales

To the extent the Debtor or Reorganized Debtor, as applicable, with the consent of Victory Park, purchase or sell any property after the Confirmation Date and prior to the Effective Date, the Debtor or Reorganized Debtor, as applicable, may, with the consent of Victory Park, elect to purchase or sell such property pursuant to sections 363, 1123(a)(5)(D), 1141(c), and 1146(a) of the Bankruptcy Code.

J.    Section 1146(a) Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, including the Cha Cha Transfer Agreement, shall not be subject to any stamp tax or similar tax to the greatest extent of applicable law applying section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental

officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies to the greatest extent of applicable law, without limitation, to: (1) the Restructuring Transactions; (2) the creation of any mortgage, deed of trust, Lien, or other security interest; (3) the making or assignment of any lease or sublease; (4) the issuance and/or distribution of NewCo Equity and any other securities of the Debtor or the Reorganized Debtor; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring in accordance with the Plan.

K.      Corporate Action

Each of the matters provided for by the Plan involving the corporate structure of the Debtor or corporate or related actions to be taken by or required of the Debtor or the Reorganized Debtor, whether taken prior to, as of, or after the Effective Date, shall be deemed authorized, approved, and ratified without the need for any further corporate action or without any further action by the Debtor or the Reorganized Debtor, holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or Victory Park, or any other Entity, as applicable. Such actions include (1) the adoption and filing of the Reorganized Debtor Organizational Documents, (2) the appointment of the New Board, (3) the authorization, issuance and distribution of the NewCo Equity and any other Securities to be authorized, issued and distributed pursuant to the Plan, and (4) the consummation and implementation of the Senior Exit Facilities and the issuance of the Chavez Exit Notes, the A Notes, the B Notes, the Cha Cha Check Cashing Note, and the Cha Cha Exit Note, and any intercreditor and subordination agreements with respect thereto.

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 15:55:51    Page 43 of 90

L.     Certificate of Incorporation and Bylaws

The certificate of incorporation and bylaws of the Debtor shall be as contained in the Plan Supplement and as acceptable to the Debtor and Victory Park. On the Effective Date, the Reorganized Debtor, Cha Cha, and Victory Park, as applicable, shall enter into the Reorganized Debtor Organizational Documents. The Reorganized Mi Pueblo Charter will, among other things: (1) authorize the issuance of the shares of NewCo Equity; and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting Equity Securities.

After the Effective Date, the Reorganized Debtor may amend and restate the Reorganized Debtor Organizational Documents as permitted by the laws of its respective state and such documents.

M.     Effectuating Documents, Further Transactions

On and after the Effective Date, the Reorganized Debtor, and its officers and members of the boards of directors, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant thereto in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

N.     Directors and Officers of Reorganized Mi Pueblo

On the Effective Date, the term of the current members of the board of directors of the Debtor shall expire, and the New Board shall be appointed in accordance with the Plan. On and after the Effective Date, each director or officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor Organizational Documents, or other constituent documents, as applicable, and applicable state law. The New Board shall be reconstituted to consist of directors as set forth in the Reorganized Debtor Organizational Documents, including the right of Victory Park to choose a majority of the initial directors. Until the A Notes and the B Notes are satisfied in full, the Creditors' Representative shall have the right to request that the board of

-39-

1  directors of Reorganized Mi Pueblo meet on reasonable notice to discuss the satisfaction of the A

2  Notes and the B Notes.

3  O.      Preservation of Rights of Action

4          Subject to the Debtor Release, the Third Party Release, the Wells Fargo Bank Payoff

5  Agreement, the Wells Fargo Bank Compromise Order, and the release of the Avoidance Actions

6  set forth in P, unless any of the Debtor's Causes of Action against an Entity are expressly waived,

7  relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in

8  accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and

9  may enforce all rights to commence and pursue, as appropriate, any and all of the Debtor's

10 Causes of Action, whether arising before or after the Commencement Date, including any actions

11 specifically enumerated in the Plan Supplement, and the Reorganized Debtor's right to

12 commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the

13 occurrence of the Effective Date (for the avoidance of doubt, the Debtor previously released,

14 compromised, or settled certain of the Debtor's Causes of Action against Wells Fargo Bank and

15 various related parties pursuant to the Wells Fargo Bank Payoff Agreement, which was approved

16 by the Wells Fargo Bank Compromise Order, which has become a Final Order).    The

17 Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the

18 best interests of the Reorganized Debtor.  **No Entity may rely on the absence of a specific**

19 **reference in the Plan, the Plan Supplement, or the Disclosure Statement to any of the**

20 **Causes of Action against it as any indication that the Debtor or the Reorganized Debtor will**

21 **not pursue any and all of their available Causes of Action against it.  The Debtor and the**

22 **Reorganized Debtor expressly reserve all rights to prosecute any and all of their Causes of**

23 **Action against any Entity, except as otherwise expressly provided in the Plan or a Final**

24 **Order**.  Unless any of the Debtor's Causes of Action against an Entity are expressly waived,

25 relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the

26 Reorganized Debtor expressly reserves all such Causes of Action, for later adjudication, and,

27 therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue

28

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:53:51    Page 45 of
90

preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

Further, subject to the releases set forth in ARTICLE VIII.D and ARTICLE VIII.E, the Reorganized Debtor reserves and shall retain the foregoing Debtor's Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against an Entity shall vest in the Reorganized Debtor. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

P.    Avoidance Actions

No later than sixty (60) days after the Effective Date, Reorganized Mi Pueblo shall provide the Creditors' Representative with a list of vendors that received payments during the ninety (90) days before the bankruptcy filing with whom Reorganized Mi Pueblo does not have a relationship and does not anticipate having a relationship. The Avoidance Actions against such Entities that are not released under the Debtor Release, the Third Party Release, the Wells Fargo Bank Payoff Agreement, or the Wells Fargo Bank Compromise Order shall be transferred to the Creditors' Representative to control prosecution of such Avoidance Actions with the proceeds thereof to be distributed to the holders of General Unsecured Claims in accordance with the Plan. Additionally, in accordance with the Trade Credit Program, if a vendor participating in the Trade Credit Program does not honor its obligations to provide to Reorganized Mi Pueblo trade credit committed to under the agreement consummated under the Trade Credit Program through the maturity of such agreement and does not cure such default in accordance with such agreement, Reorganized Mi Pueblo shall transfer any Avoidance Action against such vendor to the Creditors'

1    Representative to control prosecution of such Avoidance Actions with the proceeds thereof to be
2    distributed to the holders of General Unsecured Claims in accordance with the Plan.  Other than
3    the Avoidance Actions transferred or to be transferred to the Creditors' Representative as set forth
4    in this provision or as set forth in ARTICLE VIII.L, Reorganized Mi Pueblo releases all
5    Avoidance Actions against all Entities as of the Effective Date.

6    Q.    Restructuring Transactions

7         On or prior to the Effective Date, the Debtor or the Reorganized Debtor may enter into
8    such transactions, execute and deliver such agreements, instruments, and other documents, and
9    take any actions as may be necessary or appropriate to effect a corporate restructuring of their
10   respective businesses, as and to the extent provided therein, with the consent of Victory Park.
11   The Restructuring Transactions may include one or more inter-company mergers, consolidations,
12   amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers,
13   asset sales, liquidations, or other corporate transactions as may be determined by the Debtor or
14   the Reorganized Debtor, as applicable, and Victory Park, to be necessary or appropriate to
15   implement the transactions provided for in the Plan.  None of the Restructuring Transactions
16   contemplated herein shall constitute a change of control under any agreement, contract, or
17   document of the Debtor or Reorganized Debtor, as applicable.   The actions to effect the
18   Restructuring Transactions may include:    (1) the execution and delivery of appropriate
19   agreements or other documents of merger, amalgamation, consolidation, restructuring,
20   conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or
21   liquidation containing terms that are consistent with the terms of the Plan and that satisfy the
22   requirements of applicable law and any other terms to which the relevant Entities agree; (2) the
23   execution and delivery of appropriate instruments of transfer, assignment, assumption, or
24   delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the
25   terms of the Plan and having other terms to which the relevant Entities agree; (3) the filing of
26   appropriate certificates or articles of incorporation, reincorporation, merger, consolidation,
27   conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state
28   or provincial law; (4) pledging or granting of liens or security interests over, assuming or

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 19:35:51    Page 47 of
90

guarantying obligations of, or taking such similar actions as may be necessary to preserve the rights and collateral interests of the secured creditors of the Debtor at all times prior to the effectiveness and consummation of the Plan; (5) changes to the organizational structure of the Debtor or the Reorganized Debtor, as applicable, as determined by the Debtor or the Reorganized Debtor, as applicable, and Victory Park; and (6) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

R.     Corporate Existence

Except as otherwise specifically provided in the Plan, the Debtor shall continue to exist after the Effective Date with all the powers of a corporation pursuant to the laws of California, except to the extent its certificate of incorporation and bylaws (or other formation documents) are amended pursuant to the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and without any further notice to or action, order, or approval of the Bankruptcy Court or any other court of competent jurisdiction (other than any requisite filings required under applicable California or federal law).

S.     Tax Reporting Matters

All Entities (including the Reorganized Debtor and holders of Claims and Interests) shall report for all federal income tax purposes in a manner consistent with the Plan.

T.     Adequate Assurance Deposits

Notwithstanding anything to the contrary in the Plan or in an order previously entered by the Bankruptcy Court, unless the Debtor or Reorganized Debtor, with the consent of Victory Park, otherwise agree, all adequate assurance deposits provided by the Debtor to utility providers pursuant to the *Order: (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service; (II) Deeming Utilities Adequately Assured of Payment; and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance of Payment* [Docket No.43] shall be returned to the Reorganized Debtor no later than 30 business days after the Effective Date or applied to an Administrative Claim or Claims arising post-Consummation of an Entity holding such deposit.

U.    Trade Credit Program

The "Trade Credit Program" is being established and implemented in consultation with Victory Park, pursuant to which the Debtor or Reorganized Debtor, as applicable, will enter into agreements with Mi Pueblo's trade vendors for the continued supply of goods and services to the Debtor and Reorganized Debtor, as applicable.  The Trade Credit Program shall provide as follows.

1.    Participation in the Trade Credit Program:  To participate in the Trade Credit Program, vendors must agree to extend trade credit for three years (unless the vendor agrees to a longer term) and agree to the terms and conditions set forth herein; provided that any changes to the Trade Credit Program (a) before the Effective Date must be agreed to by the Debtor, the Creditors' Committee, and any vendor who has signed an agreement under the Trade Credit Program to which such change applies and (b) after the Effective Date must be as provided in an order entered by the Bankruptcy Court.

2.    Receipt of A Notes and B Notes:  Vendors with Allowed 503(b)(9) Claims who do not object to the Plan shall receive a combination of A Notes and B Notes as set forth in 0 in an aggregate amount equal to their Allowed 503(b)(9) Claim, which A Notes shall be repaid as described in ARTICLE I.A.3 and the form of A Note set forth in the Plan Supplement, and which B Notes shall be repaid as described in ARTICLE I.A.9 and the form of B Note set forth in the Plan Supplement.

3.    Repayment of A Notes and B Notes for Credit Extended Post-Effective Date:  To the extent a vendor participating in the Trade Credit Program extends additional trade credit to Reorganized Mi Pueblo, cash generated from such extension of credit will be used to satisfy first any outstanding balance under such vendor's A Note and second any outstanding balance under such vendor's B Note, and the A Notes and B Notes shall otherwise be repaid as described in ARTICLE I.A.3 and the form of A Note set forth in the Plan Supplement and which B Notes shall be repaid as described in ARTICLE I.A.9 and the form of B Note set forth in the Plan Supplement.

4.     <u>Reorganized Mi Pueblo Purchase Commitment for Holders of A Notes</u>: Reorganized Mi Pueblo's purchase commitment for each holder of an A Notes shall be governed by the terms of the agreement under the Trade Credit Program entered into with such 503(b)(9) Creditor, which shall obligate the Reorganized Debtor, at a minimum as follows:  For any vendor participating in the Trade Credit Program that is holding an A Note at the beginning of a month, Reorganized Mi Pueblo will agree (if the vendor wants) to purchase from such vendor goods and services on a monthly basis in an amount no less than the lesser of (a) fifty percent (50%) of the outstanding amount of such vendor's A Note at the beginning of such month and (b) the amount of goods and services currently purchased monthly from such vendor as of the Effective Date or the vendor and Mi Pueblo or Reorganized Mi Pueblo, as applicable, can agree to different terms; <u>provided</u> that Reorganized Mi Pueblo's purchase commitment is subject to such vendor's continuing obligation to provide Reorganized Mi Pueblo with goods and services of market quality and consistent with the key commercial terms provided on or prior to the Effective Date, including pricing, delivery, and rebates outlined in the Trade Credit Program Agreement executed by such vendor; <u>provided</u>, further, that Reorganized Mi Pueblo is not subject to any purchase commitment with a participant in the Trade Credit Program if (a) Reorganized Mi Pueblo no longer requires such goods or services from any vendor, (b) Reorganized Mi Pueblo determines that it can obtain such goods or services from another vendor on more beneficial terms and the vendor participating in the Trade Credit Program, after having been given a right of first offer from Reorganized Mi Pueblo with respect to such goods or services, declines to match or beat the new vendor's terms, or (c) such vendor defaults on its agreement to continue to extend the trade credit to which it committed under the Trade Credit Program.

5.     <u>Failure of Reorganized Mi Pueblo to Honor Its Purchase Commitment</u>:  If Reorganized Mi Pueblo does not honor a purchase commitment it has under the Trade Credit Program, the applicable vendor's remedy shall be that such vendor's A Note shall automatically accelerate and become due thirty (30) days after the vendor notifies

-45-

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 19:33:51   Page 50 of 90

Reorganized Mi Pueblo of the failure of Reorganized Mi Pueblo to honor such commitment if Reorganized Mi Pueblo does not cure such purchase commitment default within such thirty (30) day period

6. <u>Waiver of Avoidance Actions Against Vendors in the Trade Credit Program</u>: Each vendor entering into an agreement under the Trade Credit Program shall agree to toll all statutes of limitation with respect to Avoidance Actions of Mi Pueblo against such vendor for the period extending for three (3) years after the Effective Date and (a) if the vendor timely votes all of its Claims to accept the Plan and does not file or encourage (directly or indirectly) another Entity to file an objection to the Plan and provides the trade credit committed to under the Trade Credit Program through the maturity date of its agreement consummated under the Trade Credit Program, such Avoidance Actions shall be released, and (b) if the vendor does not honor its obligations to provide to Reorganized Mi Pueblo trade credit committed to under the agreement consummated under the Trade Credit Program through the maturity of such agreement, such Avoidance Actions shall be transferred to the Creditors' Representative, who will have the right to control prosecution of such Avoidance Action and distribute the proceeds thereof to the holders of Allowed General Unsecured Claims in accordance with the Plan.

7. <u>Remedy If Vendors in the Trade Credit Program Stop Providing Trade Credit</u>: Each agreement consummated under the Trade Credit Program will provide that if the vendor that is party to such agreement does not honor its obligations to provide to Reorganized Mi Pueblo trade credit committed to under such agreement through the maturity of such agreement, any then-outstanding A Note of such vendor shall become a B Note and any repayment such vendor received from providing additional trade credit to Reorganized Mi Pueblo post-Effective Date must be repaid to Reorganized Mi Pueblo within thirty (30) days after Reorganized Mi Pueblo notifies the vendor of the failure of the vendor to provide such trade credit with such vendor's B Note increasing by the amount of such repayment if such vendor does not cure such failure to extend credit within such thirty (30) day period.

V.     Survival of Certain Prior Orders of the Bankruptcy Court

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the *Order Authorizing Debtor to (I) Continue Pre-Petition Cash Management Practices and (II) Maintain Its Credit Card Merchant Payment System* [Docket No. 33] and the Wells Fargo Bank Compromise Order and the provisions thereof shall survive Confirmation and the Effective Date; provided, however, that Reorganized Mi Pueblo may modify its cash management system as described in the Wells Fargo Bank Compromise Order and the Wells Fargo Payoff Agreement.

# ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously assumed shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease:  (1) is, with the consent of Victory Park, listed in or deemed listed in the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement; (2) has been previously assumed by the Debtor by Final Order or has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date (including retroactively), which order becomes a Final Order after the Effective Date; (3) is the subject of a motion to assume or reject pending as of the Effective Date; or (4) is otherwise assumed pursuant to the terms herein.

The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under section 502(g) of the Bankruptcy Code, subject to compliance with the requirements herein.  All Executory Contracts and Unexpired Leases rejected by the Debtor on or prior to the Effective Date will not be continuing obligations of the Debtor or Reorganized Debtor.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Further, the Plan Supplement will contain a schedule of "Rejected Executory Contracts and Unexpired Leases," as may be amended from time to time with the consent of Victory Park; provided, however, that any Executory Contract and Unexpired Lease not previously assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court, and not listed in or deemed listed in the schedule of "Assumed Executory Contracts and Unexpired Leases" will be rejected on the Effective Date, notwithstanding its exclusion from the schedule of "Rejected Executory Contracts and Unexpired Leases".

B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date and the effective date of rejection.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court no later than 30 days after the later of the Effective Date and the effective date of rejection.

C.     Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein, in addition to those Executory Contracts and Unexpired Leases previously assumed by the Debtor pursuant to a Final Order (and not otherwise subsequently rejected prior to the Effective Date), the Debtor, with the consent of Victory Park, shall assume all of the Executory Contracts and Unexpired Leases listed in or deemed listed in the schedule of "Assumed Executory Contracts and Unexpired Leases," as may be amended from time to time, in the Plan Supplement.  With respect to each such Executory Contract and Unexpired Lease listed in or deemed listed in the schedule of "Assumed Executory Contracts and Unexpired Leases," the Debtor shall have designated a proposed Cure.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

1.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.  Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed by the Debtor or the Reorganized Debtor shall include all modifications, amendments,

Case: 13-53893     Doc# 739     Filed: 04/25/14     Entered: 04/25/14 15:35:51     Page 53 of
90

supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder; provided, however, that any anti-assignment provision in any assumed Executory Contract and/or Unexpired Lease shall be deemed invalid for the purposes of assumption and/or assignment pursuant to section 365 of the Bankruptcy Code in this Chapter 11 Case, including assignment of any assumed Executory Contract and/or Unexpired Lease to any affiliate of the Debtor or Reorganized Debtor on or prior to the Effective Date. The Debtor and Reorganized Debtor will take all necessary or appropriate steps to comply with state liquor, pharmacy, and food sales laws and regulations. Confirmation of the Plan and Consummation of the Restructuring Transactions shall not constitute a change of control under any Executory Contract or Unexpired Lease assumed by the Debtor on or prior to the Effective Date. Any assignment by the Reorganized Debtor of an Executory Contract or Unexpired Lease after the Effective Date shall be governed by the terms of the Executory Contract or Unexpired Lease and applicable non-bankruptcy law.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during this Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

2. <u>Proofs of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed</u>. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in this Chapter 11 Case, including hereunder, except Proofs of Claim asserting Cures pursuant to the order approving such assumption, including the Confirmation Order, shall be deemed disallowed as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

D.      Objections to Assumption of Executory Contracts and Unexpired Leases Including Cure of Defaults

With respect to each of the Executory Contracts or Unexpired Leases listed in or deemed listed in the schedule of "Assumed Executory Contracts and Unexpired Leases," the Debtor shall file and serve a notice of proposed Cure on or before the Effective Date.  Such Cure shall be satisfied by the Debtor or the Reorganized Debtor by payment of the Cure in Cash on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.  Any provisions or terms of the Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure.  Nothing herein or in the Confirmation Order shall impact any unresolved Cure disputes or pending Cure objections filed by parties to Executory Contracts and Unexpired Leases that have been previously assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

Except with respect to Executory Contracts and Unexpired Leases in which the Debtor, with the consent of Victory Park, and the applicable counterparties have stipulated in writing to payment of Cure, all requests for payment of Cure that differ from the amounts proposed by the Debtor in the notice of proposed Cure filed and served in accordance with ARTICLE V.D (*i.e.,* Cure objections) must be filed with the Court on or before ten (10) calendar days have elapsed from the date of the filing and service of the notice of proposed Cure and set for hearing in accordance with the Local Rules of the Bankruptcy Court.  In addition, any non-Cure objection to the assumption of an Executory Contract or Unexpired Lease, to be deemed timely, must be filed with the Bankruptcy Court.

Any request for payment of Cure that is not timely filed shall be disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtor or the Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court, and any Cure shall

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 15:55:51    Page 55 of 90

be deemed fully satisfied, released, and discharged upon payment by the Debtor of the amounts listed in the Debtor's proposed Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary; provided, however, that nothing shall prevent the Reorganized Debtor from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtor also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.

If the Debtor or Reorganized Debtor, as applicable, object to any Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues. If there is a dispute regarding such Cure, the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtor or Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease and associated Cure will be deemed to have consented to such assumption and Cure.

Assumption of any Executory Contract or Unexpired Lease and satisfaction of any applicable Cure pursuant to the Plan or otherwise shall result in the full release and satisfaction of any cures, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

E.  Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the

1   Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing
2   obligation of a counterparty to provide, warranties or continued maintenance obligations on goods
3   previously purchased by the contracting Debtor or Reorganized Debtor, as applicable, from
4   counterparties to rejected or repudiated Executory Contracts.

5   F.      Contracts and Leases Entered Into After the Commencement Date

6           Contracts and leases entered into after the Commencement Date by the Debtor, and any
7   Executory Contracts and Unexpired Leases assumed by the Debtor, may be performed by the
8   Reorganized Debtor in the ordinary course of business.

9   G.      Reservation of Rights

10          Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor
11  anything contained in the Plan, shall constitute an admission by the Debtor that any such contract
12  or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has
13  any liability thereunder.  If there is any objection filed to the rejection of an Executory Contract
14  or Unexpired Lease, the Debtor or Reorganized Debtor, as applicable, shall have 30 days after
15  entry of a Final Order resolving such objection to alter their treatment of such contract or lease.

16                                         **ARTICLE VI.**

17          **PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS**

18  A.      Allowance of Claims and Interests

19          After the Effective Date, the Reorganized Debtor shall have and retain any and all rights
20  and defenses the Debtor had with respect to any Claim or Interest immediately prior to the
21  Effective Date, including the Causes of Action retained pursuant to ARTICLE IV.O.  Except as
22  expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the
23  Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim
24  unless and until (i) the Reorganized Debtor agrees that such Claim is Allowed or (ii) the
25  Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11
26  Case allowing such Claim or Interest.  All settled claims approved prior to the Effective Date
27  pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or
28  otherwise, shall be binding on all Entities.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 13:55:51   Page 57 of
90

B.     Claims and Interests Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Creditors' Representative (with respect to General Unsecured Claims) and the Reorganized Debtor (with respect to all Claims other than General Unsecured Claims) shall have the sole authority (1) to file, withdraw, or litigate to judgment, objections to Claims or Interests, (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.     Estimation of Claims and Interests

Before or after the Effective Date, the Debtor or Reorganized Debtor, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any Entity previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.     Expungement or Adjustment to Paid, Satisfied, or Superseded Claims and Interests

Any Claim or Interest that has been paid, satisfied, or superseded, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    No Interest

Unless otherwise specifically provided for in the Plan (including with respect to the Allowed amount of any Claims hereunder), required under applicable bankruptcy law, or agreed to in the Confirmation Order, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Commencement Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

F.    **DISALLOWANCE OF CLAIMS OR INTERESTS**

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS UNDER THIS PLAN, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT OR AS AGREED TO BY THE REORGANIZED DEBTOR.**

All Secured Tax Claims, Other Secured Claims, Other Priority Claims, and Administrative Claims arising outside the ordinary course of the Debtor's business (which, for the avoidance of doubt, shall not include Claims entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code), of any Entity from which property is sought by the Debtor under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (2) such Entity or

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:55:51    Page 59 of
90

transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

G.     Amendments to Claims

       On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the authorization of the Bankruptcy Court or the Reorganized Debtor, and, to the extent such authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court, provided, that, after the Effective Date, holders of 503(b)(9) Claims and Claims in Class 3C and Class 4 may provide updated notice and address information for distribution purposes to the Distribution Agent.

H.     No Distributions Pending Allowance

       No payment or distribution provided under the Plan shall be made on account of any Disputed Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim.

I.     Distributions After Allowance

       Subject to the treatment of such Claim under the Plan, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Distribution Agent shall provide to the holder of such Claim the distribution, if any, to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.     Distributions on Account of Claims Allowed as of the Effective Date

       1.     Delivery of Distributions in General. Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the relevant Entities, the Distribution Agent shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the Reorganized Debtor's right to object to Claims; provided, however, that (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:35:51   Page 60 of 90

course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (b) Allowed Priority Tax Claims and Allowed Secured Tax Claims shall be paid in full in Cash on the Distribution Date or in installment payments over a period not more than five years after the Commencement Date pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim or Allowed Secured Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and the holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

2.      Delivery of Distributions on account of DIP Facility Claims.  The DIP Facility Administrative Agent:  (a) shall be deemed to be the holder of all DIP Facility Claims, as applicable, for purposes of distributions to be made hereunder, and the Distribution Agent shall make all distributions on account of Allowed DIP Facility Claims to or on behalf of the DIP Facility Administrative Agent; (b) shall hold or direct such distributions for the benefit of the holders of Allowed DIP Facility Claims, as applicable; and (c) shall arrange to deliver such distributions to or on behalf of such holders of Allowed DIP Facility Claims; provided, however, the DIP Facility Administrative Agent shall retain all rights as administrative agent under the DIP Facility in connection with delivery of distributions to DIP Facility Lenders; and provided further, however, that the Debtor's obligations to make distributions in accordance with ARTICLE III.B.1 shall be deemed satisfied upon delivery of distributions to the DIP Facility Administrative Agent.

B.      Distributions on Account of Claims Allowed After the Effective Date

1.      Payments and Distributions on Disputed Claims.  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant Entities (including the Debtor or the Reorganized Debtor, as applicable, and Victory Park), distributions under the Plan on account of Disputed Claims (other than Disputed Claims in Class 4) that become Allowed after the Effective Date shall be made on the Periodic Distribution Date; provided, however, that (a) Disputed Claims that are Administrative Claims with respect to liabilities incurred by the Debtor in the

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:55:51   Page 61 of
90

ordinary course of business during the Chapter 11 Case or assumed by the Debtor on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Claims that are Priority Tax Claims or Secured Tax Claims that become Allowed Priority Tax Claims or Allowed Secured Tax Claims after the Effective Date shall be paid in full in Cash on the Periodic Distribution Date that is at least 30 days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

2.     Special Rules for Distributions to Holders of Disputed Claims.  Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant Entities (including the Debtor or the Reorganized Debtor, as applicable, and Victory Park, as applicable), (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged.  All distributions made pursuant to the Plan on account of a Disputed Claim that is deemed an Allowed Claim by the Bankruptcy Court shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to holders of Allowed Claims included in the applicable Class; provided, however, that no interest shall be paid on account of such Allowed Claims unless required under applicable bankruptcy law or specifically provided for in the Plan (including with respect to the Allowed amount of any Claims hereunder).

C.     Delivery of Distributions

1.     Record Date for Distributions.  On the Distribution Record Date, the Claims Register shall be closed and when making distributions on or after the Effective Date, the

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:35:51   Page 62 of 90

Distribution Agent shall be authorized and entitled to recognize only those record holders listed in the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim or Interest is transferred less than 20 days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Distribution Process. Except as otherwise provided herein, the Distribution Agent shall make, on and after the Effective Date, all distributions to holders of Allowed Claims required under the Plan. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims shall be made, on or after the Effective Date, to holders of record as of the Distribution Record Date by the Distribution Agent: (a) to the signatory set forth on any of the Proofs of Claim filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is filed or if the Debtor has been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim; (c) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004 if no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address; (d) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Case on the holder's behalf. The Debtor, the Reorganized Debtor, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

3.      Accrual of Dividends and Other Rights. For purposes of determining the accrual of dividends or other rights after the Effective Date, the NewCo Equity shall be deemed issued as of the Effective Date regardless of the date on which it is actually issued, dated, authenticated, or distributed.

-58-

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 19:35:51    Page 63 of 90

4.     <u>Compliance Matters</u>.  In connection with the Plan, to the extent applicable, the Reorganized Debtor and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

5.     <u>Fractional, De Minimis, Undeliverable, and Unclaimed Distributions</u>.

a.     <u>Fractional Distributions</u>.  Notwithstanding any other provision of the Plan to the contrary, the Distribution Agent shall not be required to make distributions or payments of fractions of dollars.  Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

b.     <u>De Minimis Distributions</u>.  The Distribution Agent shall not have any obligation to make a distribution on account of an Allowed Claim if the amount to be distributed to the specific holder of an Allowed Claim on the particular Periodic Distribution Date does not equal or exceed $25.00.

c.     <u>Undeliverable Distributions</u>.  If any distribution to a holder of an Allowed Claim is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such holder unless and until such Distribution Agent is notified in writing of such holder's then-current address, at which time all currently due missed distributions shall be

made to such holder on the next Periodic Distribution Date; provided, however, the Distribution Agent shall make reasonable efforts to locate the holder of such Claim. Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtor or is cancelled pursuant to ARTICLE VII.C.5.d, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

        d.    <u>Reversion</u>.  Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtor.  Upon such revesting, the Claim of any holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

      6.    <u>Surrender of Cancelled Instruments or Securities</u>.  Except as otherwise specifically provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent.   Such Certificate shall be cancelled solely with respect to the Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.  Notwithstanding that a holder of a Certificate will be deemed to have surrendered such Certificate, regardless of any actual surrender, the deemed surrender of a Certificate shall have the same effect as if such holder had actually surrendered such Certificate (including but not limited to the discharge of such holder's Claim pursuant to the Plan), and such holder shall be deemed to have relinquished all rights, Claims and interests with respect to such Certificate.  Notwithstanding the foregoing paragraph, this ARTICLE VII.C.6 shall not apply to any Claims Reinstated pursuant to the terms of the Plan.

      7.    <u>Lost, Stolen, Mutilated, or Destroyed Debt Securities</u>.  Any holder of Allowed Claims evidenced by a Certificate that has been lost, stolen, mutilated, or destroyed shall, in lieu of surrendering such Certificate, deliver to the Distribution Agent, an affidavit of loss acceptable

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:55:51   Page 65 of 90

to the Distribution Agent setting forth the unavailability of the Certificate, and such additional indemnity as may be required reasonably by the Distribution Agent to hold the Distribution Agent harmless from any damages, liabilities, or costs incurred in treating such holder as a holder of an Allowed Claim. Upon compliance with this procedure by a holder of an Allowed Claim evidenced by such a lost, stolen, mutilated, or destroyed Certificate, such holder shall, for all purposes pursuant to the Plan, be deemed to have surrendered such Certificate.

D.     Claims Paid or Payable by Third Parties

1.     Claims Paid by Third Parties. The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from an Entity that is not a Debtor or Reorganized Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from an Entity that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, no later than 15 days after receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.     Claims Payable by Insurance Carriers. No distributions under the Plan needs to be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim, then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.     Applicability of Insurance Policies. Except as otherwise specifically provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a

Case: 13-53893     Doc# 739     Filed: 04/25/14     Entered: 04/25/14 15:35:51     Page 66 of
90

waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

E.    Setoffs

Except as otherwise expressly provided for in the Plan or a Final Order of the Bankruptcy Code, the Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor or Reorganized Debtor of any such Claims, rights, and Causes of Action that the Debtor or Reorganized Debtor may possess against such holder.  In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder has timely filed a Proof of Claim with the Bankruptcy Court preserving such setoff.

F.    Allocation Between Principal and Accrued Interest

Except as otherwise specifically provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any permitted pursuant to the Plan, accrued through the Effective Date.

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 15:55:51    Page 67 of
90

# ARTICLE VIII.

## EFFECT OF CONFIRMATION OF THE PLAN

A.   **DISCHARGE OF CLAIMS AND TERMINATION OF INTERESTS**

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN AND EFFECTIVE AS OF THE EFFECTIVE DATE:  (1) THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON SUCH CLAIMS FROM AND AFTER THE COMMENCEMENT DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY, OR ESTATE; (2) THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS, NOTWITHSTANDING WHETHER ANY SUCH HOLDERS FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, VOTED TO ACCEPT THE PLAN OR VOTED TO REJECT THE PLAN; (3) ALL CLAIMS AND INTERESTS SHALL BE SATISFIED, DISCHARGED, AND RELEASED IN FULL, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(g) OF THE BANKRUPTCY CODE; AND (4) ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, EACH OF THEIR SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.**

B.   Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise, and any such rights shall be settled, compromised, and released pursuant to the Plan. Specifically, pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

C.     <u>Compromise and Settlement of Claims and Controversies</u>

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan or any distribution to be made on account of an Allowed Claim, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtor, its Estate, and holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against them and Causes of Action against other Entities.

D.     **<u>RELEASES BY THE DEBTOR</u>**

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, AND PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING: (1) THE SETTLEMENT, RELEASE, AND COMPROMISE OF DEBT AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID PURSUANT HERETO; AND (2) THE SERVICES OF THE RELEASED PARTIES IN FACILITATING THE EXPEDIENT IMPLEMENTATION OF THE RESTRUCTURING TRANSACTIONS CONTEMPLATED HEREBY, EACH OF THE DEBTOR, THE REORGANIZED DEBTOR, AND THE DEBTOR'S ESTATE (INCLUDING ALL ENTITIES CLAIMING DIRECTLY, INDIRECTLY, DERIVATIVELY, OR OTHERWISE THROUGH THE DEBTOR OR THE REORGANIZED DEBTOR OR ITS ESTATE) AND ITS AFFILIATES DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH RELEASED PARTY AND THEIR RESPECTIVE PROPERTY (THE "<u>DEBTOR RELEASE</u>") FROM ANY AND ALL CLAIMS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, RIGHTS OF SETOFF, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER (INCLUDING ANY DIRECT, INDIRECT, DERIVATIVE, OR OTHER CLAIMS ASSERTED ON BEHALF OF THE DEBTOR) WHETHER KNOWN OR UNKNOWN, MATURED OR**

-64-

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 19:35:31    Page 69 of 90

UNMATURED, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, THE RESTRUCTURING TRANSACTIONS, THE CHAPTER 11 CASE, THE ISSUANCE OF ANY SECURITY OF THE DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR, ANY RELEASED PARTIES, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING THOSE THAT THE DEBTOR WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF THE DEBTOR OR ITS ESTATE AND THE THIRD PARTY RELEASE INCLUDES A DISCHARGE AND RELEASE TO THE GREATEST EXTENT OF APPLICABLE LAW FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER, INCLUDING ANY DIRECT, INDIRECT, DERIVATIVE, OR OTHER CLAIMS ASSERTED ON BEHALF OF THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF THE EXIT FINANCING BASED UPON THE EXIT FACILITY LENDERS OR THE EXIT FACILITY ADMINISTRATIVE AGENT OR THEIR AFFILIATES ALSO BEING HOLDERS OF INTERESTS IN REORGANIZED MI PUEBLO OR BEING MEMBERS OR PARTICIPATING IN THE GOVERNANCE OF REORGANIZED MI PUEBLO, ARISING, IN LAW, EQUITY, OR OTHERWISE, INCLUDING ON ACCOUNT OF LENDER LIABILITY, RECHARACTERIZATION, OR SUBORDINATION; PROVIDED, HOWEVER, THAT THE FOREGOING DEBTOR RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR LIABILITIES OF THE DEBTOR: (1) ARISING UNDER ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTOR, INCLUDING UNDER THE EXIT FACILITY; (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS; OR (3) CONSTITUTING INTERCOMPANY CLAIMS THAT ARE REINSTATED PURSUANT TO THE PLAN.  NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE PLAN DOES NOT RELEASE ANY CAUSES OF ACTION THAT THE DEBTOR OR THE REORGANIZED DEBTOR HAVE OR MAY HAVE NOW OR IN THE FUTURE AGAINST ANY ENTITY (INCLUDING, BUT NOT LIMITED TO, A RELEASED PARTY) ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, EACH AS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:35:31    Page 70 of 90

**THE DEBTOR, REORGANIZED DEBTOR, AND THE DEBTOR'S ESTATE (INCLUDING ALL ENTITIES CLAIMING DIRECTLY, INDIRECTLY, DERIVATIVELY, OR OTHERWISE THROUGH THE DEBTOR OR THE REORGANIZED DEBTOR OR ITS ESTATE) AND ITS AFFILIATES FURTHER ACKNOWLEDGE AND AGREE THAT THE FOREGOING RELEASE OF CLAIMS INCLUDES THE RELEASE OF ANY UNKNOWN CLAIMS AGAINST THE RELEASED PARTIES. THE DEBTOR RELEASE IS A FULL AND FINAL RELEASE OF ANY AND ALL SUCH, CLAIMS AND THE RELEASE PARTIES EXPRESSLY WAIVE, AS TO SUCH CLAIMS, THE BENEFITS OF SECTION 1542 OF CALIFORNIA CIVIL CODE (OR ANY SIMILAR LAW IN ANY OTHER STATE), WHICH PROVIDES:**

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASING PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE DEBTOR OR THE REORGANIZED DEBTOR ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

E.  **RELEASES BY HOLDERS OF CLAIMS**

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES DISCHARGE AND RELEASE (AND EACH ENTITY SO DISCHARGED AND RELEASED SHALL BE DEEMED DISCHARGED AND RELEASED BY THE RELEASING PARTIES) (THE "THIRD PARTY RELEASE") THE REORGANIZED DEBTOR, ITS ESTATE, ITS PROPERTY, AND THE RELEASED PARTIES AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER, INCLUDING ANY DIRECT, INDIRECT, DERIVATIVE, OR OTHER CLAIMS ASSERTED ON BEHALF OF THE RELEASING PARTY, WHETHER KNOWN OR UNKNOWN, MATURED OR UNMATURED, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATION OF FEDERAL OR STATE SECURITIES LAW OR OTHERWISE, ARISING FROM OR**

**RELATED IN ANY WAY TO THE DEBTOR, THE RESTRUCTURING TRANSACTIONS, THE CHAPTER 11 CASE, THE ISSUANCE OF ANY SECURITY OF THE DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR, ANY RELEASED PARTIES, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING THOSE THAT THE DEBTOR WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ITSELF, THE DEBTOR, OR ITS ESTATE AND THE THIRD PARTY RELEASE INCLUDES A DISCHARGE AND RELEASE TO THE GREATEST EXTENT OF APPLICABLE LAW FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER, INCLUDING ANY DIRECT, INDIRECT, DERIVATIVE, OR OTHER CLAIMS ASSERTED ON BEHALF OF THE HOLDERS OF CLAIMS AGAINST THE DEBTOR ON ACCOUNT OF THE EXIT FINANCING BASED UPON THE EXIT FACILITY LENDERS OR THE EXIT FACILITY ADMINISTRATIVE AGENT OR THEIR AFFILIATES ALSO BEING HOLDERS OF INTERESTS IN REORGANIZED MI PUEBLO OR BEING MEMBERS OR PARTICIPATING IN THE GOVERNANCE OF REORGANIZED MI PUEBLO, ARISING, IN LAW, EQUITY, OR OTHERWISE, INCLUDING ON ACCOUNT OF LENDER LIABILITY, RECHARACTERIZATION, OR SUBORDINATION; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE FOREGOING THIRD PARTY RELEASE SHALL NOT OPERATE TO RELEASE CLAIMS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF ANY RELEASING PARTY: (1) AGAINST A RELEASING PARTY OR AN ENTITY RELEASING UNDER THIS THIRD PARTY RELEASE ARISING FROM ANY CONTRACTUAL OBLIGATIONS OWED TO THE RELEASING PARTY OR LIABILITIES OF ANY RELEASING PARTY; (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS; OR (3) AGAINST A PROFESSIONAL WITH RESPECT TO SUCH PROFESSIONAL'S FINAL FEE APPLICATION OR ACCRUED PROFESSIONAL COMPENSATION CLAIMS IN THESE CHAPTER 11 CASE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS PARAGRAPH SHALL IN ANY WAY AFFECT THE OPERATION OF ARTICLE VIII.A OF THE PLAN, PURSUANT TO SECTION 1141(d) OF THE BANKRUPTCY CODE.**

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:55:51   Page 72 of 90

THE RELEASING PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT THE FOREGOING RELEASE OF CLAIMS INCLUDES THE RELEASE OF ANY UNKNOWN CLAIMS AGAINST THE RELEASED PARTIES. THE THIRD PARTY RELEASE IS A FULL AND FINAL RELEASE OF ANY AND ALL SUCH CLAIMS, AND THE RELEASE PARTIES EXPRESSLY WAIVE, AS TO SUCH CLAIMS, THE BENEFITS OF SECTION 1542 OF CALIFORNIA CIVIL CODE (OR ANY SIMILAR LAW IN ANY OTHER STATE), WHICH PROVIDES:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE PLAN DOES NOT RELEASE ANY CAUSES OF ACTION THAT THE DEBTOR OR THE REORGANIZED DEBTOR HAVE OR MAY HAVE NOW OR IN THE FUTURE AGAINST ANY ENTITY (INCLUDING A RELEASED PARTY) ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, EACH AS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASING PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTOR AND HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

F.      **WAIVER OF STATUTORY LIMITATIONS ON RELEASES**

EACH OF THE RELEASING PARTIES IN EACH OF THE RELEASES CONTAINED IN ARTICLE VIII.D AND ARTICLE VIII.E EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS THAT THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE ENTITY RELEASED, THEY HAVE CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE US BANKRUPTCY CODE

THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW THAT PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN ARTICLE VIII.D AND ARTICLE VIII.E ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

G.  **EXCULPATION**

THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING, OR EFFECTING THE EFFECTIVE DATE OF THE PLAN, THE DISCLOSURE STATEMENT, THE RESTRUCTURING TRANSACTIONS, THE ISSUANCE AND/OR DISTRIBUTION OF NEWCO EQUITY, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE PLAN OR THE RESTRUCTURING OF THE DEBTOR (COLLECTIVELY, "EXCULPATED CLAIMS"); PROVIDED THAT THE FOREGOING PROVISIONS OF THIS EXCULPATION SHALL HAVE NO EFFECT ON (A) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN OR (B) THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; PROVIDED, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER, OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN; PROVIDED FURTHER, THAT THE FOREGOING "EXCULPATION" SHALL NOT APPLY TO ANY ACTS OR OMISSIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, EXCEPT FOR ACTS OR OMISSIONS OF RELEASING PARTIES.

H.  **INJUNCTION**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.D; (3)

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THIS US BANKRUPTCY CODE

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:55:51    Page 74 of 90

HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.E; (4) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.G, INCLUDING EXCULPATED CLAIMS (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE VIII.E); OR (5) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A TIMELY PROOF OF CLAIM WITH THE BANKRUPTCY COURT PRESERVING SUCH RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, VICTORY PARK, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; **PROVIDED**

**THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN.**

I. <u>Protection Against Discriminatory Treatment</u>

Consistent with section 525 of the Bankruptcy Code and paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

J. <u>Recoupment</u>

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Effective Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

K. <u>Release of Liens</u>

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 19:33:31   Page 76 of 90

L.    Special Consideration Regarding Certain Releases

Notwithstanding anything to the contrary in the Plan, the Chavez Releasees will enter into the Chavez Tolling Agreements. The Debtor Release and the Third Party Release shall become effective and discharge and release the Chavez Releasees immediately and without further order of the Bankruptcy Court or otherwise upon the earlier of: (a) full satisfaction of the A Notes and the B Notes; and (b) full satisfaction of the A Notes and payment of the Special B Note Payment after full satisfaction of the A Notes. No Entity may pursue any claims, interests, obligations, debts, rights, suits, damages, remedies, Causes of Action, or liabilities whatsoever that are subject to the Debtor Release or the Third Party Release against the Chavez Releasees unless the A Notes have matured and not been repaid; provided that if the Debtor Release and the Third Party Release become effective, they will be deemed to have become effective on the Effective Date.

M.    Provisions Related to Fleming Business Park, LLC

Notwithstanding anything to the contrary in the Plan or the Confirmation Order: (a) with respect to the lease and sublease between Fleming Business Park, LLC as lessor, Cha Cha as lessee, and Mi Pueblo as sublessee for the property in Milpitas, California (or such other relationship as may result from the proposed assumption and assignment of the lease from Cha Cha to Mi Pueblo or NewCo), any lien of any Entity shall be limited to the proceeds, if any, of the prospective assignment or other disposition of such lease or sublease, and no Entity shall have any lien on such lease or the subject real property; (b) Fleming Business Park, LLC is not a Releasing Party and is not granting the Third Party Release; (c) the recoupment and setoff rights of Fleming Business Park, LLC are not impaired or affected.

# ARTICLE IX.

## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to ARTICLE IX.B:

1.    the Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Debtor and Victory Park, as containing adequate information with respect to the

-72-

Plan within the meaning of section 1125 of the Bankruptcy Code and such order shall be in full force and effect and shall have become a Final Order;

2. the Confirmation Order: (a) shall be entered by the Bankruptcy Court on or before May 30, 2014 (as such date may be extended with the consent of the Debtor and Victory Park); and (b) shall be in full force and effect and, unless waived by the Debtor and Victory Park, shall have become a Final Order;

3. the Plan and Plan Supplement, including any amendments, modifications, or supplements thereto, shall be in form and substance acceptable to the Debtor and Victory Park and shall not have been modified without the consent of Victory Park;

4. the Transaction Expenses, to the extent not previously paid, shall be paid concurrently with the Effective Date in Cash;

5. the transfer of the Transferred Cha Cha Assets from Cha Cha to Mi Pueblo shall have been completed or shall be completed concurrently with the Effective Date;

6. the Restructuring Transactions shall have been consummated;

7. the Debtor shall have obtained the Exit Facility on terms as provided in the Plan, and on terms and conditions acceptable to the Debtor and Victory Park, and all conditions precedent to the consummation of the Exit Facility shall have been waived or satisfied in accordance with the terms thereof and the closing of the Exit Facility shall occur concurrently with the Effective Date; and

8. with respect to all actions, documents, Certificates, and agreements necessary to implement the Plan (a) all conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements, (b) such documents, Certificates, and agreements shall have been tendered for delivery, (c) to the extent required, such documents, Certificates, and agreements shall have been filed with and approved by any applicable Governmental Units in accordance with applicable laws, and (d) such actions, documents, Certificates and agreements shall have been effected or executed.

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:33:31    Page 78 of 90

B.     <u>Waiver of Conditions Precedent</u>

The Debtor and Victory Park may jointly waive any of the conditions to the Effective Date set forth in ARTICLE IX.A at any time without any notice to other Entities in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan.

C.     <u>Effect of Non-Occurrence of Conditions to Consummation</u>

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtor or any other Entity, or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Entity.

# ARTICLE X.

# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, except as set forth below, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any 503(b)(9) Claim or Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.     enforce the terms and provisions of the A Notes and the B Notes and the remedies of Reorganized Mi Pueblo or the holders of the A Notes and the B Notes upon default; <u>provided</u>, <u>however</u>, that the Creditors' Representative, the holders of the A Notes and the B Notes, and the Reorganized Debtor may seek relief in another court of competent jurisdiction to enforce the

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:55:51    Page 79 of 90

terms and provisions of the A Notes and the B Notes and the remedies of Reorganized Mi Pueblo or the holders of the A Notes and the B Notes upon default;

    3.    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan; provided, however, that from and after the Effective Date, the payment of the fees and expenses of any professionals of the Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to Bankruptcy Court review or approval;

    4.    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable, and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor's amendment, modification, or supplement, after the Effective Date, pursuant to ARTICLE V, of the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

    5.    resolve any matters related to the transfer of the Transferred Cha Cha Assets;

    6.    ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

    7.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

    8.    adjudicate, decide, or resolve any and all matters related to Causes of Action of the Debtor or brought by or against the Reorganized Debtor;

    9.    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE US BANKRUPTCY CODE

10.     enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

11.     enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

12.     grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases to the extent such request is in accordance with section 365(d)(4) of the Bankruptcy Code;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

14.     enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of all contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case;

15.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

16.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, exculpation, injunctions, and other provisions contained in ARTICLE VIII above and enter such orders as may be necessary or appropriate to implement such releases, exculpation, injunctions, and other provisions, including the Debtor Release and the Third Party Release;

17.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to ARTICLE VII.D;

18.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

19. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

20. enter an order or Final Decree concluding or closing the Chapter 11 Case;

21. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

22. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

23. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

24. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

25. hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

26. except as otherwise limited herein, recover all assets of the Debtor and property of the Estate, wherever located;

27. enforce all orders previously entered by the Bankruptcy Court; and

28. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A. No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062.

B. Modification of Plan

Subject to the limitations contained in the Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy

-77-

section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, may, with the consent of Victory Park and upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.     Revocation or Withdrawal of Plan

The Debtor reserves the right, to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if Confirmation, Consummation or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects, (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects, and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

D.     Confirmation of the Plan

The Debtor requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to amend the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

E.     Additional Documents

On or before the Effective Date, the Debtor, with the consent of Victory Park, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, with the consent of Victory Park, and all holders of Claims receiving distributions pursuant to the Plan and all other Entities in interest shall, from

Case: 13-53893   Doc# 739   Filed: 04/25/14   Entered: 04/25/14 15:55:51   Page 83 of 90

time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

F.    <u>Payment of Statutory Fees and Filing of Post-Confirmation Quarterly Reports</u>

        All fees payable pursuant to 28 U.S.C. § 1930(a), as defined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  As soon as practicable after the end of the first full calendar quarter beginning after the entry of the Confirmation Order, the Reorganized Debtor shall file a post-Confirmation status report that:  (1) explains the progress made toward substantial consummation of the Plan; (2) includes a statement of receipts and disbursements, with the ending cash balance, for the such period beginning during the week that the Confirmation Order was entered through the end of such first full calendar quarter; and (3) includes information sufficiently comprehensive to enable the Bankruptcy Court to determine (a) whether the Confirmation Order has become a Final Order, (b) whether deposits, if any, required under the Plan have been distributed, (c) whether any property proposed by the Plan to be transferred has been transferred, (d) whether the Reorganized Debtor has assumed the business or management of the property dealt with by the Plan, (e) whether payments under the Plan have commenced, (f) whether accrued fees due to the United States Trustee under 28 U.S.C. §1930(a)(6) have been paid, and (g) whether all motions, contested matters, and adversary proceeding have been finally resolved. Further reports shall be filed every approximately ninety (90) days thereafter until the entry of a final decree to the extent required by applicable law, unless otherwise ordered by the Court.  A copy of each such report shall be served, no later than the day upon which it is filed with the Bankruptcy Court, upon the United States Trustee and such other Entities who request in writing that such reports be served to such Entities by special notice filed with the Bankruptcy Court before the filing of such report.  Failure to timely file any required reports may constitute a ground for the bringing of a motion to convert or dismiss the Chapter 11 Case, whichever is in the best interest of the creditors and the estate, pursuant to Section 1112(b) of the Code; provided that all Entities reserve all of their rights to oppose any such motion.  The Debtor or Reorganized

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 13:35:51    Page 84 of 90

Debtor will timely file any other post-Confirmation quarterly reports in the form prescribed by the United States Trustee to the extent required by applicable law.

G.     Dissolution of Creditors' Committee

Effective as of the Effective Date of the Plan, the Creditors' Committee shall dissolve automatically and the Creditors' Committee shall be relieved of its rights, duties, and responsibilities arising from, or related to, the Chapter 11 Case and its members shall be released and discharged from all of their rights, duties, and responsibilities arising from, or related to, the Chapter 11 Case unless the confirmation of the Plan is the subject of a pending appeal or the conditions to confirmation of the Plan are not satisfied or waived in accordance with ARTICLE IX.B; provided, however, that the Creditors' Committee shall be deemed to remain in existence solely with respect to the final fee applications filed in connection with ARTICLE II.B and the Creditors' Committee shall have the right to be heard on all issues relating to such final fee applications.   On or before the Administrative Claim Bar Date, members of the Creditors' Committee shall submit to the Debtor or the Reorganized Debtor, as applicable, documentation with respect to their requests for reimbursement of reasonable out of pocket expenses incurred in carrying out their duties as members of the Creditors' Committee.   The Debtor or the Reorganized Debtor, as applicable, is authorized to pay such amounts without Bankruptcy Court review, subject to a cap of $20,000.  Any disputes regarding these requests will be determined by the Bankruptcy Court at a hearing on the final fee applications of the Professionals.

H.     Appointment of Creditors' Representative.

After the Effective Date, a "Creditors' Representative" shall be selected by the Creditors' Committee to serve as plan compliance monitor and enforcer to prosecute and settle and be entitled to all proceeds of Avoidance Actions that are transferred to the Creditors' Representative in accordance with ARTICLE IV.P.  The Creditors' Representative has the rights and powers to prosecute objections or other challenges to compensation of Professionals to the extent the Creditors' Committee would have such rights and powers if it were not dissolved and relieved of its rights, duties, and responsibilities.   The Creditors' Representative shall be entitled to be compensated and to retain professionals for assistance, subject to a cap of $150,000.00, which

will be funded from Reorganized Mi Pueblo on the Effective Date, and which compensation may be supplemented by the proceeds of Avoidance Actions prosecuted by the Creditors' Representative after the Effective Date. Subject to the Creditors' Representative entering into a reasonable confidentiality agreement with respect to the following information, until the A Notes and the B Notes are paid in full, (a) the Creditors' Representative shall receive reasonable monthly and quarterly reports of financial information of Reorganized Mi Pueblo and (b) the Creditors' Representative shall be entitled to meet quarterly with the management team of Reorganized Mi Pueblo. Each of the holders of the A Notes and the B Notes shall be deemed to have irrevocably designated and appointed the Creditors' Representative as their agent under the A Notes and the B Notes and the documents related thereto, and each such Entity shall be deemed to have irrevocably authorize the Creditors' Representative to take the following actions on its behalf under the provisions of the A Notes and the B Notes and any documents related thereto, together with such other actions as are reasonably incidental thereto: (a) act on behalf of such Entities in connection with monitoring the Reorganized Debtor's compliance with the Plan, the Trade Credit Program, and the A Notes and the B Notes (including in any bankruptcy, insolvency or similar proceeding); provided, however, that nothing herein shall abridge the rights of the holders of the A Notes and the B Notes to enforce the terms of their individual A Notes and B Notes or rights under their respective agreements under the Trade Credit Program; (b) act as collateral agent for purposes of the perfection of all liens created by such agreements and all other purposes stated therein; and (c) manage, supervise, and otherwise deal with the collateral.

I.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE US BANKRUPTCY CODE

J.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

K.      Service of Documents

1.      After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtor shall be served on:

| Debtor | Counsel to the Debtor |
|---|---|
| MI PUEBLO SAN JOSE, INC.<br>1745 Story Road<br>San Jose, California  95122<br>Attn:  President | BINDER & MALTER, LLP<br>2775 Park Avenue<br>Santa Clara, California  95050<br>Attn: Robert G. Harris<br>Telephone:  (408) 295-1700 |
| **Counsel to the Creditors' Committee** | **Counsel to Cha Cha** |
| STUTMAN, TREISTER & GLATT P.C.<br>1901 Avenue of the Stars, 12th Floor<br>Los Angeles, California  90067<br>Attn:  Eric D. Goldberg<br>Telephone:  (310) 228-5760 | FELDERSTEIN FITZGERALD<br>WILLOUGHBY & PASCUZZI LLP<br>400 Capitol Mall, Suite 1750<br>Sacramento, California  95814<br>Attn:  Paul J. Pascuzzi<br>Telephone:  (916) 329-7400, ext. 222 |
| **Counsel to the DIP Lenders and Exit Lenders** | **Counsel to the United States Trustee** |
| PAUL HASTINGS LLP<br>191 N. Wacker Drive, 30th Floor<br>Chicago, Illinois  60606<br>Attn:  Marc J. Carmel<br>Telephone:  (312) 499-6040<br><br>PAUL HASTINGS LLP<br>1117 S. California Avenue<br>Palo Alto, California  94304<br>Attn:  Todd M. Schwartz<br>Telephone:  (650) 320-1883 | OFFICE OF THE UNITED STATES<br>TRUSTEE<br>280 S. 1st Street #268<br>San Jose, California  95113<br>Attn:  John S. Wesolowski<br>Telephone:  (408) 535-5525 |

L.      **TERM OF INJUNCTIONS OR STAYS**

**UNLESS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL INJUNCTIONS OR STAYS IN EFFECT IN THE CHAPTER 11 CASE PURSUANT TO SECTIONS 105 OR 362 OF THE BANKRUPTCY**

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 15:35:51    Page 87 of 90

**CODE OR ANY ORDER OF THE BANKRUPTCY COURT, AND EXISTING ON THE CONFIRMATION DATE (EXCLUDING ANY INJUNCTIONS OR STAYS CONTAINED IN THE PLAN OR THE CONFIRMATION ORDER) SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. ALL INJUNCTIONS OR STAYS CONTAINED IN THE PLAN OR THE CONFIRMATION ORDER SHALL REMAIN IN FULL FORCE AND EFFECT IN ACCORDANCE WITH THEIR TERMS.**

M.      Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

N.      Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from http://www.omnimgt.com/ or the Bankruptcy Court's website at www.canb.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

O.      Severability

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted (subject to the consent of Victory Park). Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation (subject to the consent of Victory Park). The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have

been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the Debtor's and Victory Park's consent, and (3) nonseverable and mutually dependent.

P.     Reservation of Rights to Seek to Convert Case to Chapter 7

The United States Trustee and parties in interest reserve any right they may have to file a motion to seek to convert the Chapter 11 Case to a case under chapter 7 of title 11 if the Debtor materially defaults on any obligations under the Plan, and, if such motion is granted, any remaining property of the Debtor not already administered shall be administered by the chapter 7 trustee in accordance with chapter 7 of the Bankruptcy Code, and all Entities reserve all of their rights to oppose any such motion.

*The remainder of this page is intentionally left blank.*

-84-

San Jose, California                 MI PUEBLO SAN JOSE, INC.
Dated: April 25, 2014

                                     By: /s/     Juvenal Chavez
                                              Juvenal Chavez

                                     Its: Responsible Corporate Individual


San Jose, California                 BINDER& MALTER, LLP
Dated:  April 25, 2014               HEINZ BINDER
                                     ROBERT G. HARRIS
                                     ROYA SHAKOORI



                                     By:  /s/ Robert G. Harris
                                              Robert G. Harris

                                     Attorneys for Debtor and Debtor-in-Possession
                                     MI PUEBLO SAN JOSE, INC.

Case: 13-53893    Doc# 739    Filed: 04/25/14    Entered: 04/25/14 15:55:51    Page 90 of
90